IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CHEM RX CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 10-11567 (MFW)<br><br>(Jointly Administered)<br>**Objection Deadline: June 21, 2010 at 4:00 p.m.**<br>**Hearing Date: To be determined.** |

**APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER
AUTHORIZING RETENTION AND EMPLOYMENT OF
CYPRESS ASSOCIATES LLC AS FINANCIAL ADVISOR
TO THE DEBTORS, *NUNC PRO TUNC* AS OF THE PETITION DATE**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), hereby submit this application (the "**Application**") for entry of an order: (a) authorizing the retention and employment of Cypress Holdings LLC (dba Cypress Associates LLC) ("**Cypress**") as financial advisor to the Debtors, *nunc pro tunc* as of the Petition Date (as defined herein), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and (b) providing any additional relief required in order to effectuate the foregoing. The facts and circumstances supporting this Application are set forth in the Declaration of J.T. Atkins (the "**Atkins Declaration**"), which is attached hereto as **Exhibit "A"** and incorporated

---

[1] The Debtors and the last four digits of each Debtor's tax identification number are: Chem Rx Corporation (8469), B.J.K. Inc. (5997), ChemRx New Jersey, LLC (9370), ChemRx/Salerno's, LLC (5981), ChemRx-Boca Raton, LLC (8021) and ChemRx Care, LLC (0826). The address(es) for each of the Debtors is/are: Chem Rx Corporation, 750 Park Place, Long Beach, New York, 1561; B.J.K. Inc., 750 Park Place, Long Beach, New York 11561; ChemRx New Jersey, LLC, 4041 Hadley Road, Bldg M, South Plainfield, New Jersey 07080; ChemRx/Salerno's, LLC, Route 209 & Bossardsville Road, Scotia, Pennsylvania 18354; ChemRx-Boca Raton, LLC 5001 NW 13th Ave, Suite H&I, Deerfield Beach, Florida 33064; ChemRx Care, LLC, 750 Park Place, Long Beach, New York 11561.

herein by reference. In further support of this Application, the Debtors respectfully state as follows:

### Status of the Case and Jurisdiction

1. On May 11, 2010 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors have continued in possession of their properties and are operating and managing their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On May 21, 2010, the United States Trustee for Region 3 appointed an Official Committee of Unsecured Creditors. No request has been made for the appointment of a trustee or examiner in these cases.

4. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief sought herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016(b), and 5002, and Local Rule 2014-1.

### Background

6. Founded approximately 50 years ago, the Debtors are a leading long-term care pharmacy serving multiple institutions, including skilled nursing homes, group homes, correctional institutions and other long-term care facilities. The Debtors provide prescription and non-prescription drugs, intravenous medications, durable medical equipment items and surgical supplies for residents of these institutions in New York, New Jersey, Pennsylvania, and Florida. Annually, the Debtors provide over six million prescriptions to more than 69,000 residents of more than 400 institutional customers. The Debtors' operations are conducted as a

single business segment through separate corporate entities in each jurisdiction in which they are licensed to provide pharmacy services.

7. Although the Debtors' businesses remain strong, the Debtors are too highly leveraged and lack adequate liquidity to sustain operations long term. The Debtors have been in default under their secured loans since the beginning of 2009 and have been operating without an effective forbearance agreement since the end of June 2009. The Debtors have attempted over the last year to negotiate with their secured lenders over a consensual restructuring of their assets and liabilities to permit them to continue as a going concern. Those negotiations did not result in a consensus over a viable restructuring alternative.

8. On May 10, 2010, the lenders under the Debtors' first lien loans (the "**First Lien Lenders**") filed an action in New York State Court to enjoin the Debtors' use of cash that is subject to the First Lien Lenders' liens. If the First Lien Lenders were successful in enjoining the Debtors' use of their cash, the Debtors would be unable to continue operations. As a result, the Debtors, in the exercise of their reasonable business judgment and having reviewed their remaining alternatives, ultimately determined that the most effective way to maximize the value of the Debtors' estates for the benefit of their creditor constituencies was to seek bankruptcy protection in order to pursue a sale or restructuring of their assets and liabilities.

9. A more detailed factual background of the Debtors' business and operations, as well as the commencement of these chapter 11 cases (the "**Cases**"), is more fully set forth in the Declaration of Gary M. Jacobs in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief, (the "**First Day Declaration**") filed on the Petition Date and incorporated herein by reference.

**Cypress Associates LLC**

10. Cypress is a financial advisory firm focused on providing financial advice, and transaction execution on behalf of its clients. Cypress' broad range of corporate advisory services includes general financial advice, corporate restructurings, divestitures, special committee assignments, and strategic partnerships/joint ventures.

11. Cypress has extensive experience in the reorganization and restructuring of troubled companies, both out-of-court and in chapter 11 cases. Cypress' employees have advised debtors, creditors, equity constituencies, and government agencies in many complex financial reorganizations.

**Relief Requested**

12. By this Application, the Debtors respectfully request that this Court enter an order authorizing them to retain and employ Cypress as their financial advisor in these Cases, *nunc pro tunc* as of the Petition Date.

13. Cypress' services will be rendered upon the terms and conditions of an engagement letter dated as of May 1, 2010, by and between Cypress and Chem Rx Corporation, on behalf of itself and its subsidiaries and controlled affiliates (the "**Engagement Letter**")[2], a copy of which is attached to the Atkins Declaration as **Exhibit "A"**.

14. The Debtors seek to retain Cypress because of the firm's extensive general experience and knowledge in the field of restructuring and bankruptcy advisory in connection with chapter 11 bankruptcy cases. Moreover, Cypress is well suited for the type of financial restructuring and business advisory services required by the Debtors. Cypress has substantial experience representing debtors' financial interests in reorganization cases, including: (i)

---

[2] The Debtors' non-debtor affiliate Chem Rx Chicago is not a party to the Engagement Letter.

valuation and due diligence, (ii) financial modeling, (iii) debtor-in-possession financing, (iv) debt restructuring, and (v) asset sales.

15. The resources, capabilities, and experience of Cypress in advising the Debtors is crucial to the Debtors during these chapter 11 Cases. An experienced financial advisor such as Cypress fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.

16. Accordingly, the Debtors determined that Cypress has the resources and experience necessary to represent their financial interests in these Cases. Furthermore, Cypress has become intimately familiar with the Debtors' business and operations and many of the issues that may arise in the context of these Cases while acting as the Debtors' financial advisor.

17. Thus, the Debtors desire that Cypress continue to advise them in connection with these Cases. The Debtors believe that Cypress' employment is in the best interest of the Debtors, their estates, and their creditors.

**Scope of Employment**

18. The terms and conditions of Cypress' engagement are governed by the Engagement Letter, which reflects the substantial efforts that will be required of Cypress in this engagement. Pursuant to the terms of the Engagement Letter, Cypress will advise the Debtors in a variety of matters, including, as reasonably requested:[3]

    a. provide assistance to the Debtors on their cash flow analysis, operating budget (including any debtor-in-possession budget) and other financial analysis related thereto;

    b. assist the Debtors in defining strategic and financial objectives;

---

[3] The summaries of the Engagement Letter contained herein are solely for the convenience of the Court and parties in interest. To the extent that such summaries and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control. Capitalized terms not otherwise defined in such summaries shall have the meanings ascribed to them in the Engagement Letter.

c. advise the Debtors on tactics and strategies for negotiating with stakeholders;

d. provide assistance and support to the Debtors' other financial and legal professionals and advisors in connection with any sale transaction for some or all of the Debtors' assets, restructuring under the Bankruptcy Code or otherwise, or other transaction(s);

e. assist the Debtors in the preparation of analysis and reporting packages that may be required for the Company's creditors;

f. render financial advice to the Debtors and participating in meeting or negotiations with stakeholders and/or rating agencies or other appropriate parties in connection with the Debtors' restructuring; and

g. providing the Company with other financial restructuring advice.[4]

19. Subject to this Court's approval of this Application Cypress has indicated that it is willing to serve as financial advisor to the Debtors in these Cases to perform the services described above.

## Cypress' Disinterestedness

20. To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Atkins Declaration, Cypress (a) is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), and (b) does not hold or represent an interest adverse to the Debtors' estates.

## Professional Compensation

21. Cypress' decision to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and to be compensated for its services and reimbursed for the expenses it incurs in accordance with its customary billing practices.

---

[4] Cypress shall provide John Tolmie and Josh Spiegel to assist the Company in the performance of these services.

22. Cypress intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of this Court, and consistent with the proposed compensation set forth in the Engagement Letter (collectively, the "**Fee Structure**"). Further, because the Debtors seek to retain Cypress pursuant to section 327(a) of the Bankruptcy Code with its fees reviewable pursuant to section 328(a) of the Bankruptcy Code, the Debtors believe that Cypress' compensation should not be subject to the standard of review under section 330 of the Bankruptcy Code and should not constitute a "bonus" or fee enhancement under applicable law.

23. In summary, the Fee Structure provides for the following compensation to Cypress:[5]

> Non-refundable monthly fees (the "**Monthly Fee**") of $100,000 per month payable in cash on the 1st of each month. The Monthly Fee will be payable through the expiration of the Term (as defined below) of the Engagement Letter and any unpaid amount will be due and payable upon expiration of the Term. The Monthly Fee shall constitute full payment for all Services rendered.[6]

24. The Fee Structure is consistent with and typical of compensation arrangements entered into by Cypress and other comparable firms in connection with the rendering of similar services under similar circumstances. Cypress' strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and

---

[5] To the extent members, officers and employees of Cypress assist in, or provide testimony in trial or deposition for any action, suit or proceeding relating to a Transaction or our engagement hereunder, the Debtors will pay Cypress an hourly or per diem charge for the services of such officers in an amount to be mutually agreed upon by the Debtors and Cypress prior to such assistance.

[6] A one time $175,000 fee (the "**Modification Fee**") in consideration for value received in respect of amendment of letter agreement dated September 1, 2009 (the "**September Agreement**"), and entry into the Engagement Letter, was paid to Cypress on May 1, 2010, which payment was made as a deduction from the retainer Cypress' held under the September Agreement.

acquisitions expertise, some or all of which may be required by the Debtors during the term of Cypress' engagement, were all important factors in determining the Fee Structure. The Debtors believe that the ultimate benefit of Cypress' services cannot be measured by reference to the number of hours to be expended by Cypress' professionals in the performance of such services. Indeed, the Debtors and Cypress have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Cypress and its professionals in connection with these Cases and in light of the fact that (a) such commitment may foreclose other opportunities for Cypress and (b) the actual time and commitment required of Cypress and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for Cypress.

25.  Cypress will maintain records in support of any expenses incurred in connection with the rendering of its services in these Cases. As Cypress' compensation will be calculated and paid based on the Monthly Fees, Cypress requests that it not be required to file time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-2, and the United States Trustee Fee Guidelines. Cypress does not charge for similar services on an hourly basis.

26.  The Debtors also agree to periodically reimburse Cypress promptly when invoiced for all of its reasonable and customary expenses (including reasonable fees and expenses of its legal counsel) in connection with the performance of its services; provided, however, that Cypress will not incur expenses in excess of $5,000 individually or $25,000 in the aggregate without prior notice to and approval by the Debtors. Cypress' legal fees and expenses provided shall not exceed $10,000 in the aggregate.

27.  To the extent members, officers and employees of Cypress assist in, or provide testimony in trial or deposition for any action, suit or proceeding relating to the Debtors'

restructuring or Cypress' provision of services, the Debtors agreed to compensate Cypress on an hourly or per diem charge for the services of such officers in an amount ordinarily charged for these services and to be mutually agreed upon by the Company and Cypress prior to such assistance.

### Termination of Engagement

28. Cypress' engagement will terminate on the earlier to occur of (i) upon the filing of these Cases unless the Engagement Letter is approved by this Court upon the terms provided in the Engagement Letter; (ii) upon the effective date of the Debtors' chapter 11 plan; and (iii) upon conversion of the Debtors' chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code (the "**Term**"), provided, however, that if the Term expires prior to September 30, 2010, Cypress shall be entitled to a termination fee equal to $675,000 minus any Monthly Fee or Modification Fee earned or paid to Cypress in connection with the Engagement Letter. The Term of the Engagement Letter may be extended upon written agreement of the Debtors and Cypress.

29. Notwithstanding the foregoing, the Debtors agree that the provisions in the Engagement Letter relating to the payment of fees, reimbursement of expenses, indemnification and contribution, confidentiality, bankruptcy and waiver of the right to trial by jury will survive any such termination.

### Indemnification and Contribution Provisions

30. The Debtors have agreed to indemnify, to make certain contributions to, and to reimburse Cypress in connection with the Engagement Letter pursuant to terms substantially similar to the following:

> Cypress shall not be entitled to indemnification, contribution or reimbursement for services other than the services provided under this letter agreement, unless such services and the indemnification contribution, or reimbursement therefore are approved by the Bankruptcy Court; In no event shall Cypress be indemnified or

receive contribution in the case of bad-faith, self-dealing, breach of fiduciary duty, if any gross negligence or willful misconduct on the part of Cypress. Notwithstanding anything to the contrary herein, the Company shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense to the extent the it is either (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from that person's gross negligence, willful misconduct bad-faith, or breach of fiduciary duty; (ii) for a contractual dispute in which the Debtors allege the breach of Cypress' contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artist Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to judicial determination as to the exclusions set forth in clauses (i) and (ii), but determined by the Court, after notice and hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of this letter agreement; If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Company's bankruptcy cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Company's chapter 11 cases, Cypress believes that it is entitled to payment of any amounts by the Company on account of the Company's indemnification, contribution, or reimbursement obligations under this letter agreement, including without limitation the advancement of defense costs, Cypress must file an application before the Court, and the Company shall not pay any such amounts to Cypress before the entry of an order by the Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for payment by Cypress for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Company's obligation to indemnify Cypress. There shall be no limitation of liability in favor of Cypress.

31. The indemnification, contribution and reimbursement provisions reflected in the Engagement Letter are customary and reasonable terms of consideration for financial advisors providing the services described in the Engagement Letter. The terms of the Engagement Letter were fully negotiated between the Debtors and Cypress at arm's-length and the Debtors

respectfully submit that the indemnification language in the Engagement Letter is reasonable and in the best interests of the Debtors, their estates, and creditors.

### No Duplication of Services

32.     The Debtors intend for Cypress' services to complement, and not duplicate, the services to be rendered by any other professional retained in these Cases.  Cypress understands that the Debtors have retained and may retain additional professionals during the term of the engagement and will work cooperatively, as requested by the Debtors, with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

### Approval of Terms Of Engagement
### Pursuant to Section 328(a) of the Bankruptcy Code

33.     The Debtors seek approval of the Engagement Letter, including the Fee Structure contained therein pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.  Section 328(a) provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Accordingly, section 328(a) permits the compensation of professionals, including financial advisors, on flexible terms that reflect the nature of their services and prevailing market conditions for those services.

34.     As set forth above, notwithstanding approval of the Engagement Letter under Bankruptcy Code section 328(a), Cypress intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court and consistent with the Fee Structure set forth in the Engagement Letter.

35. The Debtors believe that the Fee Structure appropriately reflects the nature and scope of services to be provided by Cypress in these complex chapter 11 Cases, Cypress' substantial experience with respect to the services to be provided by Cypress and the fee structures typically utilized by Cypress and other leading financial advisors that do not bill their clients on an hourly basis.

36. Indeed, similar fixed and contingency fee arrangements in other large chapter 11 cases have been routinely approved and implemented by courts in this circuit and elsewhere. *See e.g., In re Wellman, Inc.*, Case No. 08¬10595 (SMB) (Bankr. S.D.N.Y. Apr. 1, 2008) (authorizing retention of Lazard under 11 U.S.C. §§ 327(a) and 328(a)); *In re TOUSA, Inc.*, Case No. 08-10928 (TKO) (Bankr. S.D. Fla. Mar. 26, 2008 and Apr. 14, 2008) (same); *In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); *In re Foamex Intl, Inc.*, Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); *In re Meridian Auto. Sys. – Composites Operations, Inc.*, Case No. 05-11168 (MFW) (Bankr. D. Del. July 19, 2005) (authorizing retention of Lazard under 11 U.S.C. §§ 327(a) and 328(a)).

37. Likewise, similar indemnification arrangements have been approved and implemented in other large chapter 11 cases by courts in this district and elsewhere. *See e.g., In re Wellman, Inc.*, Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Apr. 1, 2008); *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (IOC) (Bankr. D. Del. Apr. 26, 2007); *In re Movie Gallery, Inc.*, Case No. 07-33849 (DOT) (Bankr. E.D. Va. Oct. 18, 2007); *In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006); *In re Foamex Intl, Inc.*, Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005).

38. In light of the foregoing, and given the numerous issues that Cypress may be required to address in the performance of its services hereunder, Cypress' commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Cypress' services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in Bankruptcy Code section 328(a).

39. To deny the relief requested herein will deprive the Debtors of the assistance of a uniquely qualified financial advisor and would effect an unjust disadvantage to the Debtors and all parties in interest. Indeed, the Debtors would be forced to engage a new financial advisor who lacks a thorough understanding of the Debtors' business and the restructuring initiatives that have been implemented over the course of the last month and which will continue through the pendency of these Cases. It would require the commitment of significant resources for a newly retained financial advisor to get up to speed given the steep learning curve involved. Moreover, a comparable financial advisor would charge an equivalent level of fees.

**Request for Approval of Retention of
Cypress Associates LLC, *Nunc Pro Tunc* as of the Petition Date**

40. The Debtors request that Cypress' retention be made effective, *nunc pro tunc* as of the Petition Date, in order to allow Cypress to be compensated for the work it performs for the Debtors following the Petition Date and prior to the Court's consideration and approval of this Application. With the filing of these Cases, Cypress will immediately have to turn its attention to urgent matters including, but not limited to, preparing the Debtors' statements and schedules, and addressing a variety of business, employee, and creditor related issues which are expected to arise as a result of these chapter 11 filings. The Debtors submit that under the circumstances, and to avoid irreparable harm to the Debtors' estates that may occur if Cypress is not

immediately retained, retroactive approval to the Petition Date is warranted. *See, e.g., F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.)*, 844 F.2d 99, 103 (3d Cir. 1988), cert. denied, 488 U.S. 852 (1988); *Indian River Homes, Inc. v. Sussex Trust Co.*, 108 B.R. 46, 51 (D. Del. 1989) (approval of debtor's employment of attorney and real estate agent as of a prior date was not an abuse of discretion).

### Notice

41. Notice of this Application has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) counsel to the Debtors' prepetition secured lenders; (c) proposed counsel to the Official Committee of Unsecured Creditors; and (d) those parties requesting notice pursuant to Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[Remainder of page intentionally left blank.]

### No Prior Request

42. No prior request for the relief sought in this Application has been made to this Court or any other court.

### Conclusion

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing the Debtors to employ and retain Cypress as financial advisor to the Debtors, *nunc pro tunc* as of the Petition Date, (ii) approving the terms of the Engagement Letter and (iii) granting such other and further relief necessary to effectuate the foregoing.

Dated: Wilmington, Delaware
May 27, 2010

CHEM RX CORPORATION, *et al.*,
Debtors and Debtors-in-Possession

/s/ Gary M. Jacobs
Gary M. Jacobs
Chief Financial Officer