| | |
|---|---|
| **In re:** | **Chapter 11** |
| **CHEM RX CORPORATION, et al.,** | **Case No. 10-11567 (MFW)** |
| **Debtors.** | **(Jointly Administered)** *Ref. Dkt. Nos. 8, 37, 107* |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO
UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363
AND (II) GRANTING ADEQUATE PROTECTION TO PREPETITION
SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 105, 361, 362 AND 363**

Upon the motion (the "Motion"), dated May 11, 2010, of Chem Rx Corporation ("Chem Rx") and each of its affiliated debtors, each as a debtor and debtor-in-possession (collectively, the "Debtors"), in the above-captioned cases (the "Cases") pursuant to sections 361, 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the corresponding local rules of this District (the "Local Rules"), seeking, among other things:

(1)    the granting of adequate protection to the Prepetition Secured Parties (as defined below) under the First Lien Credit and Guaranty Agreement, dated as of October 26, 2007 (as heretofore amended, supplemented or otherwise modified from time to time, the "Prepetition Credit Agreement"; and together with all Loan Documents (as defined in the Prepetition Credit Agreement), swap agreements, letters of credit, mortgages, security agreements and other documentation executed in connection with the Prepetition Credit Agreement, the "Existing Agreements"), among those Debtors party thereto, those certain lenders party thereto (the

"Prepetition First Lien Lenders"), CIBC, as Administrative Agent (in such capacity, the "Prepetition First Lien Administrative Agent") for the Prepetition First Lien Lenders, CIBC, as Collateral Agent (in such capacity under the Prepetition Credit Agreement, the "Prepetition First Lien Collateral Agent" and, together with the Prepetition First Lien Administrative Agent, the "Prepetition First Lien Agents") (the Prepetition First Lien Agents together with any Prepetition First Lien Lender who is owed any Obligation (as defined in the Existing Agreements), the "Prepetition Secured Parties");

(2)     authorization for the Debtors to use, pursuant to sections 105, 361, 362 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014, cash collateral in which the Prepetition Secured Parties have an interest, and the granting of adequate protection to the Prepetition Secured Parties with respect to, *inter alia*, such use of their cash collateral, the priming of their liens, the imposition of the automatic stay and all use and any resulting diminution in the value of the Prepetition Collateral (as defined below);

(3)     approval of certain stipulations by the Debtors with respect to the amount, priority, validity, enforceability and perfection of the claims arising under, and the liens granted pursuant to, the Existing Agreements;

(4)     pursuant to Bankruptcy Rule 4001, that a final hearing (the "Final Hearing") on the Motion be held before the United States Bankruptcy Court for the District of Delaware (the "Court") to consider entry of the proposed final order annexed to the Motion (the "Final Order"), among other things (a) authorizing the Debtors' use of Cash Collateral (as defined below) and (b) granting the adequate protection described herein; and

(5)     due and appropriate notice of the Motion, the relief requested therein and the Final Hearing having been served by the Debtors on (i) the Office of the United States Trustee

for the District of Delaware, (ii) the Prepetition First Lien Administrative Agent, (iii) the Debtors' 30 largest unsecured creditors on a consolidated basis, (iv) S.A.C. Domestic Capital Funding, Ltd., in its capacity as administrative agent under the Second Lien Credit and Guaranty Agreement, dated as of October 26, 2007; (v) the Internal Revenue Service and (v) local taxing authorities.

The Court having held an interim hearing on the Motion on May 13, 2010; and the Court having entered an interim order dated May 13, 2010 (the "Interim Order") authorizing the Debtors' use of cash collateral on an interim basis; and the Final Hearing having been held by this Court on June 1, 2010 and upon the record of the Final Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

Upon all of the pleadings filed with this Court and upon the record of the Final Hearing, and all objections to the relief sought in the Motion having been sustained, overruled, withdrawn or otherwise resolved, and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     *Disposition.* The Motion is granted on a final basis on the terms set forth herein. Any objections to the relief sought in the Motion that have not been previously resolved, waived, settled or withdrawn, and all reservation of rights included therein, are overruled on the merits. This Final Order shall be valid, binding and enforceable on all parties in interest and fully effective immediately upon entry.

2.     *Jurisdiction and Venue.* This Court has core jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory

predicates for the relief sought herein are sections 105, 361, 362, 363 and 507 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (d) and the Local Rules.

3.  *Notice.* The notice given by the Debtors of the Motion and the Final Hearing constitutes appropriate, due and sufficient notice thereof and complies with section 363 of the Bankruptcy Code, Bankruptcy Rule 4001(b) and the Local Rules, and no further notice of the relief sought at the Final Hearing and the relief granted herein is necessary or required.

4.  *Debtors' Stipulations.* Without prejudice to the rights of any other party (but subject in all respects to the limitations thereon contained in paragraph 13 below), the Debtors admit, stipulate and agree that:

(a)  as of the date of the commencement of the Debtors' Cases (the "Petition Date"), the Debtors were jointly and severally liable to the Prepetition Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate amount of approximately $105 million in respect of loans made, swap agreements entered into and other financial accommodations made, in each case, by the Prepetition Secured Parties pursuant to and in accordance with the terms of the Existing Agreements, including interest thereon and agency, letter of credit, facility, extension and other fees, expenses (including any attorneys', accountants', appraisers', financial advisors' and swap counterparty's fees that are chargeable or reimbursable under the Existing Agreements) and other obligations incurred in connection therewith as provided in the Existing Agreements (collectively, the "Prepetition Obligations");

(b)  the Prepetition Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with the terms of the Existing Agreements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no portion of the Prepetition Obligations or any payments made to the Prepetition Secured Parties or any

4

amounts applied to the obligations owing under the Existing Agreements prior to the Petition Date is subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as defined in the Bankruptcy Code) pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(c)     each Debtor does not have and hereby forever releases, and is forever barred from bringing, any Claims (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights, against the Prepetition Secured Parties, and their respective affiliates, subsidiaries, agents, officers, directors, employees and attorneys, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or Chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law;

(d)     pursuant to that certain (i) First Lien Pledge and Security Agreement dated as of October 26, 2007, (ii) First Lien Trademark Security Agreement dated as of October 26, 2007, (iii) Amended and Restated Intercreditor Agreement dated as of November 28, 2007 and (iv) Deposit Account Control Agreement dated as of April 30, 2009 (in each case as heretofore amended, restated, modified, ratified or supplemented from time to time, together with any and all other security agreements, pledge agreements, mortgages, notes, letters of credit, promissory notes, fixture filings, deeds of trust, financing statements, assignments or other security documents or instruments, the "Prepetition Collateral Documents"), (I) the Debtors have granted valid, binding, perfected, enforceable, first priority liens upon and security interests in the property described in the Prepetition Collateral Documents (collectively, the "Prepetition Collateral," and such liens and security interests, the "Prepetition Liens") to the Prepetition First Lien Collateral Agent for the benefit of the Prepetition Secured Parties and (II) the Prepetition

Liens upon and security interests in the Prepetition Collateral, for the benefit of the Prepetition Secured Parties are not subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and

(e)     all cash, securities or other property (and the proceeds therefrom) as of the Petition Date, including without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the Debtors in any account or accounts with the Prepetition Secured Parties or at certain other financial institutions (collectively, the "Depository Institutions") were subject to rights of set-off and valid, perfected, enforceable, first priority liens under the Existing Agreements and applicable law, for the benefit of the Prepetition Secured Parties, as applicable.  All proceeds of the Prepetition Collateral (including cash on deposit at the Depository Institutions as of the Petition Date) are cash collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

5.     *Findings Regarding the Cash Collateral.*

(a)     Good and sufficient cause has been shown for the entry of this Final Order.

(b)     The Debtors have an immediate need to use Prepetition Collateral (including but not limited to Cash Collateral) in accordance with the 17-week budget annexed hereto as Schedule "1" (the "Budget") in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to pay the fees and expenses (the "Professional Fees") of professional persons (the "Professionals") retained by the Debtors and the Creditors' Committee pursuant to order of the Court, and to satisfy other working capital and operational needs.  The

Budget shall be updated and extended by the Debtors every four weeks and (i) subject to the prior written approval of the Prepetition First Lien Administrative Agent and (ii) prior notice to the Office of the United States Trustee for the District of Delaware and the Official Committee of Unsecured Creditors appointed in these Cases (the "Creditors' Committee"), with an opportunity to object, but in all respect subject to paragraph 11(a)(xiii) of this Final Order. The Debtors and the Prepetition First Lien Administrative Agent will consult with the Committee regarding any modifications to line items in the Budget for Professional Fees. The ability of the Debtors to obtain sufficient working capital and liquidity through the use of Cash Collateral is vital to preserve and maintain the going concern values of the Debtors and to maximize the value of the Debtors' estates.

(c)     The use of Cash Collateral is fair and reasonable, reflects the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and is supported by reasonably equivalent value and fair consideration.

(d)     The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2) and the Local Rules. Absent entry of this Final Order, the Debtors' estates will be immediately and irreparably harmed. Authorization of the use of Cash Collateral in accordance with the terms of this Final Order is therefore in the best interests of the Debtors' estates.

6.     *Use of Cash Collateral.* Subject to this paragraph 6 and the other provisions of this Final Order, the Debtors are hereby authorized to use all Cash Collateral of the Prepetition Secured Parties (i) solely in accordance with and pursuant to the terms and provisions of this Final Order and (ii) only to the extent authorized to pay those expenses enumerated in the Budget as and when such expenses become due and payable in the ordinary course of business, or in the

case of Professional Fees, which shall in all events be subject to the Budget on a cumulative basis for all Professionals and notwithstanding any individual line items therein, when authorized by the Court, provided that the Prepetition Secured Parties are granted adequate protection as hereinafter set forth. The Debtors' right to use Cash Collateral shall terminate automatically on the Termination Date (as defined below).

(a)     For purposes hereof, "enumerated in the Budget" shall mean, unless otherwise authorized by this Court or agreed upon by the Prepetition First Lien Administrative Agent upon notice to the Creditors' Committee, compliance with the Budget in all respects, including without limitation, the weekly expenditures set forth in each line item of the Budget; provided that the Debtors shall be permitted (i) to carry over any amounts not expended for a particular line item in any week to succeeding weeks, (ii) to exceed the amount set forth in any line item (except for the line item labeled "Wholesaler Suppliers") for a given week plus any amount carried over from a previous week in accordance with clause (i) above by 5% of the amount set forth in the Budget for such weekly line item (it being understood that this sub-provision (ii) shall not apply to the fees and expenses described in paragraph 7(d) below or to Professional Fees, which will be paid solely in accordance with the Budget on a cumulative basis for all Professionals (and notwithstanding any individual line items therein) and any orders of this Court regarding professional compensation), (iii) to exceed the amount set forth in the line item labeled "Wholesaler Suppliers" for a given week plus any amount carried over from a previous week in accordance with clause (i) above by 2% of the amount set forth in the Budget for such weekly "Wholesaler Suppliers" line item, (iv) to pay amounts incurred from and after the Petition Date, in addition to or for categories not listed in the Budget with the prior written consent of the Prepetition First Lien Administrative Agent and with notice to the Creditors'

Committee, and (v) to pay Professional Fees, in each case as and to the extent accrued for in the Budget on a cumulative basis for all Professionals (and notwithstanding any individual line items therein) and subject to any orders of this Court on professional compensation. In addition, the cumulative Operating Cash Flow Before Bankruptcy-Related Professional Fees and Other Non-Operating Items (as defined in the Budget) shall not be less than 95% of the amounts set forth in the Budget for such Operating Cash Flow, tested on a weekly basis.

(b) Any expenditures of Cash Collateral that are approved by any order of this Court may be made only if such expenditures are accounted for and covered by the Budget or as otherwise approved by the Prepetition First Lien Administrative Agent upon notice to the Creditors' Committee.

(c) Under no circumstance shall there be any payment, transfer of inventory or other financial support made by the Debtors to Chem Rx-Chicago, LLC ("Chem Rx Chicago"), or for any other use, venture or investment other than the Debtors, unless otherwise approved by the Prepetition First Lien Administrative Agent upon notice to the Creditors' Committee; provided, however, that the Debtors shall be permitted to sell inventory to Chem Rx Chicago, solely on a cash on delivery, cost plus ten (10%) percent profit basis.

(d) Subject to paragraph 13 hereof, to the extent that any funds were on deposit with any Prepetition Secured Party as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor with any Prepetition Secured Party immediately prior to the Petition Date (regardless of whether, as of such time, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the "Deposited Funds") may be subject to rights of setoff in favor of such Prepetition Secured Party, as applicable. In the event of any such setoff rights in accordance with section 553 of the

Bankruptcy Code, and subject to paragraph 13, the Prepetition Obligations are secured by the Deposited Funds for purposes of these Cases under section 506(a) of the Bankruptcy Code. Such Prepetition Secured Parties are obligated, to the extent provided in the Existing Agreements, to share the benefit of such setoff rights with the other Prepetition Secured Parties party to such Existing Agreements, as applicable.

7. *Adequate Protection.* The Prepetition Secured Parties are entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution, if any, in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral, including, without limitation, any such diminution resulting from (i) the sale, lease or use by the Debtors (or other decline in value from depreciation or decline in market price) of Cash Collateral and any other Prepetition Collateral and (ii) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code. As adequate protection, for such diminution, if any, the Prepetition Agents and the Prepetition Secured Parties are hereby granted, the following (collectively, the "Adequate Protection Obligations"):

(a) Section 507(b) Claims. The Prepetition Secured Parties are hereby granted, subject to the Carve Out (as defined below), an allowed superpriority claim as provided for in section 507(b) of the Bankruptcy Code, with priority in payment over any and all administrative expenses of the kinds specified or ordered under any provisions of the Bankruptcy Code, including sections 105, 326, 328, 330, 331, 503, 507(a), 726, 1113 or 1114 of the Bankruptcy Code (the "507(b) Claims"); provided however, that the 507(b) Claims shall not have priority over general unsecured claims with respect to Avoidance Actions (as defined herein) and any

proceeds thereof, without limiting any rights of the Prepetition Secured Parties under Paragraph 9(a) of this Order..

(i)     For purposes of this Final Order, "Carve Out" means (i) all unpaid fees required to be paid to the Clerk of the Bankruptcy Court and to the Office or the United States Trustee under section 1930(a) of title 28 of the United States Code; and (ii) all unpaid Professional Fees, to the extent ultimately allowed by the Court, previously, currently, or subsequently allowed by this Court, whether or not included in a fee application submitted prior to the date of a Termination Event, in aggregate amount not to exceed all accrued and unpaid Professional Fees owing as of the date of a Termination Event (whether allowed as of such date or subsequently thereto) plus $50,000;[1] *provided that* no Cash Collateral or any portion of the Carve Out shall be utilized for the payment of Professional Fees incurred in connection with prosecuting any challenge to (x) the amount, extent, priority validity, perfection or enforcement of the Prepetition Obligations or (y) the perfection, priority or validity of the Prepetition Liens on the Prepetition Collateral.

(b)     Adequate Protection Liens. The Prepetition First Lien Collateral Agent (for itself and the benefit of the Prepetition Secured Parties) is hereby granted, effective and perfected upon the date of this Final Order and without the necessity of the execution by the Debtors, or the filing, of mortgages, security agreements, pledge agreements, financing statements or other agreements, a replacement security interest and an additional security interest in and lien upon all

---

[1] To the extent a professional engaged by the Debtors has received a prepetition retainer from the Debtors, such professional's unpaid fees, costs and expenses shall be paid first out of the retainer. Once the retainer has been fully applied to such professional's unpaid fees, costs and expenses, the Debtor may pay such professional's fees, costs and expenses from Cash Collateral in accordance with the terms of this Final Order.

assets and property of the Debtors of any kind or nature whatsoever, whether now owned or hereafter acquired (excluding causes of action arising under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, and the proceeds therefrom, collectively, the "Avoidance Actions"), and all proceeds, rents, products, or profits thereof, and all proceeds of such proceeds, rents, products, and profits (collectively, the "Collateral"), subject and subordinate only to the Carve Out and the Permitted Liens[2] (the "Adequate Protection Liens"). Notwithstanding any other provision of this Final Order or any subsequent Order of the Court, the Prepetition Liens and the Adequate Protection Liens shall be subject and subordinate to the Carve Out, and except as otherwise expressly provided in this Final Order, the Adequate Protection Liens shall not be (A) subject or subordinate to (x) any lien or security interest that is avoided and preserved for the benefit of the Debtors and the Debtors' estates under section 551 of the Bankruptcy Code or (y) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors or (B) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

(c)    Fees and Expenses.  The Prepetition First Lien Agents shall receive from the Debtors each month, the reasonable, documented fees and expenses incurred by the Prepetition First Lien Agents under the Existing Agreements, including but not limited to the reasonable, documented fees and expenses incurred by the Prepetition First Lien Agents' counsel and financial advisors, which shall be paid within five (5) business days of receipt by the Debtors of

---

[2] The term Permitted Liens, as used herein, shall have the meaning ascribed thereto in the Prepetition Credit Agreement.

an invoice from the Prepetition First Lien Agent without the necessity of any other or further notice to and with the necessity of filing any application with this Court, but with copies of invoices to be provided contemporaneously therewith to the Office of the United States Trustee, the Creditors' Committee, and the Court to retain jurisdiction to consider the reasonableness of such fees and expenses.

(d)     Monitoring. The Debtors shall provide the Prepetition First Lien Administrative Agent and the Creditors' Committee (i) with the Debtors' draft audited 2008 and 2009 financial statements by no later than July 15, 2010 or such later date as is acceptable to the Prepetition First Lien Administrative Agent, which audit shall be provided to the Office of the United States Trustee for the District of Delaware upon request, and (ii) copies of all financial statements, projections, reports and other materials as may be reasonably requested by the Prepetition First Lien Administrative Agent.

(e)     Chief Restructuring Officer. The Debtors shall continue to engage a Chief Restructuring Officer ("CRO") reasonably acceptable to the First Lien Administrative Agent. The CRO shall be required to approve, among other things, (x) all cash expenditures over $1,000 and (y) all modifications of existing contracts or the entry into new contracts. The CRO shall have the right to attend all of the Debtors' board meetings and shall use his best efforts to attend such meetings.

8.     *Reporting to Creditors' Committee.* Subject to the entry into an appropriate confidentiality arrangement, the Debtors shall provide the Creditors' Committee with all documents required to be provided to the Prepetition First Lien Lenders and/or Prepetition First Lien Administrative Agent under this Final Order from and after the date of this Final Order.

9. *Reservation of Rights of Prepetition Secured Parties.*

(a)     Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties, subject to the rights of the Prepetition First Lien Agents and the Prepetition Secured Parties to request further or different adequate protection (including the sale, lease or other disposition of any Collateral or Prepetition Collateral, requesting payments, and seeking a lien on Avoidance Actions[3], the proceeds thereof, and/or a pledge on the membership interests of Chem Rx Chicago) subject to the rights of other parties in interest to oppose any such request. Except as expressly provided herein, nothing contained in this Final Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to either Prepetition First Lien Agent *or* any Prepetition Secured Party including, without limitation, the right of any party to a swap agreement, securities contract, commodity contract, forward contract or repurchase agreement with any of the Debtors to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of any Debtor to contest such assertion).

(b)     Except subject to and in accordance with the terms of this Final Order, at all times before the Termination Date, the Debtors are hereby prohibited from at any time using the Cash Collateral other than as expressly provided herein.

---

[3] Nothing in this Final Order shall impair the right of either of the Prepetition First Lien Agents to seek a determination by this Court that any Avoidance Action and the proceeds thereof constitute the Prepetition Collateral of the Prepetition First Lien Collateral Agent for the sole and exclusive benefit of the Prepetition Secured Parties in these Cases.

10. *Perfection of Adequate Protection Liens.*

(a)     The Prepetition First Lien Agents are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession or control over, or take any other action in order to validate and perfect the Adequate Protection Liens and any other liens and security interests granted to them hereunder.  Whether or not the Prepetition First Lien Agents on behalf of the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments that may otherwise be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such Adequate Protection Liens and other security interests and liens, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests (except as otherwise expressly provided in this Final Order) shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, as of the date of entry of this Final Order without the necessity of any other or further act or instrument or notice to any person, party or entity.

(b)     The failure of the Debtors to execute any documentation relating to the enforceability, priority or perfection of the Adequate Protection Liens, or any other liens or security interests granted hereunder shall in no way affect the validity, perfection or priority of the Adequate Protection Liens.

(c)     If the Prepetition First Lien Agents (solely with respect to the Adequate Protection Liens) in their sole discretion, elect to file any financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise to confirm

perfection of the Adequate Protection Liens as applicable, the Debtors shall cooperate with and assist in such process, the stay imposed under section 362 of the Bankruptcy Code is hereby lifted to permit the filing and recording of a certified copy of this Final Order or any such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments. Upon the request of either of the Prepetition First Lien Agents (solely with respect to the Adequate Protection Liens), without any further consent of any party, each Debtor is authorized to take, execute, deliver and file such instruments (in each case without representation or warranty of any kind) to enable the Prepetition First Lien Agents to further validate, perfect, preserve and enforce the Adequate Protection Liens and any other liens or security interests granted hereunder as applicable.

(d)     A certified copy of this Final Order may, in the discretion of the Prepetition First Lien Agents (with respect to the Adequate Protection Liens), be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording.

(e)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting the Adequate Protection Liens in such leasehold interest or the proceeds of

any assignment and/or sale thereof by any Debtor, in favor of the Prepetition Secured Parties in accordance with the terms of this Final Order.

11.     *Termination Events.*

(a)     Notwithstanding anything expressly contained herein, but subject to subparagraph (b) of this paragraph 11, the Debtors shall not be authorized to use Cash Collateral pursuant to this Final Order, immediately and without the necessity of any other further act or instrument, upon the occurrence of the earliest of any of the following events (the "Termination Events"):

(i)     The Debtors' failure to file (x) a motion for approval of the auction and sale of substantially all of their assets under section 363 of the Bankruptcy Code and (y) a related motion for approval of bid procedures and breakup fee, in each case, by August 10, 2010, or such later date as is acceptable to the Prepetition First Lien Administrative Agent;

(ii)     The Debtors' failure to obtain entry of an order approving their motion for approval of bid procedures and breakup fee by September 3, 2010, or such later date as is acceptable to the Prepetition First Lien Administrative Agent;

(iii)     The Debtors' failure to conduct an auction of substantially all of their assets under section 363 of the Bankruptcy Code by October 4, 2010, or such later date as is acceptable to the Prepetition First Lien Administrative Agent;

(iv)     The Debtors' failure to obtain approval of the sale of substantially all of their assets under section 363 of the Bankruptcy Code by October 6, 2010, or such later date as is acceptable to the Prepetition First Lien Administrative Agent;

(v)     The Debtors' failure to close the sale of substantially all of their assets and distribute the proceeds thereof to the Prepetition First Lien Administrative Agent by

October 8, 2010, or such later date as is acceptable to the Prepetition First Lien Administrative Agent;

(vi)    The effective date of any plan of reorganization, if any, confirmed in the Debtors' chapter 11 cases;

(vii)   Non-compliance by the Debtors with any of the express terms and/or provisions of this Final Order;

(viii)  Entry of an order by the Court converting or dismissing the Debtors' chapter 11 cases;

(ix)    Entry of an order of the Court appointing a chapter 11 trustee in the Debtors' chapter 11 cases;

(x)     Unless the Court orders otherwise, the reversal, vacatur, stay, amendment, supplementation or other modification of this Final Order in a manner which shall materially and adversely affect the rights of the Prepetition First Lien Agents or the Prepetition Secured Parties hereunder, or shall materially and adversely affect the priority of any or all of the Prepetition First Lien Agents' and the Prepetition Secured Parties' security interests in the Prepetition Collateral and/or the Collateral;

(xi)    The Debtors' filing of a motion seeking to obtain priority for liens securing obligations other than as set forth in this Final Order;

(xii)   Entry of an order permitting the use of the Prepetition Secured Parties' Cash Collateral inconsistent with the terms hereof; or

(xiii)  If the Budget, as updated and extended by the Debtors every four weeks, shall not have received the prior written approval of the Prepetition First Lien Administrative Agent.

(b)     The "Termination Date" is the date of occurrence of a Termination Event that is not timely cured

(c)     Following the occurrence of the Termination Date, the Debtors shall not have the right to use Cash Collateral without the prior written consent of the Administrative Agent; provided, however, that the Debtors shall have the right to seek authority from this Court to use Cash Collateral thereafter on two (2) Business Days notice to the Prepetition First Lien Administrative Agent which request the Prepetition First Lien Administrative Agent shall have the right to oppose and that the only issue that the Court may consider is whether a Termination Event occurred and no other issue.

12.     *Preservation of Rights Granted Under the Final Order.*

(a)     Except for the Carve-Out, no claim or lien having a priority superior to or *pari passu* with those granted by this Final Order to the Prepetition Secured Parties shall be granted or allowed while any portion of the Adequate Protection Obligations remain outstanding, and the Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Unless the Adequate Protection Obligations shall have been indefeasibly paid in full in cash, the Debtors shall not seek, and (for avoidance of doubt) it shall constitute a Termination Event under paragraph 11(a)(vii) hereof, if the Debtors seek (i) any modification or extension of this Final Order without the prior written consent of the Prepetition First Lien Administrative Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the Prepetition First Lien Administrative Agent, or (ii) an order converting or

dismissing any of the Cases. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, (A) the Adequate Protection Liens and the 507(b) Claims granted to the Prepetition First Lien Agents (for the benefit of themselves and the Prepetition Secured Parties) pursuant to this Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all Adequate Protection Obligations shall have been indefeasibly paid and satisfied in full in cash, (B) such Adequate Protection Liens and 507(b) Claims granted to the Prepetition Secured Parties shall, notwithstanding such dismissal, remain binding on all parties in interest, (C) the other rights under this Final Order shall not be affected and (D) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to above in this paragraph and otherwise in this Final Order.

(c)      If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Prepetition First Lien Agents, as applicable, of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to this Final Order with respect to any Adequate Protection Obligations. Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral or Adequate Protection Obligations incurred by the Debtors to the Prepetition First Lien Agents or the Prepetition Secured Parties prior to the actual receipt of written notice by the Prepetition First Lien Agents, as applicable, of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Final Order, and the Prepetition First Lien Agents and Prepetition Secured Parties shall be entitled to

all the rights, remedies, privileges and benefits granted in section 363(e) of the Bankruptcy Code and this Final Order with respect to all uses of Cash Collateral and Adequate Protection Obligations.

(d)     The priorities granted to the Prepetition First Lien Agents and the Prepetition Secured Parties shall not be affected in any manner by the entry of an order, if any, confirming a plan of reorganization in these Cases absent the consent of the Prepetition Secured Parties, which consent may be given or withheld by the Prepetition Secured Parties, respectively, in the exercise of their sole and absolute discretion.

(e)     Except as expressly provided in this Final Order, the Adequate Protection Liens, the 507(b) Claims granted to the Prepetition Secured Parties, and all other rights and remedies of the Prepetition First Lien Agents and the Prepetition Secured Parties granted by the provisions of this Final Order shall survive, and shall not be modified, impaired or discharged by the entry of an order converting any one or more of these Cases to a case under chapter 7, dismissing any one or more of these Cases, terminating the joint administration of any of the Cases. The terms and provisions of this Final Order shall continue in any one or more of these Cases, in any successor cases if any one or more of these Cases cease to be jointly administered, or in any superseding Chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens and the 507(b) Claims granted to the Prepetition Secured Parties and all other rights and remedies of the Prepetition First Lien Agents and the Prepetition Secured Parties granted by the provisions of this Final Order shall continue in full force and effect until the Adequate Protection Obligations are indefeasibly paid in full in cash.

13. *Effect of Stipulations on Third Parties; Bar Date to Commence Action.* The findings, stipulations, admissions and releases contained in this Final Order, including, without limitation, those contained in paragraph 4 of this Final Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances and for all purposes and shall be binding upon all other parties in interest, including, without limitation, the Creditors' Committee, unless the Creditors' Committee (which, subject to the limitations contained in paragraph 14 of this Final Order, is hereby granted and shall have standing, authority and permission to file and prosecute such action or claim on behalf of the Debtors as of the date hereof) or another party in interest having standing has timely filed an adversary proceeding or contested matter by no later than the date that is sixty (60) days after the entry of this Final Order, subject to extension by agreement of the Creditors' Committee and the Prepetition First Lien Agents or upon order of the Court, (i) challenging the validity, enforceability, allowability, priority or extent of the Prepetition Obligations or the Prepetition Liens on the Prepetition Collateral or (ii) otherwise asserting any claim or cause of action against any of the Prepetition Secured Parties on behalf of the Debtors' estates. If no such adversary proceeding or contested matter is timely filed, (w) the Debtors' admissions, stipulations and releases contained in paragraph 4 of this Final Order shall be binding on all parties in interest, including the Creditors' Committee, (x) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in these Cases and any one or more subsequent cases under chapter 7, (y) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected security interests and liens, not subject to recharacterization,

subordination, avoidance or other defense and (z) the Prepetition Obligations, the Prepetition Liens on the Prepetition Collateral and the Prepetition Secured Parties shall not be subject to any other or further claim or challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 or 11 trustee or examiner appointed or elected for the Debtors), and any claims, causes of action, defenses and setoffs, whether arising under the Bankruptcy Code or otherwise, against the any of the Prepetition Secured Parties, and their respective affiliates, agents, officers, directors and employees, arising out of or relating to the Existing Agreements shall be deemed waived and released. If any such adversary proceeding or contested matter is properly filed as of such date, the Debtors' admissions, stipulations and releases contained in paragraph 4 of this Final Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph as to the Debtors and binding and preclusive as to all other parties in interest) except to the extent that any particular admission, stipulation or release is expressly challenged in such adversary proceeding or contested matter within such 60-day period, until there is a determination by a final order of this Court regarding such challenge.

14. *Limitation on Use of Collateral.* Notwithstanding anything herein or in any other order of this Court to the contrary, no borrowings, proceeds of Prepetition Collateral, Cash Collateral, Collateral or the Carve Out may be used (except with respect to investigation of matters referred to in clauses (a) through (d) below, in an amount not to exceed $25,000) to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount payable under the Existing Agreements, or the liens or claims granted under this Final Order or the Existing Agreements; or (b) assert any claims or defenses or causes of action against any of the Prepetition First Lien Agents or the Prepetition Secured Parties or their

respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay any of the Prepetition First Lien Agents' assertion, enforcement or realization on the Cash Collateral or the Collateral in accordance with the Existing Agreements or this Final Order, (d) seek to modify any of the rights granted to any of the Prepetition First Lien Agents or the Prepetition Secured Parties hereunder or under the Existing Agreements, in each of the foregoing cases without such parties' prior written consent, which may be given or withheld by such party in the exercise of its respective sole and absolute discretion or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of this Court.

15. *No Control*. From and after the Petition Date, no act committed or action taken by the Prepetition First Lien Agents or the Prepetition Secured Parties in connection with enforcement of any right or remedy provided for under this Final Order or the Existing Agreements shall be used or construed to hold the Prepetition First Lien Agents or the Prepetition Secured Parties to be in control of or participating in the governance, management or operations of any Debtor for any purpose by virtue of the interests, rights and remedies granted to or conferred upon the Prepetition First Lien Agents or the Prepetition Secured Parties under this Final Order or the Existing Agreements, including, without limitation, such rights and remedies as may be exercisable by the Prepetition First Lien Agents or the Prepetition Secured Parties in connection with this Final Order.

16. *Collateral Agent*. To the extent that any of the Prepetition First Lien Agents (or any predecessor, bailee, agent or designee thereof) is the secured party under any account control agreement, listed as loss payee under the Debtors' insurance policies or is the secured party under any other Existing Agreement, then such Prepetition First Lien Agent is also deemed to be

the secured party under such account control agreement, loss payee under the Debtors' insurance policies and the secured party under any other Existing Agreement, shall have all rights and powers associated with that position (including, without limitation, rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received in accordance with this Final Order. The Prepetition First Lien Collateral Agent (and any predecessor, bailee, agent or designee thereof) shall serve as agent and bailee for the Adequate Protection Liens on all Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

17.     *Limitation on Charging Expenses Against Collateral.* Subject only to and effective upon entry of this Final Order, except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including conversion of any one or more of the Cases to a case under chapter 7 of the Bankruptcy Code or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or Collateral under section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Prepetition First Lien Agents (on behalf of themselves and the Prepetition Secured Parties), and no such consent shall be implied from any other action, inaction or acquiescence by the Prepetition First Lien Agents or the Prepetition Secured Parties.

18.     *Retention of Jurisdiction.* This Court shall retain jurisdiction to enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtors, if any, notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan, if any.

19. *Binding Effect; Successors and Assigns.* The provisions of this Final Order shall be binding upon all parties in interest in these Cases, including, without limitation, the Prepetition Secured Parties, the Depository Institutions and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee or examiner hereinafter appointed or elected for the Debtors' estates) and shall inure to the benefit of the Prepetition Secured Parties and the Debtors and any of their respective successors and assigns (other than any chapter 7 or chapter 11 trustee or examiner hereinafter appointed or elected for the estates of the Debtors).

20. *Effective Upon Entry.* Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of effectiveness of this Final Order as provided in such Rules.

21. *Headings.* Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

22. This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.

23. The Debtors certify that all disclosures required by Local Rule 4001-2 have been made.

24. In the event of any conflict between the Interim Order and this Final Order, the provisions of this Final Order shall be controlling.

26

25.     The Debtors shall promptly mail copies of this Final Order to the parties having been given notice of the Final Hearing, and to any other party that has filed a request for notices with this Court.

Dated: Wilmington, Delaware

June 3, 2010

_____
THE HONORABLE MARY F. WALRATH

NY240,336,264v1