IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHEM RX CORPORATION, et al.,[1] | Case No. 10-11567 (MFW) |
| Debtors. | Jointly Administered |
| | Objection Deadline: June 28, 2010 at 4:00 p.m.<br>Hearing Date: July 6, 2010 at 3:00 p.m. |

## APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF LAZARD MIDDLE MARKET LLC AS INVESTMENT BANKER TO THE DEBTORS, *NUNC PRO TUNC* AS OF THE PETITION DATE

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), hereby submit this application (the "**Application**") for entry of an order: (a) authorizing the retention and employment of Lazard Middle Market LLC ("**LMM**") as investment banker to the Debtors, *nunc pro tunc* as of the Petition Date (as defined herein), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and (b) providing any additional relief required in order to effectuate the foregoing. The facts and circumstances supporting this Application are set forth in the declaration of Andrew Torgove (the "**Torgove**

---

[1] The Debtors and the last four digits of each Debtor's tax identification number are: Chem Rx Corporation (8469), B.J.K. Inc. (5997), ChemRx New Jersey, LLC (9370), ChemRx/Salerno's, LLC (5981), ChemRx-Boca Raton, LLC (8021) and ChemRx Care, LLC (0826). The addresses for the Debtors are: Chem Rx Corporation, 750 Park Place, Long Beach, New York, 1561; B.J.K. Inc., 750 Park Place, Long Beach, New York 11561; ChemRx New Jersey, LLC, 4041 Hadley Road, Bldg M, South Plainfield, New Jersey 07080; ChemRx/Salerno's, LLC, Route 209 & Bossardsville Road, Scotia, Pennsylvania 18354; ChemRx-Boca Raton, LLC 5001 NW 13th Ave, Suite H&I, Deerfield Beach, Florida 33064; ChemRx Care, LLC, 750 Park Place, Long Beach, New York 11561.

**Declaration**"), which is attached hereto as **Exhibit "A"** and incorporated herein by reference. In further support of this Application, the Debtors respectfully state as follows:

## Status of the Case and Jurisdiction

1. On May 11, 2010 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors have continued in possession of their properties and are operating and managing their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On May 21, 2010, the United States Trustee for Region 3 appointed an Official Committee of Unsecured Creditors. No request has been made for the appointment of a trustee or examiner in these cases.

4. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief sought herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016(b), and 5002, and Local Rule 2014-1.

## Background

6. Founded approximately 50 years ago, the Debtors are a leading long-term care pharmacy serving multiple institutions, including skilled nursing homes, group homes, correctional institutions and other long-term care facilities. The Debtors provide prescription and non-prescription drugs, intravenous medications, durable medical equipment items and surgical supplies for residents of these institutions in New York, New Jersey, Pennsylvania, and Florida. Annually, the Debtors provide over six million prescriptions to more than 69,000 residents of more than 400 institutional customers. The Debtors' operations are conducted as a

single business segment through separate corporate entities in each jurisdiction in which they are licensed to provide pharmacy services.

7. Although the Debtors' businesses remain strong, the Debtors are too highly leveraged and lack adequate liquidity to sustain operations long term. The Debtors have been in default under their secured loans since the beginning of 2009 and have been operating without an effective forbearance agreement since the end of June 2009. The Debtors have attempted over the last year to negotiate with their secured lenders over a consensual restructuring of their assets and liabilities to permit them to continue as a going concern. Those negotiations did not result in a consensus over a viable restructuring alternative.

8. On May 10, 2010, the lenders under the Debtors' first lien loans (the "**First Lien Lenders**") filed an action in New York State Court to enjoin the Debtors' use of cash that is subject to the First Lien Lenders' liens. If the First Lien Lenders were successful in enjoining the Debtors' use of their cash, the Debtors would be unable to continue operations. As a result, the Debtors, in the exercise of their reasonable business judgment and having reviewed their remaining alternatives, ultimately determined that the most effective way to maximize the value of the Debtors' estates for the benefit of their creditor constituencies was to seek bankruptcy protection in order to pursue a sale or restructuring of their assets and liabilities.

9. A more detailed factual background of the Debtors' business and operations, as well as the commencement of these chapter 11 cases (the "**Cases**"), is more fully set forth in the Declaration of Gary M. Jacobs in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief, (the "**First Day Declaration**") filed on the Petition Date and incorporated herein by reference.

**Lazard Middle Market LLC**

10. LMM is a premier middle market investment banking firm dedicated to providing the highest quality advice in mergers and acquisitions, financial restructuring and private placements. LMM provides a full range of services to assist its clients in chapter 11 reorganizations, and its expertise covers the complete spectrum of troubled situations and the full array of potential solutions, including equity and debt financing, reorganization plan formulation, valuations and expert testimony, and divestitures and asset sales.

11. The Debtors have selected LMM as their investment banker based upon, among other things, (a) the Debtors' need to retain an investment banking firm to provide advice with respect to the Debtors' restructuring activities and (b) LMM's extensive experience and excellent reputation in providing investment banking services in connection with complex chapter 11 cases.

12. LMM's professionals have extensive experience in the reorganization and restructuring of troubled companies, both out-of-court and in chapter 11 cases. LMM's employees have advised debtors, creditors, bondholders and creditors' committees in the chapter 11 cases of many companies. In addition, the current managing directors, directors, vice presidents and associates of LMM's parent company, Lazard Frères & Co. LLC ("**LF&Co.**"), have extensive experience working with financially troubled companies in complex financial restructurings out-of-court and in Chapter 11 proceedings. LF&Co. and its principals have been involved as advisor to debtors, creditors, equity constituencies and government agencies in many reorganization cases. Since 1990, LF&Co.'s professionals have been involved in over 250 restructurings, representing over $1 trillion in debtor assets.

## Relief Requested

13.     By this Application, the Debtors respectfully request that this Court enter an order authorizing them to retain and employ LMM as their investment banker in these Cases, *nunc pro tunc* as of the Petition Date.

14.     LMM's services will be rendered upon the terms and conditions of an engagement letter dated as of May 1, 2010, by and between LMM and Chem Rx Corporation, on behalf of itself and its controlled subsidiaries (the "**Engagement Letter**"), a copy of which is attached to the Torgove Declaration as Schedule 1.

15.     The Debtors seek to retain LMM, because LMM is well suited for the types of services the Debtors require in chapter 11. LMM offers the expertise and services required by the Debtors in these Cases. An experienced investment banker such as LMM fulfills a critical need that complements the services provided by the Debtors' other restructuring professionals. LMM will concentrate its efforts and resources on formulating strategic alternatives, negotiating with the Debtors' creditor constituencies, and assisting the Debtors to develop and implement a viable sale strategy and a chapter 11 plan. Accordingly, the Debtors determined that LMM has the resources and experience necessary to represent their financial interests in these Cases and desire that LMM continue to advise them in connection with these Cases.

## Scope of Employment

16.     The terms and conditions of LMM's engagement are governed by the Engagement Letter, which reflects the substantial efforts that will be required of LMM in this engagement. Pursuant to the terms of the Engagement Letter, LMM will advise the Debtors in a variety of matters, including, as reasonably requested:[2]

---

[2] The summaries of the Engagement Letter contained herein are solely for the convenience of the Court and parties in interest. To the extent that such summaries and the terms of the Engagement Letter are inconsistent, the terms of

a. reviewing and analyzing the Debtors' business, operations and financial projections;

b. assisting in the determination of a range of values for the Debtors on a going concern basis;

c. assisting the Debtors in identifying and evaluating candidates for a potential Sale Transaction, advising the Debtors in connection with negotiations and aiding in the consummation of a Sale Transaction;

d. evaluating the Debtors' potential debt capacity in light of its projected cash flows;

e. assisting in the determination of a capital structure for the Debtors;

f. rendering financial advice to the Debtors and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

g. advising the Debtors on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to the Restructuring;

h. advising and assisting the Debtors in evaluating a potential Financing transaction by the Debtors, and, subject to LMM's agreement so to act and, if requested by the Debtors or LMM, execution of appropriate agreements, contacting, on behalf of the Debtors, potential sources of capital as the Debtors may designate and assisting the Debtors in implementing such a Financing;

i. assisting the Debtors in preparing documentation within LMM's area of expertise that is required in connection with the Restructuring;

j. attending meetings of the Board of Directors of the Debtors and their committees with respect to matters on which LMM has been engaged to advise thereunder;

k. providing testimony, as necessary, with respect to matters on which LMM has been engaged to advise thereunder in any proceeding before the Bankruptcy Court; and

l. providing the Debtors with other financial restructuring advice.

---

the Engagement Letter shall control. Capitalized terms not otherwise defined in such summaries shall have the meanings ascribed to them in the Engagement Letter.

17. Subject to this Court's approval of this Application LMM has indicated that it is willing to serve as investment banker to the Debtors in these Cases to perform the services described above.

### LMM's Disinterestedness

18. To the best of the Debtors' knowledge based on the Torgove Declaration, and except to the extent disclosed herein and in the Torgove Declaration, LMM (i) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by Bankruptcy Code section 1107(b), and (ii) does not hold or represent an interest adverse to the Debtors' estates.

### Professional Compensation

19. LMM's decision to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and to be compensated for its services and reimbursed for the expenses it incurs in accordance with its customary billing practices.

20. LMM intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of this Court, and consistent with the proposed compensation set forth in the Engagement Letter (collectively, the "**Fee Structure**"). Further, because the Debtors seek to retain LMM pursuant to section 327(a) of the Bankruptcy Code with its fees reviewable pursuant to section 328(a) of the Bankruptcy Code, the Debtors believe that LMM's compensation should not be subject to the standard of review under section 330 of the Bankruptcy Code and should not constitute a "bonus" or fee enhancement under applicable law.

21. In summary, the Fee Structure provides for the following compensation to LMM:

   a. a monthly fee of $100,000 (the "**Monthly Fee**") payable on the last day of each month following execution of the Engagement Letter until earlier of the completion of the Restructuring or the termination of LMM's engagement pursuant to the Engagement Letter (for the avoidance of doubt, the first payment of $100,000 became payable on May 31, 2010 and shall be paid immediately upon approval of this Application);

   b. a fee in case the Debtors consummate a Sale Transaction incorporating all or a majority of the assets or all or a majority of controlling interest in the equity securities of the Debtors (the "**Sale Transaction Fee**") equal to the greater of (i) the fee calculated based on the Aggregate Consideration as set forth in Schedule I of the Engagement Letter or (ii) the Restructuring Fee;

   c. a fee in case the Debtors consummate a Sale Transaction not covered by the Sale Transaction Fee (the "**Minority Sale Transaction Fee**") to be agreed in good faith by the Debtors and LMM;

   d. a fee equal to $1.0 million, payable upon the consummation of a Restructuring (the "**Restructuring Fee**"); and

   e. a fee, payable upon consummation of a Financing, equal to the amount set forth in Schedule II of the Engagement Letter (the "**Financing Fee**").

22. The Fee Structure is consistent with and typical of compensation arrangements entered into by LMM and other comparable firms in connection with the rendering of similar services under similar circumstances. LMM's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of LMM's engagement, were all important factors in determining the Fee Structure. The Debtors believe that the ultimate benefit of LMM's services cannot be measured by reference to the number of hours to be expended by LMM's professionals in the performance of such services. Indeed, the Debtors and LMM have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of LMM and its

professionals in connection with these Cases and in light of the fact that (a) such commitment may foreclose other opportunities for LMM and (b) the actual time and commitment required of LMM and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for LMM.

23. LMM will maintain records in support of any expenses incurred in connection with the rendering of its services in these Cases. As LMM's compensation will be calculated and paid based on certain transaction fees (in addition to Monthly Fees), LMM requests that it not be required to file time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-2, and the United States Trustee Fee Guidelines. Notwithstanding that LMM does not charge for its services on an hourly basis, LMM will nonetheless maintain records (in summary format) of its services rendered for the Debtors in one-half hour increments including reasonably detailed descriptions of those services and the individuals who provided those services, and will present such records to the Court.

24. The Debtors also agree to reimburse any reasonable expenses incurred by LMM (including travel and lodging, data processing and communications charges, courier services and other expenditures), and the reasonable fees and expenses of counsel, if any, retained by LMM. Reimbursement of legal fees and expenses provided for in the Engagement Letter, except as provided for in the Indemnification Letter (attached to the Engagement Letter as **Addendum A**), shall not exceed $10,000 in the aggregate without the consent of the Debtors, not to be unreasonably withheld.

## Termination of Engagement

25. LMM's engagement will automatically expire on consummation of a Restructuring and may be earlier terminated by the Debtors or LMM at any time without liability or continuing obligation to the Debtors or LMM except as provided in the Engagement Letter.

### Indemnification and Contribution and Limitation of Liability Provisions

26. The Debtors have agreed to indemnify, to make certain contributions to, and to reimburse LMM and the other Indemnified Persons (as defined in the Indemnification Letter) in connection with the Engagement Letter pursuant to terms as provided in the Indemnification Letter. The Indemnification Letter provides, among other things, that the Debtors will indemnify LMM and other Indemnified Persons except to the extent that any loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith, gross negligence or willful misconduct.

27. The indemnification, contribution and reimbursement provisions reflected in the Indemnification Letter are customary and reasonable terms of consideration for investment bankers providing the services described in the Engagement Letter. The terms of the Engagement Letter were fully negotiated between the Debtors and LMM at arm's-length and the Debtors respectfully submit that the indemnification language in the Engagement Letter is reasonable and in the best interests of the Debtors, their estates, and creditors.

### No Duplication of Services

28. The Debtors intend for LMM's services to complement, and not duplicate, the services to be rendered by any other professional retained in these Cases. LMM understands that the Debtors have retained and may retain additional professionals during the term of the engagement and will work cooperatively, as requested by the Debtors, with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## Approval of Terms Of Engagement
## Pursuant to Section 328(a) of the Bankruptcy Code

29. The Debtors seek approval of the Engagement Letter, including the Fee Structure contained therein pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. Section 328(a) provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328(a) permits the compensation of professionals, including investment bankers, on flexible terms that reflect the nature of their services and prevailing market conditions for those services.

30. As set forth above, notwithstanding approval of the Engagement Letter under Bankruptcy Code section 328(a), LMM intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court and consistent with the Fee Structure set forth in the Engagement Letter.

31. The Debtors believe that the Fee Structure appropriately reflects the nature and scope of services to be provided by LMM in these complex chapter 11 Cases, LMM's substantial experience with respect to the services to be provided by LMM, and the fee structures typically utilized by LMM and other leading investment bankers that do not bill their clients on an hourly basis.

32. Indeed, similar fixed and contingency fee arrangements in other large chapter 11 cases have been routinely approved and implemented by courts in this circuit. *See, e.g., In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006) (order authorizing

retention of Miller Buckfire & Co., LLC on substantially the same terms); *In re Foamex Intl, Inc.*, Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); *In re Meridian Auto. Sys. – Composites Operations, Inc.*, Case No. 05-11168 (MFW) (Bankr. D. Del. July 19, 2005) (authorizing retention of Lazard under 11 U.S.C. §§ 327(a) and 328(a)); and *In re Oakwood Homes Corp.*, Case No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller Buckfire & Co., LLC on similar terms).

33. Likewise, similar indemnification arrangements have been approved and implemented in other large chapter 11 cases by courts in this district. *See, e.g., In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (IOC) (Bankr. D. Del. Apr. 26, 2007); *In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006); *In re Foamex Intl, Inc.*, Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005); *In re Oakwood Homes Corp.*, Case No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003); and *In re United Artists Theatre Co.*, Case No. 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000).

34. In light of the foregoing, and given the numerous issues that LMM may be required to address in the performance of its services hereunder, LMM's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for LMM's services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in Bankruptcy Code section 328(a).

35. To deny the relief requested herein will deprive the Debtors of the assistance of a uniquely qualified investment banker and would effect an unjust disadvantage to the Debtors and all parties in interest. Indeed, the Debtors would be forced to engage a new investment banker

who lacks a thorough understanding of the Debtors' business and the restructuring initiatives that have been implemented over the course of the last month and which will continue through the pendency of these Cases. It would require the commitment of significant resources for a newly retained investment advisor to get up to speed given the steep learning curve involved. Moreover, a comparable investment banker would charge an equivalent level of fees.

### Request for Approval of Retention of LMM, *Nunc Pro Tunc* as of the Petition Date

36. The Debtors request that LMM's retention be made effective, *nunc pro tunc* as of the Petition Date, in order to allow LMM to be compensated for the work it performs for the Debtors following the Petition Date and prior to the Court's consideration and approval of this Application. With the filing of these Cases, LMM will immediately have to turn its attention to urgent matters including, but not limited to, preparing the Debtors' statements and schedules, and addressing a variety of business, employee, and creditor related issues which are expected to arise as a result of these chapter 11 filings. The Debtors submit that under the circumstances, and to avoid irreparable harm to the Debtors' estates that may occur if LMM is not immediately retained, retroactive approval to the Petition Date is warranted. *See, e.g., F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.)*, 844 F.2d 99, 103 (3d Cir. 1988), cert. denied, 488 U.S. 852 (1988); and *Indian River Homes, Inc. v. Sussex Trust Co.*, 108 B.R. 46, 51 (D. Del. 1989) (approval of debtor's employment of attorney and real estate agent as of a prior date was not an abuse of discretion).

### Notice

37. Notice of this Application has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) counsel to the Debtors' prepetition secured lenders; (c) proposed counsel to the Official Committee of

Unsecured Creditors; and (d) those parties requesting notice pursuant to Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

### No Prior Request

38.     No prior request for the relief sought in this Application has been made to this Court or any other court.

### Conclusion

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing the Debtors to employ and retain LMM as investment banker to the Debtors, *nunc pro tunc* to the Petition Date, (ii) approving the terms of the Engagement Letter and (iii) granting such other and further relief necessary to effectuate the foregoing.

Dated: Wilmington, Delaware
       June 10, 2010

                                        CHEM-RX CORPORATION, *et al.*,
                                        Debtors and Debtors-in-Possession

                                        /s/ Gary M. Jacobs
                                        Gary M. Jacobs
                                        Chief Financial Officer