# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHEM RX CORPORATION, *et al.*,[1] | Case No. 10-11567 (MFW) |
| Debtors. | Jointly Administered |
| | Objection Deadline: September 21, 2010 at 4:00 p.m.<br>Hearing Date: October 4, 2010 at 11:30 a.m. |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING THE EXCLUSIVE PERIODS DURING WHICH THE DEBTORS MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby move the Court (the "**Motion**"), pursuant to section 1121(d) of title 11 of the United States Code (the **"Bankruptcy Code"**) for entry of an order extending the time within which the Debtors may file a chapter 11 plan and solicit acceptances thereof. In support of this Motion, the Debtors respectfully state as follows:

### Preliminary Statement

1. The Debtors filed these cases on May 11, 2010 (the "**Petition Date**"), in an attempt to preserve the value of their business in the face of an attempt by the lenders under their first lien loans (the "**First Lien Lenders**") to exercise remedies. Because of the emergency nature of these cases, the Debtors have spent the first 120 days of their cases negotiating with the First Lien Lenders and the Official Committee of Unsecured Creditors (the "**Committee**") over the terms of continued use of cash collateral and the direction of these cases, stabilizing

---

[1] The Debtors and the last four digits of each Debtor's tax identification number are: Chem Rx Corporation (8469), B.J.K. Inc. (5997), ChemRx New Jersey, LLC (9370), ChemRx/Salerno's, LLC (5981), ChemRx-Boca Raton, LLC (8021) and ChemRx Care, LLC (0826). The addresses for the Debtors are: Chem Rx Corporation, 750 Park Place, Long Beach, New York, 1561; B.J.K. Inc., 750 Park Place, Long Beach, New York 11561; ChemRx New Jersey, LLC, 4041 Hadley Road, Bldg M, South Plainfield, New Jersey 07080; ChemRx/Salerno's, LLC, Route 209 &

operations, preserving customer and employee relations, and transitioning into Chapter 11. In addition, the Debtors have devoted substantial resources to soliciting offers and indentifying a stalking horse purchaser (the "**Stalking Horse**") for the sale of substantially all their assets. The Debtors are nearing completion of their process to identify the Stalking Horse and anticipate filing a motion to approve bid procedures and a stalking horse asset purchase agreement in the near term. The Debtors are also in the process of developing proposals to discuss with the First Lien Lenders and the Committee for the resolution of these cases post sale.

2. As a result of the foregoing, the Debtors need additional time to formulate and propose a chapter 11 plan and submit that ample cause exists under section 1121(d) of the Bankruptcy Code to extend each of the deadline to file a chapter 11 plan and the deadline to solicit acceptances of such plan by approximately 90 days.

## Status of the Case and Jurisdiction

3. On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors have continued in possession of their properties and are operating and managing their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On May 21, 2010, the United States Trustee for Region 3 appointed the Committee. No request has been made for the appointment of a trustee or examiner in these cases.

---

Bossardsville Road, Scotia, Pennsylvania 18354; ChemRx-Boca Raton, LLC 5001 NW 13th Ave, Suite H&I, Deerfield Beach, Florida 33064; ChemRx Care, LLC, 750 Park Place, Long Beach, New York 11561.

2

6. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

7. The statutory predicate for the relief requested herein is section 1121(d) of the Bankruptcy Code.

**Background**

8. Founded approximately 50 years ago, the Debtors are a leading long-term care pharmacy serving multiple institutions, including skilled nursing homes, group homes, correctional institutions and other long-term care facilities. The Debtors provide prescription and non-prescription drugs, intravenous medications, durable medical equipment items and surgical supplies for residents of these institutions in New York, New Jersey, Pennsylvania, and Florida. Annually, the Debtors provide over six million prescriptions to more than 69,000 residents of more than 400 institutional customers. The Debtors' operations are conducted as a single business segment through separate corporate entities in each jurisdiction in which they are licensed to provide pharmacy services.

9. Although the Debtors' businesses remain strong, the Debtors are too highly leveraged and lack adequate liquidity to sustain operations long term. The Debtors have been in default under their secured loans since the beginning of 2009 and have been operating without an effective forbearance agreement since the end of June 2009. In the year prior to the Petition Date, the Debtors attempted to negotiate with their secured lenders over a consensual restructuring of their assets and liabilities to permit them to continue as a going concern. Those negotiations did not result in a consensus over a viable restructuring alternative.

10. On May 10, 2010, the First Lien Lenders filed an action in New York State Court to enjoin the Debtors' use of cash that is subject to the First Lien Lenders' liens. If the First Lien Lenders had been successful in enjoining the Debtors' use of their cash, the Debtors would have been unable to continue operations. As a result, the Debtors, in the exercise of their reasonable business judgment and having reviewed their remaining alternatives, ultimately determined that the most effective way to maximize the value of the Debtors' estates for the benefit of their creditor constituencies was to seek bankruptcy protection in order to pursue a sale or restructuring of their assets and liabilities in chapter 11.

11. A more detailed factual background of the Debtors' business and operations and the events leading up to the commencement of these chapter 11 cases (the "**Cases**"), is more fully set forth in the Declaration of Gary M. Jacobs in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief filed on the Petition Date and incorporated herein by reference.

## The Chapter 11 Cases

12. Because of the emergency nature of the Debtors' filing, the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code on May 11, 2010, without financing in place or a proposed asset purchase agreement with a stalking horse bidder. Immediately after the filing and prior to the "first day" hearing the Debtors negotiated a stipulation with the First Lien Lenders for authorization to use cash collateral to make certain payments related to payroll and purchase prescription medications to keep the Debtors' businesses running through the first day hearing. The Court approved the stipulation by and between the Debtors and the First Lien Lenders on May 12, 2010 [Docket No. 19].

4

13. The Debtors next negotiated an interim order authorizing the use of cash collateral, which the Court entered on May 13, 2010 [Docket No. 37], and a final order authorizing the use of cash collateral, which the Court entered on June 3, 2010 [Docket No. 110] (collectively, the "**Cash Collateral Orders**").

14. As an integral part of the Cash Collateral Orders, the Debtors and First Lien Lenders negotiated and the Debtors agreed expeditiously to pursue a process to sell substantially all of the Debtors' assets (the "**Sale Process**"). The Cash Collateral Orders set forth an aggressive timeline in connection with the Sale, which has since been extended consensually by the Debtors and First Lien Lenders. The Debtors have thus devoted substantial time and resources to the Sale Process.

15. Shortly prior to the Petition Date and once in chapter 11, the Debtors retained Lazard Middle Market LLC ("**LMM**"), as investment banker to identify potential parties to as purchasers of the Debtors' ongoing businesses. Since the Petition Date, LMM has been actively engaged in marketing the Debtors' business to potential purchasers with the goal of identifying a Stalking Horse prior to the Debtors proceeding with auction and sale process before the Court.

16. LMM identified and contacted on behalf of the Debtors over 150 prospective purchasers. Of the those parties, sixty-six confirmed interest and signed non-disclosure agreements to perform due diligence. The Debtors with the assistance of LLM have populated a data room with due diligence materials for review by potential purchasers, which they continually update with new information and information requested by the interested parties. The Debtors' management has also participated in formal management presentations and continually has discussions with prospective purchasers. As a result of this process, the Debtors

5

anticipate filing a motion in the near terms seeking approval of bid procedures and a stalking horse agreement for the sale of their assets under section 363 of the Bankruptcy Code.

17. In light of the substantial time and effort the Debtors have spent in transitioning into chapter 11, stabilizing operations, and running the Sale Process, the Debtors have been unable to devote sufficient time to developing a post-sale plan. The Debtors are currently in the process of formulating a proposal and will meet with the First Lien Lenders and the Committee to discuss and negotiate over the resolution of these cases.

## Relief Requested

18. By this Motion, the Debtors seek the entry of an order pursuant to section 1121(d) of the Bankruptcy Code: (a) extending the deadline for the Debtors to file a chapter 11 plan (the **"Exclusive Filing Period"**), which deadline currently expires on September 8, 2010, by 90 days, through and including December 7, 2010, and (b) extending the deadline for the Debtors to solicit acceptances of such chapter 11 plan (the **"Exclusive Solicitation Period"** and together with the Exclusive Filing Period, the **"Exclusive Periods"**), which deadline currently expires on November 7, 2010, by 91 days, through and including February 6, 2011.

## Basis for Relief

19. Pursuant to section 1121(b) of the Bankruptcy Code, a debtor has the exclusive right to file a chapter 11 plan during the first 120 days after the commencement of a chapter 11 case. If a debtor files a plan during this period, pursuant to section 1121(c)(3) of the Bankruptcy Code, an additional 60 day period is automatically granted during which the debtor may exclusively solicit acceptance of the plan.

20. Section 1121(d) of the Bankruptcy Code provides that the Court may extend these exclusive periods for cause. See 11 U.S.C. § 1121(d) ("[O]n request of a party in interest and

DEL 86338747v2 September 7, 2010

after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.").

21. While the Bankruptcy Code does not define the term "cause" in this context, it is well established that the decision to extend a debtor's exclusivity periods is committed to the sound discretion of the Bankruptcy Court and should be based upon the facts and circumstances of a particular case. See In re Sharon Steel Corp., 78 B.R. 762, 763 (Bankr. W.D. Pa. 1987); First American Bank of New York v. Southwest Gloves and Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986); In re Reetz, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). Courts have looked to the legislative history of Section 1121(d) for guidance. See In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409 (E.D.N.Y. 1989); In re Amko Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996).

22. Congress intended that the exclusive periods be of an adequate length, given the circumstances, for a debtor to formulate, negotiate, and draft a viable plan, without the disruption to the business that would occur with the filing of competing plans. As summarized in In re Public Service Co. of New Hampshire:

> [Section] 1121(d) provides a "for cause" standard in determining exclusivity extension requests. As might be inferred from such a general standard, the legislative intent has been construed to leave the question to the reorganization court in the exercise of its discretion and to promote maximum flexibility to suit various types of reorganization proceedings.

88 B.R. 521, 534 (Bankr. D. N.H. 1988); see H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 232 (1977) (emphasis added) (footnotes omitted); Amko Plastics, 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity); Gaines v. Perkins (In re Perkins), 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of ... [Section 1121(d)] is flexibility").

7

23. Courts in Delaware routinely grant requests by a debtor to extend exclusive periods, many times even more than once. See, e.g., In re SemCrude, L.P., Case No. 08-11525 (BLS) (Bankr. D. Del. Apr. 14, 2009 and Dec. 9, 2008) (twice extending the Exclusive Periods by approximately 90 days each time); In re Global Motorsport Group, Inc., Case No. 08-10192 (KJC) (Bankr. D. Del. Sept. 9, 2008) (extending Exclusive Periods by approximately 120 days); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. June 10, 2008) (extending the Exclusive Periods by approximately 130 days); In re Friedman's, Inc., Case No. 08-10161 (CSS) (Bankr. D. Del. May 2, 2008) (extending the Exclusive Periods by 120 days)

24. When determining whether cause exists for an extension of a debtor's exclusivity periods, courts have relied on a variety of factors, each of which may provide sufficient grounds for extending the periods. Factors considered by courts in reaching a determination have included: (a) the size and complexity of the case; (b) the necessity of sufficient time to negotiate and prepare adequate information; (c) the existence of good faith progress toward reorganization; (d) whether the debtor is paying its debts as they come due; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in negotiating with creditors; (g) the length of time the case has been pending; (h) whether the debtor is seeking the extension to pressure creditors; and (i) whether unresolved contingencies exist. See In re Express One Int'l Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); see also In re Adelphia, 342 B.R. 122, 131 (Bankr. S.D.N.Y. 2006) (while the court considered the factors, it focused on whether "debtors had made a good faith progress towards reorganization and whether the extension of exclusivity was sought to pressure creditors to submit to debtor's reorganization demands").

DEL 86338747v2 September 7, 2010

25. Application of these factors supports approval of the Debtors' request for an extension of the Exclusive Periods in these Cases. During the pendency of these Cases, the Debtors have worked diligently to transition into chapter 11, obtain necessary funding, manage their businesses, administer their estates and these Cases, and have been diligently working with their lenders, the Committee, and prospective purchasers to negotiate and structure a sale process that will maximize the value of their estates.

26. Moreover, the Debtors' good-faith progress during the early stages of these Cases, including significant efforts toward implementing a sale process, weighs in favor of granting the requested extension of the Exclusive Periods. The Debtors further submit that the extension of the Exclusive Periods requested herein will not prejudice creditors or other parties-in-interest as the Debtors are not seeking an extension of the Exclusive Periods to delay creditors or force them to accede to the Debtors' demands. The Debtors and their professionals consistently have, as appropriate, conferred with and worked cooperatively with their secured lender, the Committee, the United States Trustee, and other parties-in-interest on major substantive and administrative matters in these Cases.

27. This is the first request for an extension of the Exclusive Periods made by the Debtors, whose cases have been pending since May 11, 2010.

28. In light of the foregoing factors, the Debtors' request for an extension is justified. The extension requested by the Debtors is within the 18 and 20 month extension limits now set forth in Sections 1121(d)(2)(A) and (B) of the Bankruptcy Code (which would be November 11, 2010 and January 11, 2011, respectively).

9

29. For all of the foregoing reasons, the Debtors respectfully submit that cause exists under Section 1121(d)(1) of the Bankruptcy Code and that the equities weigh strongly in favor of granting the Debtors an extension of the Exclusive Periods as requested herein.

## **Notice**

30. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) counsel for the Debtors' pre-petition First Lien Lenders; (c) counsel to the Committee; and (d) all parties who have requested notice in these Cases pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

31. No previous application for the relief sought herein has been made to this or any other court.

[Signature on next page]

## Conclusion

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein and that it grant the Debtors such other and further relief as is just and proper.

Dated: September_7, 2010                  GREENBERG TRAURIG, LLP

/s/ Dennis A. Meloro
Scott D. Cousins (DE Bar No. 3079)
Dennis A. Meloro (DE Bar No. 4435)
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: cousinss@gtlaw.com
        melorod@gtlaw.com

-and-

Nancy A. Mitchell
Maria J. DiConza
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: mitchelln@gtlaw.com
       diconzam@gtlaw.com

Counsel for the Debtors and Debtors-in-Possession