## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHEM RX CORPORATION, *et al.*,[1] | Case No. 10-11567 (MFW) |
| Debtors. | Jointly Administered<br>Objection Deadline: October 15, 2010 at 4:00p.m.<br>Hearing Date: To be determined |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING CHEMRX CARE, LLC TO SELL ITS MEMBERSHIP INTERESTS IN CHEM RX CHICAGO, LLC FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby move the Court (the "**Motion**"), pursuant to sections 363(b), (f), and (m) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**") and Rules 2002-1 and 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking entry of an order authorizing Debtor ChemRx Care, LLC ("**ChemRx Care**") to sell its 49.9% membership interests (the "**Membership Interests**") in Chem Rx Chicago, LLC (the "**Chicago JV**") to its 50.1% joint venture partner in the Chicago JV, New York Boys Management, LLC ("**NY Boys**"), free and clear of all liens, claims, encumbrances, and other interests, and granting related relief. In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors and the last four digits of each Debtor's tax identification number are: Chem Rx Corporation (8469), B.J.K. Inc. (5997), ChemRx New Jersey, LLC (9370), ChemRx/Salerno's, LLC (5981), ChemRx-Boca Raton, LLC (8021) and ChemRx Care, LLC (0826). The addresses for the Debtors are: Chem Rx Corporation, 750 Park Place, Long Beach, New York, 1561; B.J.K. Inc., 750 Park Place, Long Beach, New York 11561; ChemRx New Jersey, LLC, 4041 Hadley Road, Bldg M, South Plainfield, New Jersey 07080; ChemRx/Salerno's, LLC, Route 209 *&* Bossardsville Road, Scotia, Pennsylvania 18354; ChemRx-Boca Raton, LLC 5001 NW 13th Ave, Suite H&I, Deerfield Beach, Florida 33064; ChemRx Care, LLC, 750 Park Place, Long Beach, New York 11561.

## Status of the Case and Jurisdiction

1. On May 11, 2010 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors have continued in possession of their properties and are operating and managing their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On May 21, 2010, the United States Trustee for Region 3 appointed an Official Committee of Unsecured Creditors. No request has been made for the appointment of a trustee or examiner in these cases.

4. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief sought herein are section 363(b), (f), and (m) of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004 and Local Rules 2002-1 and 6004-1.

## Background

6. Founded approximately 50 years ago, the Debtors are a leading long-term care pharmacy serving multiple institutions, including skilled nursing homes, group homes, correctional institutions and other long-term care facilities. The Debtors provide prescription and non-prescription drugs, intravenous medications, durable medical equipment items and surgical supplies for residents of these institutions in New York, New Jersey, Pennsylvania, and Florida. Annually, the Debtors provide over six million prescriptions to more than 69,000 residents of more than 400 institutional customers. The Debtors' operations are conducted as a

single business segment through separate corporate entities in each jurisdiction in which they are licensed to provide pharmacy services.

7. Although the Debtors' businesses remain strong, the Debtors are too highly leveraged and lack adequate liquidity to sustain operations long term. The Debtors have been in default under their secured loans since the beginning of 2009 and have been operating without an effective forbearance agreement since the end of June 2009. The Debtors have attempted over the last year to negotiate with their secured lenders over a consensual restructuring of their assets and liabilities to permit them to continue as a going concern. Those negotiations did not result in a consensus over a viable restructuring alternative.

8. On May 10, 2010, the lenders under the Debtors' first lien loans (the "**First Lien Lenders**") filed an action in New York State Court to enjoin the Debtors' use of cash that is subject to the First Lien Lenders' liens. If the First Lien Lenders were successful in enjoining the Debtors' use of their cash, the Debtors would be unable to continue operations. As a result, the Debtors, in the exercise of their reasonable business judgment and having reviewed their remaining alternatives, ultimately determined that the most effective way to maximize the value of the Debtors' estates for the benefit of their creditor constituencies was to seek bankruptcy protection in order to pursue a sale or restructuring of their assets and liabilities.

9. A more detailed factual background of the Debtors' business and operations, as well as the commencement of these chapter 11 cases (the "**Cases**"), is more fully set forth in the Declaration of Gary M. Jacobs in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief, filed on the Petition Date and incorporated herein by reference.

**The Debtors' Sale Efforts**

10. On May 1, 2010, the Debtors retained Lazard Middle Market LLC ("**LMM**"), as investment banker to advise them in connection with a potential sale or restructuring of the

Debtors' business. In connection with its retention, LMM has been actively engaged in planning and executing a process to market the Debtors' business to potential purchasers with the goal of identifying a stalking horse bidder for the sale of substantially all of the Debtors' assets prior to the Debtors' proceeding with an auction and sale process before the Court (the "**Sale Process**").

11. As a result of the Sale Process, on September 27, 2010, the Debtors filed *Motion for Entry of Orders: (A)(I) Approving Bid Procedures Relating to Sale of the Debtors' Assets; (II) Approving Bid Protections; (III) Scheduling a Hearing to Consider the Sale; (IV) Approving the Form and Manner of Notice of Sale by Auction; (V) Establishing Procedures for Noticing and Determining Cure Amounts; and (VI) Granting Related Relief; and (B)(I) Approving Asset Purchase Agreement and Authorizing the Sale of Certain Assets of Debtors Outside the Ordinary Course of Business; (II) Authorizing the Sale of Assets Free and Clear of Liens, Claims, Encumbrances and Interests; (III) Authorizing the Assumption, Sale and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [Docket No. 349] (the **"Sale Motion"**), seeking approval of bid procedures and a stalking horse agreement (the "**Stalking Horse Agreement**") for the sale of substantially all of their assets under section 363 of the Bankruptcy Code to Chem Rx Acquisition Sub, LLC, as buyer ("**PharMerica Sub**"), and PharMerica Corporation, as guarantor ("**PharMerica**" and, together with PharMerica Sub, the "**Stalking Horse Bidder**").

12. The Sale Process is set forth in detail in the Sale Motion, and incorporated herein by reference. Both in conjunction with the Sale Process and independently, the Debtors and LLM sought offers for the sale of the Membership Interests. One such offer was received by NY Boys. After negotiations between the Debtors and NY Boys, NY Boys offered to purchase the Membership Interests for $2,525,000 (the **"Purchase Price"**), pursuant to the terms of the

binding letter of intent annexed hereto as **Exhibit A** (the "**LOI**"). The Purchase Price has been put in escrow with Debtors' counsel and there are no contingencies to closing other than Bankruptcy Court approval. The Purchase Price is more than any other party, including the Stalking Horse Bidder, offered for the Membership Interests. The Debtors thus determined that the sale of the Membership Interests to NY Boys was in the best interests of their estates.

13. In addition to NY Boys having provided the highest and best offer to the Debtors for the sale of the Membership Interests in terms of purchase price and lack of contingencies, other factors weigh in favor of the Debtors' determination that the sale of the Membership Interests is in the best interest of the Debtors' estates. Pursuant to section 7.2 of the Chicago JV (the "**Operating Agreement**") attached hereto as **Exhibit B**, the Chicago JV has the right of first refusal to purchase all or some of the Membership Interests. If the Chicago JV determines not to exercise its right to purchase the Membership Interests, NY Boys may purchase all or a portion of the offered interests on the terms set forth in the proposed sale. *See* Operating Agreement at Section 7.2(b). The Operating Agreement also provides that the unanimous consent of the board of managers of the Chicago JV is required to (i) approve any change of control or other business combination or acquisition of ownership in the company, and (ii) admit any person as a member of the company. *See* Operating Agreement at Section 5.1(c). The board of managers is comprised of two managers elected by NY Boys and one manager elected by Chem Rx Care. Thus, any offer by a third party essentially would require NY Boys' consent. Accordingly, the sale of the Membership Interests to NY Boys is the most cost effective and efficient means of selling such Membership Interests. Because the offer from NY Boys was also the highest and best offer, the Debtors determined in the exercise of their business judgment to proceed immediately to seek approval of the sale pursuant to the LOI.

14. Pursuant to the LOI, NY Boys has agreed to purchase Chem Rx Care's interests in the Chicago JV on the following terms:

- Transaction: NY Boys to acquire ChemRx Care's 49.9% interest in the Chicago JV.

- Purchase Price: $2,525,000 cash.

- Payment of Purchase Price: Upon execution of the LOI, NY Boys wired the Purchase Price to Debtors' counsel to be held in escrow pending approval of the Sale by the Bankruptcy Court. Upon approval of the Sale by the Bankruptcy Court the Purchase Price shall be paid over to Debtor or as directed in the Order approving the Sale and all interest earned thereon shall be returned to NY Boys. In the event the Sale is not approved by the Bankruptcy Court the Purchase Price (including interest earned thereon) shall be returned to NY Boys.

- Due Diligence: Waived.

- Inspection: Waived.

- As-Is: Sale of ChemRx Care's interests in the Chicago JV is as-is.

- Closing: Closing of the Sale shall occur within 5 days of approval of the Sale by the Bankruptcy Court.

- Membership Interest Purchase Agreement: The Debtor and NY Boys are negotiating terms of a membership interest purchase agreement (the "**MIPA**"), which shall contain terms (i) consistent with the terms of the LOI and (ii) subject to approval by the Bankruptcy Court. The Debtors will file a copy of the MIPA promptly after it is executed.

**Relief Requested**

15. Pursuant to sections 363(b), (f), and (m) of the Bankruptcy Code, the Debtors seek entry of an order authorizing ChemRx Care to sell its membership interests in the Chicago

JV free and clear of all liens, claims, encumbrances, and other interests, with such liens, claims, encumbrances and other interests to attached to the sale proceeds, and granting related relief.

## Basis for Relief Requested

### Sale of ChemRx Care's Membership Interests in the Chicago JV is Authorized by Section 363(b) of the Bankruptcy Code

16. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtors. *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Dai-Ichi Kangyo Bank, Ltd v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D.D.C. 1991).

17. The "sound business judgment" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely, (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business; (b) that adequate and reasonable notice has been provided to interested persons; (c) that the debtors have obtained a fair and reasonable price; and (d) good faith. *Abbotts Dairies*, 788 F.2d 143; *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd*, 104 B.R. 702, 704 (Bankr. E.D. Pa.

1989).  The Debtors submit that the decision to proceed with the Sale is based upon their sound business judgment and should be approved.  A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).  Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. *Lionel*, 722 F.2d at 1071; *Montgomery Ward*, 242 B.R. at 155 (approving funding of employee incentive and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization).

18. The Debtors submit that sound business justification exists to sell the Membership Interests to NY Boys.  As set forth in the Sale Motion, the Debtors are in the process of selling substantially all of their assets.  The Debtors have concluded that the sale of the Membership Interests to NY Boys furthers their goal of maximizing the value of their estates.  The Debtors believe that the sale to NY Boys provides the highest and best offer for the sale of the Membership Interests.

19. Thus, the relief sought herein is not only reasonable, but necessary, to maximize the value of the Debtors' estates for the benefit of their stakeholders.

**Sale of ChemRx Care's Membership Interests in the Chicago JV
is Appropriately Consummated by Private Sale**

20. In accordance with Bankruptcy Rule 6004(f)(1), asset sales outside of the ordinary course of business may be by private or public sale. Fed. R. Bankr. P. 6004(f)(1).  A debtor has broad discretion in determining the manner in which its assets are sold. *Berg v. Scanlon (In re Alisa P 'ship)*, 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("[T]he manner of [a] sale is within the discretion of the trustee . . ."); *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y.

1998) (noting that a trustee has "ample discretion to administer the estate, including authority to conduct public or private sales of estate property") (internal quotations and citations omitted). As long as a debtor maximizes the return to its estate, a court should defer to a debtor's business judgment. *See In re Bakalis*, 220 B.R. at 532 (recognizing that although a trustee's business judgment enjoys great judicial deference, a duty is imposed on the trustee to maximize the value obtained from a sale); *In re Nepsco, Inc.*, 36 B.R. 25, 26 (Bankr. D. Me. 1983) ("Clearly, the thrust of th[e] statutory scheme [governing 363 sales] is to provide maximum flexibility to the trustee, subject to the oversight of those for whose benefit he acts, i.e., the creditors of the estate."). Accordingly, if a debtor concludes that conducting a private sale, as opposed to a public auction, is in the best interest of the estate, the debtor should be permitted to do so. *See Penn Mut. Life Ins. Co. v. Woodscape Ltd P 'ship (In re Woodscape Ltd P 'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect to sales of estate property, "Where is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction.").

21. Here, the Debtors marketed the Membership Interests for over 4 months since the Petition Date. There were only a limited number of parties interested in purchasing the Membership Interests. Each party that expressed an interest at a lower price than offered by NY Boys with significant conditions and contingencies to closing. The Debtors believe that to achieve the highest selling price for ChemRx Care's interests in the Chicago JV, NY Boys is the best viable purchaser given the right of first refusal and the very nature of the JV as a partnership requiring the cooperation of NY Boys. Moreover, a private sale of the Membership Interests in the Chicago JV to NY Boys is the most cost-effective way to sell such interests.

**The Membership Interests may be Sold Free and Clear
Pursuant to Section 363(f) of the Bankruptcy Code**

22. The Debtors further submit that it is appropriate that the Membership Interests in the Chicago JV be sold free and clear of liens, claims, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances, or interests to attach to the sale proceeds thereof. The First Lien Lenders have consented to the sale, provided that, at the closing of the sale, the proceeds of the sale are put in escrow pending determination of whether the First Lien Lenders or some other party(ies) are paid over to them.

23. The Debtors do not believe any other entity holds a lien on the Membership Interests.[2] Accordingly, the Debtors are authorized pursuant to section 363(f)(2) of the Bankruptcy Code to sell Chem Rx Care's Membership Interests in the Chicago JV.

24. In light of the foregoing, the Debtors respectfully request that, pursuant to section 363 of the Bankruptcy Code, the Court authorize the Debtors to sell the Membership Interests to NY Boys free and clear of liens, claims, and encumbrances, and the proceeds of such sale to be paid over to the First Lien Agent at the closing of the sale.

**NY Boys is a Good Faith Purchaser and is Entitled to
the Full Protections of Section 363(m) of the Bankruptcy Code**

25. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

---

[2] After the Petition Date, one or both of the second lien lenders purportedly elected to waive their liens such that as of the date thereof, they would hold wholly unsecured claims. To the extent any liens remain under the second lien credit facility, the Intercreditor Agreement between the first and second lien lenders provides the second lien lenders will not raise an objection or oppose a motion to sell or otherwise dispose of any of the Prepetition Collateral free and clear of their liens or other claims under section 363 of the Bankruptcy Code which has been consented to by the First Lien Lenders.

11 U.S.C. § 363(m).

26. While the Bankruptcy Code does not define "good faith," the Third Circuit in *Abbotts Dairies*, has stated:

> [t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted).

27. Moreover, the Second Circuit has indicated that a party would have to show fraud or collusion between the buyer and the debtor-in-possession or trustee or other bidders in order to demonstrate a lack of good faith. *See In re Colony Hill Assocs.,* 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders").

28. The Debtors submit that the sale of Chem Rx Care's Membership Interests in the Chicago JV to NY Boys is the result of a negotiated, arm's-length transaction, in which the Debtors and NY Boys at all times acted in good faith. The Debtors thus request that the Court find that NY Boys will be purchasing Chem Rx Care's Membership Interests in the Chicago JV in good faith within the meaning of section 363(m) of the Bankruptcy Code.

**Relief Under Bankruptcy Rule 6004(h)**

29. Bankruptcy Rule 6004(h) provides that an 'order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." In order to effectuate the sale of the Membership Interests expeditiously, the Debtors request that any order approving the sale of the Accounts be effective immediately by providing that the 14-day stay is waived.

**Notice**

30.     Notice of this Motion has been provided to the Office of the United States Trustee for the District of Delaware, counsel to the Committee, counsel to the agents for the First Lien Lenders, NY Boys, and all parties requesting notices pursuant to Bankruptcy Rule 2002 by mail. The Debtors submit that no other or further notice need be provided.

**No Prior Request**

31.     No previous request for the relief sought herein has been made to this or any other court.

[Signature on Next Page]

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein and such other and further relief as is just and proper.

Dated: September 29, 2010
       Wilmington, Delaware

GREENBERG TRAURIG, LLP

/s/ Dennis A. Meloro
Scott D. Cousins (DE Bar No. 3079)
Dennis A. Meloro (DE Bar No. 4435)
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: cousinss@gtlaw.com
       melorod@gtlaw.com

-and-

Nancy A. Mitchell
Maria J. DiConza
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: mitchelln@gtlaw.com
      diconzam@gtlaw.com

Counsel for the Debtors
and Debtors-in-Possession