# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | ) Chapter 11 |
|  | ) |
| Chem Rx Corporation, et al.,[1] | ) Case No. 10–11567 (MFW) |
|  | ) |
|  | ) Jointly Administered |
| Debtors. | ) |
|  | ) **Re: Docket No. 318** |
|  | ) **Hearing Date: October 4, 2010 at 11:30 a.m. (ET)** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING THE EXCLUSIVE PERIODS DURING WHICH THE DEBTORS MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases of Chem Rx Corporation and its affiliated debtors in possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the motion of the Debtors for entry of an order pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"), extending the exclusive periods during which the Debtors may file a chapter 11 plan and solicit acceptances thereof [Docket No. 318] (the "Motion"). The Committee respectfully represents as follows:

**Preliminary Statement**

1. The period of exclusivity afforded a chapter 11 debtor under section 1121 of the Bankruptcy Code is intended to facilitate the fundamental rehabilitation policy of chapter

---

[1] The Debtors and the last four digits of each Debtor's tax identification number are: Chem Rx Corporation (8469), B.J.K. Inc. (5997), ChemRx New Jersey, LLC (9370), ChemRx/Salerno's, LLC (5981), ChemRx-Boca Raton, LLC (8021) and ChemRx Care, LLC (0826).

11 by forcing creditor constituencies to negotiate with the debtor regarding the terms of a plan of reorganization for a reasonable period of time. The basic underpinning for the preservation of exclusivity is vitiated, however, when a debtor enters chapter 11 without the intention of reorganizing, but instead seeks only to utilize chapter 11 for only so long as it takes to liquidate for the benefit of its secured lenders. Indeed, it is difficult to discern what chapter 11 policy supports the continuance of exclusivity when the debtor has abandoned any hope of reorganizing.

2. Since the inception of these chapter 11 cases some four months ago, the Debtors agreed to sell substantially all of their assets in an expedited fashion. Currently, the Debtors have a stalking horse bidder, and it is expected that the sale of substantially all of the Debtors' assets will be consummated in the very near future. Once such a sale is approved by the Court, there is no complexity to these cases which necessitates an extension of exclusivity. As a result, an extension of the exclusive periods here is unnecessary and would only result in wasted time and resources—the Debtors have no intention of rehabilitating or reorganizing their business as a going concern.

3. Accordingly, the Committee respectfully submits that the Debtors' request should be denied and that other parties in interest (including the Committee) should have an opportunity to submit and solicit their own chapter 11 plan in these cases.

## Background

4. On May 11, 2010 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware, thereby commencing their respective chapter 11 cases. These chapter 11 cases are being jointly administered.

5. The Debtors are in possession of their properties and operating their business as debtors and debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. On May 13, 2010, the Court entered an interim order [Docket No. 37], and on June 3, 2010, the Court entered a final order authorizing the Debtors' use of cash collateral [Docket No. 110] (the "Final Cash Collateral Order"). As a condition to entry of the Final Cash Collateral Order, the Debtors, after negotiation with the lenders under the first lien credit facilities, agreed to sell substantially all of their assets in an expedited fashion.

7. On May 21, 2010, the Office of the United States Trustee for the District of Delaware appointed the Committee pursuant to section 1102 of the Bankruptcy Code. No request has been made for the appointment of a trustee or an examiner in these chapter 11 cases.

8. In May 2010, the Debtors retained Lazard Middle Market LLC ("LMM") to assist in marketing and identifying potential purchasers for the Debtors' business. LMM has been in contact with interested purchasers over several months in order to identify a stalking horse bidder for the sale process.

9. On September 27, 2010, the Debtors filed a motion for entry of an order (A) (I) approving bid procedures relating to sale of the Debtors' assets; (II) approving bid protections; (III) scheduling a hearing to consider the sale; (IV) approving the form and manner of notice of sale by auction; (V) establishing procedures for noticing and determining cure amounts; and (VI) granting related relief; and (B) (I) approving asset purchase agreement and authorizing the sale of certain assets of Debtors outside the ordinary course of business; (II) authorizing the sale of assets free and clear of all liens, claims, encumbrances and interests; (III) authorizing the assumption, sale and assignment of certain executory contracts and

unexpired leases; and (IV) granting related relief [Docket No. 349] (the "Sale Motion"). Pursuant to the Sale Motion, the Debtors intend for the deadline to submit Qualified Bids (as defined in the Sale Motion) to be October 25, 2010 at 12:00 p.m. (Prevailing Eastern Time). Furthermore, the auction, if necessary, is proposed to be held at 9:00 a.m. (Prevailing Eastern Time) on October 27, 2010.

**Objection**

10. Section 1121 of the Bankruptcy Code gives a debtor the exclusive right to file a chapter 11 plan during the first 120 days of a chapter 11 case. 11 U.S.C. § 1121(b). Additionally, section 1121(d) of the Bankruptcy Code provides the bankruptcy court with the authority to extend a debtor's exclusive period, for cause shown, upon a motion by the debtor or a party in interest. 11 U.S.C. § 1121(d). This exclusivity period affords the debtor the opportunity to negotiate the settlement of its debts by proposing and soliciting support for a plan of reorganization without interference – in the form of competing plans – from its creditors or others in interest. In re Geriatrics Nursing Home, Inc., 187 B.R. 128, 131 (D.N.J. 1995) (citing legislative history).

11. It is the Debtor's burden, by affirmative evidence, to clearly demonstrate the existence of good cause for a requested extension of exclusivity. See, e.g., In re R.G. Pharmacy, Inc., 374 B.R. 484 (Bankr. D. Conn. 2007); In re Mid-State Raceway, Inc., 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005); In re Curry Corp., 148 B.R. 754, 756 (Bankr. S.D.N.Y. 1992); In re Tony Downs Foods Co., 34 B.R. 405 (Bankr. D. Minn. 1983).

12. Although bankruptcy courts have the authority to increase the debtor's exclusivity for "cause," the Bankruptcy Code does not define what constitutes "cause." See, e.g., In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (although section 1121

does not define "cause," several factors are relevant in determining whether "cause" exists); In re McLean Indus., Inc., 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (the term "cause" is undefined by the statute).

13. In determining whether cause exists to extend a debtor's exclusivity, courts generally rely on a non-exclusive list of factors, including: (i) the size and complexity of the case; (ii) the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (iii) the existence of good faith progress toward reorganization; (iv) whether the debtor is paying its bills as they become due; (v) whether the debtor has made progress in negotiations with its creditors; (vii) the amount of time which has elapsed in the case; (viii) whether the debtor is using exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (ix) whether an unresolved exigency exists. See In re Downing Corp., 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); In re McLean Indus., Inc., 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987); see also In re Crescent Beach Inn, Inc., 22 B.R. 155, 160-61 (Bankr. D. Me. 1982) (shortening the debtor's exclusive period in order to permit parties with a more objective view to file a plan where principal parties had acrimonious relations).

14. Importantly, "the primary consideration in determining whether to terminate the debtor's exclusivity is whether its termination will move the case forward, and that this 'is a practical call that can override a mere toting up of the factors.'" Adelphia Commc'ns Corp., 352 B.R. 578, 590 (Bankr. S.D.N.Y. 2006) (quoting Dow Corning, 208 B.R. at 670). In other words, "the test is better expressed as determining whether terminating exclusivity would move the case forward materially, to a degree that wouldn't otherwise be the case. Certainly

practical considerations, or other considerations in the interest of justice, could override, in certain cases, the result after analysis of the nine factors." Id.

15. The Debtors have not shown the requisite "cause" for an extension of exclusivity. Indeed, although the Debtors filed voluntary petitions for reorganization relief under chapter 11, all of their efforts thus far have been in pursuit of a sale and liquidation of their business. The record demonstrates that the Debtors agreed at an early stage to expeditiously sell substantially all of their assets. Thus, the underlying policy behind exclusivity does not apply here because these cases are not complex in light of the Sale Motion and the Debtors do not intend to submit a reorganization plan.

16. Furthermore, termination of the exclusive periods will not impact the Debtors' ability to consummate the sale of substantially all of their assets. After the sale of substantially all of the Debtors' assets has been completed, the only remaining task for these estates will be a liquidating chapter 11 plan that reflects (i) how the proceeds of such a sale will be distributed to the Debtors' creditors, (ii) resolution of claims filed in these cases, and (iii) prosecution of avoidance actions and other estate causes of action  The Debtors have not shared any liquidating plan proposal with the Committee, nor are the Debtors in the best position to effectuate such a plan. Rather, as contemplated by the Sale Motion, management of the Debtors will be long gone after the sale from handling the continued administration of these cases on a day-to-day basis because they will be joining the new buyer. Thus, the real estate representative post-sale is the Committee, who represents real creditors with a stake in the outcome of these cases. As a result, the Debtors have not met their burden of establishing the requisite "cause" for an extension of the exclusive period in these cases.

17. For these reasons, the Debtors request for an extension of exclusivity should be denied, and other parties in interest (including the Committee) should be permitted to submit and solicit their own chapter 11 plan in these cases. This Court has previously granted this relief under similar circumstances. See, e.g., In re IT Group, Inc., Case No. 02-10118 (MFW) (Bankr. D. Del. June 25, 2002) (terminating a debtors' exclusivity post-sale as to the committee only).

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**Conclusion**

For the foregoing reasons, the Committee respectfully requests that this Court deny the Motion.

Dated: September 29, 2010

                                                FOX ROTHSCHILD LLP

                                                */s/ Eric M. Sutty*
                                                Jeffrey M. Schlerf (No. 3047)
                                                Eric M. Sutty (No. 4007)
                                                John H. Strock (No. 4965)
                                                919 North Market Street, Suite 1600
                                                Wilmington, Delaware 19801
                                                (302) 654-7444

                                                         -and-

                                                Scott Greissman (admitted pro hac vice)
                                                Avi Goldenberg (admitted pro hac vice)
                                                WHITE & CASE LLP
                                                1155 Avenue of the Americas
                                                New York, New York 10036
                                                (212) 819-8200

                                                         -and-

                                                John K. Cunningham (admitted pro hac vice)
                                                Jason N. Zakia (admitted pro hac vice)
                                                WHITE & CASE LLP
                                                200 South Biscayne Boulevard, Suite 4900
                                                Miami, Florida 33131
                                                (305) 371-2700

                                                Attorneys for Official Committee of
                                                Unsecured Creditors