# AMENDMENT NO. 2 TO
## ASSET PURCHASE AGREEMENT

THIS AMENDMENT NO. 2 TO ASSET PURCHASE AGREEMENT (the "***Amendment***") is entered into as of November 2, 2010 by and among Chem Rx Corporation, a Delaware corporation (the "***Parent***"), certain of its wholly-owned subsidiaries set forth on Schedule I of the Purchase Agreement (as defined below) (the "***Subsidiaries***" and collectively with the Parent, "***Seller***") and Chem Rx Pharmacy Services, LLC (f/k/a Chem Rx Acquisition Sub, LLC), a Delaware limited liability company ("***Buyer***"), and PharMerica Corporation, a Delaware corporation ("***Buyer's Guarantor***"). Seller and Buyer are each referred to herein as a "***Party***" and collectively as the "***Parties***"; provided that Buyer's Guarantor has executed this Agreement solely for its guaranty obligations set forth in Section 13.23 of the Purchase Agreement. Capitalized terms used in this Amendment that are not otherwise defined herein shall have the meanings set forth in the Purchase Agreement (as defined below).

## PREAMBLE

WHEREAS, the Parties and Buyer's Guarantor have entered into that certain Asset Purchase Agreement, dated as of September 26, 2010, as amended by that Amendment No. 1 to Asset Purchase Agreement dated October 22, 2010, by and among Seller, Buyer, and Buyer's Guarantor (collectively, the "***Purchase Agreement***"), pursuant to which Seller agreed to sell to Buyer, and Buyer agreed to purchase from Seller, the Acquired Assets pursuant to §363 of the Bankruptcy Code, subject to the terms and conditions of the Purchase Agreement;

WHEREAS, pursuant to Section 11.2(j) of the Purchase Agreement, it is a condition to the obligations of Buyer to consummate the transactions contemplated by the Purchase Agreement that Buyer received the Permits set forth on Schedule 11.2(j), which Buyer desires to waive in consideration of Seller entering into this Amendment;

WHEREAS, Buyer has not obtained the Permits set forth on Schedule 11.2(j) and the Permits set forth as items 1 and 2 listed on Schedule 6.11 attached to this Amendment; and

WHEREAS, Buyer and Seller desire to amend the Purchase Agreement as set forth in this Amendment.

NOW, THEREFORE, in consideration of the foregoing and their respective representations, warranties, covenants and undertakings herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

    1.    <u>Amendments</u>.

        (a)    Section 6.11 is added to the Purchase Agreement as follows:

        6.11   <u>Licenses, Permits, And Other Governmental Authorizations</u>. The parties hereto acknowledge that the Buyer has not obtained the Permits listed on Schedule 11.2(j) or the Permits set forth as items 1 and 2 listed on Schedule 6.11 as required under Section 7.2 and Section 11.2(j) (the

"*Florida Permits*") and therefore may not take title at Closing to the Acquired Assets owned by ChemRx-Boca Raton, LLC, a Florida limited liability company ("*ChemRx Florida*") that are listed on Schedule 6.11 hereto (collectively, the "*Trust Assets*"). ChemRx Florida agrees following the Closing to hold the Trust Assets in trust for the benefit of the Buyer until Buyer obtains the Florida Permits or Buyer earlier provides Seller with instructions to transfer the Trust Assets to Buyer. While the Trust Assets remain in such trust all revenue, profit, and any other benefits, as well as all of the costs and liabilities and obligations, attributable to such Trust Assets and/or the operation of the business associated with the Trust Assets and incurred after the Closing (the "*Trust Business*") will be for the benefit of, and at the sole cost and expense of, Buyer. Upon receipt of the Florida Permits, the Trust Assets will automatically transfer to the Buyer following notice from the Buyer to Seller (which Buyer shall give immediately following receipt of the Florida Permits).

(b)     Section 6.12 is added to the Purchase Agreement as follows:

6.12    Management Services. Following the Closing and until the Trust Assets are transferred to Buyer pursuant to Section 6.11, ChemRx Florida does hereby exclusively engage Buyer, and Buyer does hereby agree, to manage and handle, on behalf of ChemRx Florida, all Trust Assets and all day-to-day operations relating to the Trust Assets and the Trust Business, in each case at no cost, liability, obligation, or expense to ChemRx Florida or any other Seller.

(c)     Section 7.6 is added to the Purchase Agreement as follows:

7.6     Licenses, Permits, And Other Governmental Authorizations; Management Services.

Following the Closing, the Buyer agrees:

(a)     to fully and completely indemnify and hold harmless ChemRx Florida and each other Seller from and against each and every claim, cause of action, loss, expense (including attorneys' fees), damage, obligation, liability or the like arising from, in connection with or as a result of (i) the ownership or maintaining of the Trust Assets, the Trust Business, or the Florida Permits for the benefit of Buyer from and after the Closing, (ii) the management or handling of the Trust Assets or the Trust Business from and after the Closing, or (iii) the performance of the obligations of ChemRx Florida or Buyer pursuant to Sections 6.11, 6.12, 7.6(d) or 7.6(e) or otherwise under this Amendment;

(b)     that its failure to obtain such licenses, permits or other governmental authorizations will not create a claim for rescission of its

purchase of the Business or any other claim under this Agreement, that it waives the requirements set forth in Section 11.2(j) and acknowledges that, upon Closing, Seller has fulfilled its obligations set forth in the second sentence of Section 6.3;

(c)    to use its best efforts to obtain such licenses, permits or other governmental authorizations at the earliest date possible;

(d)    to make available to ChemRx Florida any and all Acquired Assets necessary to operate the Trust Business after the Closing for the benefit of the Buyer pursuant to Section 6.11 at no cost, liability, obligation or expense to Chem Rx Florida; and

(e)    to manage and handle, on behalf of ChemRx Florida, all Trust Assets and Trust Business and all day-to-day operations relating to the Trust Assets and the Trust Business, in each case at no cost, liability, obligation or expense to ChemRx Florida, to comply with all applicable state and federal laws, regulations and restrictions in managing and handling the Trust Assets and Trust Business for ChemRx Florida.

2.    <u>Counterparts</u>.  This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same agreement.  This Amendment and any signed agreement entered into in connection herewith or contemplated hereby, and any amendments hereto or thereto, to the extent signed and delivered by facsimile (or equivalent electronic transmission), shall be treated in all manner and respects as an original contract and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

3.    <u>No Other Modification</u>.  Except as amended hereby, the terms and provisions of the Purchase Agreement are hereby ratified and shall remain in full force and effect without modification or amendment.  Except as specifically provided herein, nothing herein is intended to, nor shall it, extend, amplify or otherwise alter the representations, warranties, covenants and obligations of the parties contained in the Purchase Agreement or the survival thereof.  From and after the date of this Amendment, the Purchase Agreement and this Amendment shall be read as one document, including without limitation, so that all of Buyer's obligations under this Amendment are obligations guaranteed by Buyer's Guarantor pursuant Section 13.23 of the Purchase Agreement.

[Signature pages follow immediately]

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their respective officers thereunto duly authorized as of the date first above written.

**SELLER**

**CHEM RX CORPORATION**

By: _____
Name: Gary M. Jacobs
Title: Chief Financial Officer

**CHEMRX/SALERNO'S, LLC**

By: _____
Name: Gary M. Jacobs
Title: Chief Financial Officer

**B.J.K. INC.**

By: _____
Name: Gary M. Jacobs
Title: Chief Financial Officer

**CHEMRX-BOCA RATON, LLC**

By: _____
Name: Gary M. Jacobs
Title: Chief Financial Officer

**CHEMRX NEW JERSEY, LLC**

By: _____
Name: Gary M. Jacobs
Title: Chief Financial Officer

**CHEMRX CARE, LLC**

By: _____
Name: Gary M. Jacobs
Title: Chief Financial Officer

*Signature Page to Amendment No. 2 to Asset Purchase Agreement*

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their respective officers thereunto duly authorized as of the date first above written.

BUYER

**CHEM RX PHARMACY SERVICES, LLC**

By: _____
Name: Michael J. Culotta
Title: Treasurer

**Solely for the guaranty obligations set forth in Section 13.23 of the Purchase Agreement:**

**BUYER'S GUARANTOR**

**PHARMERICA CORPORATION**

By: _____
Name: Michael J. Culotta
Title: Executive Vice President and Chief Financial Officer

## <u>SCHEDULE 6.11</u>

### <u>Trust Assets</u>

      1.      Florida Board of Pharmacy License for Community/Special Parental/Enteral Pharmacy issued to ChemRx-Boca Raton, LLC

      2.      Florida Board of Pharmacy License for Special Closed System issued to ChemRx-Boca Raton, LLC

      3.      Prescription drug files of ChemRx-Boca Raton, LLC

      4.      Prescription drug inventory of ChemRx-Boca Raton, LLC

      5.      All policies and procedures related to the operation of the pharmacy operated by ChemRx-Boca Raton, LLC