# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CRC PARENT CORPORATION, *et al.*, | ) | Case No. 10-11567 (MFW) |
| f/k/a CHEM RX CORPORATION, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors.[1] | ) | |

## FIRST AMENDED JOINT PLAN OF LIQUIDATION FOR CRC PARENT CORPORATION AND ITS AFFILIATED DEBTORS PROPOSED BY CANADIAN IMPERIAL BANK OF COMMERCE, NEW YORK AGENCY, AS ADMINISTRATIVE AGENT AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Dated: Wilmington, Delaware
February 7, 2011

KAYE SCHOLER LLP
Madlyn Gleich Primoff
425 Park Avenue
New York, New York 10022
Telephone: (212) 836-8000
Facsimile: (212) 836-6525
E-mail: mprimoff@kayescholer.com

and

POTTER, ANDERSON & CORROON LLP
Laurie Selber Silverstein (DE Bar No. 2396)
1313 North Market Street, 6th Floor
Wilmington, Delaware 19899
Telephone: (302) 984-6033
Facsimile: (302) 658-1192
E-mail: lsilverstein@potteranderson.com

*Co-Counsel for Canadian Imperial Bank of Commerce, New York Agency, as First Lien Agent*

WHITE & CASE LLP
John K. Cunningham
Wachovia Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
E-mail: jcunningham@whitecase.com

and

FOX ROTHSCHILD LLP
Jeffrey M. Schlerf (DE Bar No. 3047)
Citizens Bank Center
919 North Market Street, Suite 1600
P.O. Box 2323
Wilmington, Delaware 19899-2323
Telephone: (302) 654-7444
Facsimile: (302) 656-8920
E-mail: jschlerf@foxrothschild.com

*Co-Counsel for the Official Committee of Unsecured Creditors*

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: CRC Parent Corporation f/k/a Chem Rx Corporation (8469), B.J.K. Inc. (5997), CRC NJ, LLC f/k/a ChemRx New Jersey, LLC (9370), CRC PA, LLC f/k/a ChemRx / Salerno's, LLC (5981), CRC BR, LLC f/k/a ChemRx-Boca Raton, LLC (8021) and CRC CT, LLC f/k/a ChemRx Care, LLC (0826).

# TABLE OF CONTENTS

Page

ARTICLE I: DEFINITIONS AND INTERPRETATION ............................................................. 1
   1.1   Definitions .................................................................................................................. 1
   1.2   Interpretation; Application of Definitions; and Rules of Construction ................. 12
   1.3   Exhibits, Schedules, Appendices and Plan Documents ......................................... 12

ARTICLE II: PROVISIONS FOR TREATMENT OF ADMINISTRATIVE CLAIMS
           AND PRIORITY TAX CLAIMS UNDER THE PLAN ...................................... 13
   2.1   Introduction ............................................................................................................. 13
   2.2   Administrative Claims and Priority Tax Claims ................................................... 13
   2.3   Time for Filing Additional Administrative Claims ............................................... 13
   2.4   Time for Filing Objections to Priority Claims, Priority Tax Claims and Certain
        Administrative Claims............................................................................................. 14
   2.5   Time for Filing of Fee Claims ................................................................................ 14
   2.6   Treatment of Allowed Administrative Claims ...................................................... 14
   2.7   Treatment of Priority Tax Claims........................................................................... 15
   2.8   Settlement of Contested Administrative Claims, Priority Claims, Priority Tax
        Claims or Other Secured Claims. ........................................................................... 15

ARTICLE III: CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ....................... 15
   3.1   Classification of Claims and Equity Interests........................................................ 15

ARTICLE IV: PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY
           INTERESTS ............................................................................................................ 16
   4.1   Satisfaction of Claims and Equity Interests........................................................... 16
   4.2   Class 1: Priority Claims.......................................................................................... 16
   4.3   Class 2: Other Secured Claims ............................................................................... 16
   4.4   Class 3: Secured Lender Claims............................................................................. 17
   4.5   Class 4: General Unsecured Claims ....................................................................... 18
   4.6   Class 5: Subordinated Claims................................................................................. 18
   4.7   Class 6: Equity Interests ......................................................................................... 19
   4.8   Limitation on Recovery for Claims Against More Than One Debtor.................... 19

ARTICLE V: ACCEPTANCE OR REJECTION OF THIS PLAN; EFFECT OF
          REJECTION BY ONE OR MORE CLASSES OF CLAIMS.............................. 19
   5.1   Classes Entitled to Vote.......................................................................................... 19
   5.2   Class Acceptance Requirement .............................................................................. 19
   5.3   Cramdown and No Unfair Discrimination ............................................................. 20

ARTICLE VI: MEANS FOR IMPLEMENTATION .................................................................. 20
   6.1   Substantive Consolidation of Debtors for Plan Purposes Only ............................ 20
   6.2   Merger and Dissolution of the Debtors .................................................................. 20
   6.3   The Litigation Trust................................................................................................. 20
   6.4   Federal Income Tax Treatment of Litigation Trust ............................................... 24

| | | |
|---|---|---|
| 6.5 | Setoffs | 25 |
| 6.6 | Noncertificated Litigation Trust Interests | 25 |
| 6.7 | Dissolution of the Litigation Trust | 25 |
| 6.8 | Securities Exempt | 25 |
| 6.9 | Oversight Committee | 25 |
| 6.10 | Effectuating Documents; Further Transactions | 27 |
| 6.11 | Cancellation of Existing Securities and Agreements | 27 |
| 6.12 | Vesting of Assets | 27 |
| 6.13 | Tax Matters | 27 |

**ARTICLE VII: DISTRIBUTIONS** ... 28

| | | |
|---|---|---|
| 7.1 | Distribution Record Date | 28 |
| 7.2 | Plan Administrator | 28 |
| 7.3 | Litigation Trustee | 28 |
| 7.4 | Rights and Powers of Disbursing Agent | 28 |
| 7.5 | Delivery of Distributions | 29 |
| 7.6 | Manner of Payment Under Plan | 29 |

**ARTICLE VIII: PROCEDURES FOR CONTESTED CLAIMS** ... 30

| | | |
|---|---|---|
| 8.1 | Objections to Claims | 30 |
| 8.2 | No Distributions Pending Allowance | 30 |
| 8.3 | Contested General Unsecured Claims Reserve | 30 |
| 8.4 | Distributions After Allowance | 30 |
| 8.5 | Claims Administration- Settlement Guidelines. | 31 |

**ARTICLE IX: EXECUTORY CONTRACTS** ... 31

| | | |
|---|---|---|
| 9.1 | Rejection of Executory Contracts | 31 |
| 9.2 | Time for Filing Rejection Claims | 31 |
| 9.3 | Reservation of Rights | 32 |

**ARTICLE X: CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** ... 32

| | | |
|---|---|---|
| 10.1 | Conditions Precedent to Confirmation | 32 |
| 10.2 | Conditions Precedent to the Effective Date | 32 |
| 10.3 | Waiver of Conditions to Confirmation and Effective Date | 33 |
| 10.4 | Effect of Failure of Conditions to the Effective Date | 33 |

**ARTICLE XI: EFFECT OF CONFIRMATION** ... 34

| | | |
|---|---|---|
| 11.1 | Rights of Action/Reservation of Rights | 34 |
| 11.2 | Satisfaction of Claims and Termination of Equity Interests | 34 |
| 11.3 | Term of Injunctions or Stays | 35 |
| 11.4 | Injunction Against Interference With Plan | 35 |
| 11.5 | Releases and Injunction Related to Releases | 35 |
| 11.6 | Settlement of Claims and Estate Causes of Action | 38 |
| 11.7 | Disallowed Claims And Disallowed Interests | 38 |
| 11.8 | Exculpation | 38 |
| 11.9 | Injunctions | 39 |

Case 10-11567 Dkt 772

11.10  United States Securities and Exchange Commission Reservation of Rights ........39

ARTICLE XII: RETENTION OF JURISDICTION ....................................................................40

ARTICLE XIII: MISCELLANEOUS PROVISIONS .................................................................41
13.1    Payment of Statutory Fees ....................................................................41
13.2    Notices ...................................................................................................42
13.3    Headings ................................................................................................43
13.4    Governing Law ......................................................................................43
13.5    Exemption from Transfer Taxes ...........................................................43
13.6    Notice of Entry of Confirmation Order and Relevant Dates .........,........44
13.7    Modification of this Plan and Amendments ..........................................44
13.8    Revocation, Withdrawal or Non-Consummation of Plan.......................44
13.9    Binding Effect .......................................................................................45
13.10  Severability of Plan Provisions ............................................................45
13.11  No Admissions ......................................................................................45
13.12  Dissolution of the Creditors' Committee ..............................................45
13.13  Time .......................................................................................................46
13.14  Successors and Assigns ........................................................................46
13.15  Conflict between Plan, Disclosure Statement and Plan Documents .....46
13.16  Substantial Consummation ...................................................................46
13.17  Plan Exhibits .........................................................................................46

Exhibit A  Consummation Budget

Canadian Imperial Bank of Commerce, New York Agency, as administrative agent for the Secured Lenders under the Credit Agreement and the Official Committee of Unsecured Creditors hereby collectively and jointly propose the following joint plan of liquidation:

## ARTICLE I:

## DEFINITIONS AND INTERPRETATION

1.1 *Definitions*.

The following terms used herein shall have the respective meanings defined below:

1.1.1 *"Additional Administrative Claim"* means an Administrative Claim against a Debtor (or its Estate) incurred or arising on or after November 9, 2010.

1.1.2 *"Administrative Claim"* means a Claim against a Debtor (or its Estate) incurred on or after the Petition Date through the Effective Date for a cost or expense of administration in any of the Chapter 11 Cases that is entitled to priority pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, including (a) all Fee Claims; (b) any fees or charges assessed against the Debtors' Estates under section 1930 of chapter 123 of title 28 of the United States Code; and (c) a Claim under section 503(b)(9) of the Bankruptcy Code.

1.1.3 *"Administrative Claim Bar Date"* means December 13, 2010, which is the date specified by the Administrative Claim Bar Date Order as the deadline for the filing of Administrative Claims (except as provided in the Administrative Claim Bar Date Order) incurred or arising through November 9, 2010.

1.1.4 *"Administrative Claim Bar Date Order"* means the Order of the Bankruptcy Court dated November 9, 2010, establishing, among other things, the Administrative Claim Bar Date.

1.1.5 *"Affiliate"* means, with respect to any Person, all Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code, if such Person were a debtor in a case under the Bankruptcy Code.

1.1.6 *"AIG"* means, Western National Life Insurance, Co., c/o AIG Asset Management, LLC (U.S.) and its Affiliates and Related Persons.

1.1.7 *"Allowed"* when used with respect to any Claim, except for a Claim that is an Administrative Claim, means such Claim to the extent it is Allowed pursuant to this Plan, Final Order of the Bankruptcy Court or in the case of a Priority Claim, Priority Tax Claim or Other Secured Claim, by agreement of the party holding such Claim and the First Lien Agent, in the exercise of its sole and absolute discretion, or in the case of a General Unsecured Claim, by agreement of the party holding such Claim and the Creditors' Committee (or, after the Effective Date, the Litigation Trustee or Unsecured Creditors' Designee), in the exercise of their sole and absolute discretion, and is not (i) a Disallowed Claim or (ii) in whole or in part a

Contested Claim or a Disallowed Claim; with respect to any Administrative Claim, means such Administrative Claim to the extent it has become fixed in amount and priority pursuant to the procedures set forth in Article II of this Plan or by agreement of the First Lien Agent, in the exercise of its sole and absolute discretion.

   1.1.8 *"**Assets**"* means all of the Debtors' right, title and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code and any proceeds, products, rents and profits of any of the foregoing.

   1.1.9 *"**Available Proceeds**"* means the amount of the Debtors' Cash on hand in the M&T Account, the Escrow Account and the Wells Fargo Account on the Effective Date, immediately following the funding of the Consummation Account and the Litigation Trust Reserve pursuant to the terms of this Plan.

   1.1.10 *"**Avoidance Actions**"* means all Causes of Action that arise under Chapter 5 of the Bankruptcy Code, including Causes of Action under sections 502(d), 544, 545, 546, 547, 548, 549, 550 and 551 of the Bankruptcy Code, and any analogous provisions of applicable state law.

   1.1.11 *"**Ballot**"* means the form of ballot approved by the Bankruptcy Court for voting on this Plan, which shall be in form and substance acceptable to the First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion, and includes any such ballot for any Class entitled to vote on this Plan.

   1.1.12 *"**Bankruptcy Code**"* means the Bankruptcy Reform Act of 1978, as codified at title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

   1.1.13 *"**Bankruptcy Court**"* means the United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases.

   1.1.14 *"**Bankruptcy Rules**"* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, and as applicable to the Chapter 11 Cases, and any Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases.

   1.1.15 *"**Bar Date**"* means September 13, 2010, which is the date established by the Bar Date Order as the general bar date and the bar date for Claims arising under section 503(b)(9) of the Bankruptcy Code in these Chapter 11 Cases, and such other deadlines for filing proofs of Claim that are set forth in the Bar Date Order.

   1.1.16 *"**Bar Date Order**"* means the Final Order entered on August 5, 2010 fixing September 13, 2010 as the Bar Date.

   1.1.17 *"**Business Day**"* means any day other than a Saturday, a Sunday or any other day on which commercial banks are required or authorized to close for business in New York, New York.

1.1.18    *"Cash"* means legal tender of the United States of America.

1.1.19    *"Causes of Action"* means any and all Claims, actions, causes of action, liabilities, obligations, suits, debts, remedies, indebtedness (for borrowed money or in the nature of a guarantee), dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, rights, executions, objections to Claims, judgments or demands whatsoever, whether known or unknown, choate or inchoate, existing or hereafter arising, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, asserted or unasserted, in law, equity or otherwise.

1.1.20    *"Chapter 11 Cases"* means the cases commenced under chapter 11 of the Bankruptcy Code, pending before the Bankruptcy Court with respect to each of the CRC Debtors and jointly administered as *In re CRC Parent Corporation, f/k/a Chem Rx Corporation, et al.,* Case No. 10-11567(MFW).

1.1.21    *"Claim"* has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.1.22    *"Claims Objection Deadline"* means the deadline for filing objections to Claims as set forth in Section 8.1 of this Plan.

1.1.23    *"Class"* means a category of holders of Claims or Equity Interests classified by this Plan pursuant to section 1122(a) of the Bankruptcy Code.

1.1.24    *"Collateral"* means any property or interest in property of the Estate of any Debtor subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, and which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.1.25    *"Confirmation Date"* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Chapter 11 Cases.

1.1.26    *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court, pursuant to section 1128 of the Bankruptcy Code, to consider the confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.1.27    *"Confirmation Objection Deadline"* means the date set forth in the order of the Bankruptcy Court by which a creditor or interest holder or other party in interest must file an objection to confirmation of this Plan.

1.1.28    *"Confirmation Order"* means the order of the Bankruptcy Court confirming this Plan, pursuant to section 1129 of the Bankruptcy Code, which Confirmation Order shall be acceptable to the First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion.

1.1.29    *"Consummation Account"* means an account to be established by the Plan Administrator on the Effective Date which shall be funded (a) first, from any and all

funds remaining in the M&T Account at the Effective Date; and (b) thereafter, in an amount up to a maximum of $4.6 million, (i) first, from the funds remaining in the Escrow Account on the Effective Date and (ii) finally, from the funds available in the Wells Fargo Account on the Effective Date.

1.1.30 *"Consummation Budget"* means the budget annexed hereto as Exhibit A, which shall have been agreed upon by and between the Creditors' Committee and the First Lien Agent, each in the exercise of its sole and absolute discretion, for payment of all amounts required to consummate this Plan on the Effective Date, including Allowed Administrative Claims, Allowed Priority Claims, Allowed Priority Tax Claims, and Allowed Other Secured Claims, which Consummation Budget shall in no event and under no circumstances exceed the sum of (x) the amount of funds remaining in the M&T Account on the Effective Date and (y) $4.6 million; provided, however, that any party in interest (including either Creditor Proponent, each in the exercise of its sole and absolute discretion) shall have the right to object to the allowance of any Claim (including any Fee Claim) other than the Secured Lender Claims and the Secured Lender Deficiency Claims (which are hereby Allowed pursuant to Section 4.4, Section 4.5.2 and the other provisions of this Plan); provided further, however, that the line items set forth in the Consummation Budget shall not be deemed maximum allowable amounts.

1.1.31 *"Contested"* when used with respect to a Claim, means such Claim (i) if it is listed in the Schedules as disputed, unliquidated, and/or contingent and as to which a Proof of Claim has not been filed with the Bankruptcy Court; (ii) if it is listed in the Schedules, but not as disputed, unliquidated, or contingent and as to which a Proof of Claim has been filed with the Bankruptcy Court, and (A) the Proof of Claim amount exceeds the amount indicated in the Schedules, and/or (B) the Proof of Claim asserts priority greater than the priority set forth in the Schedules; (iii) if it is not listed in the Schedules or was listed in the Schedules as disputed, contingent or unliquidated, in whole or in part, but as to which a Proof of Claim has been filed with the Bankruptcy Court; or (iv) to the extent such Claim is a Claim arising under a rejected Executory Contract, proof of which Claim is to be filed with the Bankruptcy Court before the deadline for filing such Claim; provided, however, that in the case of Claims falling under (ii), (iii) or (iv) above, an objection must have been filed on or before the Claims Objection Deadline; provided further, however, that a Claim that is fixed in amount and priority pursuant to this Plan or by Final Order on or before the Effective Date shall not be a Contested Claim.

1.1.32 *"CRC Parent"* means CRC Parent Corporation, f/k/a Chem Rx Corporation, a Delaware corporation and a debtor and debtor in possession in the Chapter 11 Cases.

1.1.33 *"CRC Subsidiaries"* means B.J.K. Inc., CRC NJ, LLC f/k/a ChemRx New Jersey, LLC, CRC PA, LLC f/k/a ChemRx/Salerno's, LLC, CRC BR, LLC f/k/a ChemRx-Boca Raton, LLC, CRC CT, LLC f/k/a ChemRx Care, LLC.

1.1.34 *"Credit Agreement"* means that certain First Lien Credit and Guaranty Agreement, dated as of October 26, 2007, as amended, by and among CRC Parent, certain CRC Subsidiaries, as guarantors, the financial institutions or entities from time to time a

party thereto, Canadian Imperial Bank of Commerce, acting through its New York Agency, as Administrative Agent and Collateral Agent, and CIBC World Markets Corp., as sole lead arranger and sole book runner, and any and all of the documents, notes, instruments and other agreements (including each of the Loan Documents (as defined in the Credit Agreement) and the ISDA Master Agreement), executed, delivered or filed pursuant to or in connection with the First Lien Credit and Guaranty Agreement, as such First Lien Credit and Guaranty Agreement, documents, notes, instruments and other agreements (including the Loan Documents and the ISDA Master Agreement) may have been amended, supplemented, modified or allonged.

1.1.35 *"Creditors' Committee"* means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

1.1.36 *"Creditor Proponents"* means the First Lien Agent and the Creditors' Committee.

1.1.37 *"CRO"* means Robert S. Rosenfeld in his capacity as the Debtors' Chief Restructuring Officer and any successor to such Person.

1.1.38 *"D&O Insured Cause of Action"* means any Estate Cause of Action against the Debtors' Management to the extent such Cause of Action is an Insured Claim.

1.1.39 *"Debtors"* means CRC Parent and the CRC Subsidiaries.

1.1.40 *"Disallowed"* when used with respect to a Claim, means a Claim, or such portion of a Claim, that has been disallowed by a Final Order.

1.1.41 *"Disbursing Agent"* means the Litigation Trustee or Plan Administrator, as applicable.

1.1.42 *"Disclosure Statement"* means the Disclosure Statement, dated January 7, 2011, filed with respect to this Plan, as it may be amended or modified from time to time, with the joint consent of the First Lien Agent and Creditors' Committee, each in the exercise of its respective sole and absolute discretion, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.1.43 *"Distribution Record Date"* means the record date for purposes of making Plan Distributions or Litigation Trust Distributions, as applicable, under this Plan or Litigation Trust Documents, on account of Allowed Claims, which record date shall be the Confirmation Date or such other date as may be designated in the Confirmation Order.

1.1.44 *"Effective Date"* means the first Business Day on which all the conditions to the occurrence of the Effective Date, as specified in Section 10.2 of this Plan have been satisfied or waived in accordance with the provisions of Section 10.3 of this Plan.

1.1.45 *"Equity Interest"* means any ownership interest in any of the Debtors, including any share of preferred stock, share of common stock, membership interest or other instrument evidencing an ownership interest in any of the Debtors, whether or not

transferable, and any option, warrant or right, contractual or otherwise, to acquire any such preferred stock, common stock, membership interest or other ownership interest.

1.1.46  **"*Escrow Account*"** means that certain account held for the benefit of the Debtors by Greenberg Traurig LLP.

1.1.47  **"*Estate*"** means the estate of any Debtor created by section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Cases.

1.1.48  **"*Estate Cause of Action*"** means any Cause of Action belonging to any Debtor, its Estate or any Person authorized to act on behalf of any Debtor or its Estate, including, any Avoidance Action, Management Cause of Action or D&O Insured Cause of Action.

1.1.49  **"*Executory Contract*"** means any unexpired executory contract or lease entered into prior to the Petition Date, as contemplated by section 365 of the Bankruptcy Code, in effect on the Petition Date, between any of the Debtors and any other Person or Persons and which has neither been assumed nor rejected prior to the Confirmation Date pursuant to section 365(a) of the Bankruptcy Code.

1.1.50  **"*Fee Claim*"** means a Claim of a Professional Person for the allowance of compensation and reimbursement of expenses pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code and a Claim of a member of the Creditors' Committee for the reimbursement of its expenses.

1.1.51  **"*Final Order*"** means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction entered by the Clerk of the Bankruptcy Court or such other court on the docket in the Chapter 11 Cases or the docket of such other court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or motion for new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; provided, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 3008 or 9024 may be filed relating to such order.

1.1.52  **"*First Lien Agent*"** means Canadian Imperial Bank of Commerce, New York Agency, as the Administrative Agent under the Credit Agreement.

1.1.53  **"*General Unsecured Claim*"** means any Claim against any of the Debtors that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, a Secured Lender Claim, an Other Secured Claim or a Subordinated Claim; provided, however that

the Secured Lender Deficiency Claims and the Second Lien Lender Claims are General Unsecured Claims.

1.1.54 *"Governmental Unit"* shall have the meaning ascribed thereto in section 101(27) of the Bankruptcy Code.

1.1.55 *"Insider"* has the meaning set forth in section 101(31) of the Bankruptcy Code.

1.1.56 *"Insured Claim"* means any Claim against any of the Debtors' or their Affiliates' present or former directors, officers, Insiders, employees or Management arising from any incident or occurrence that is covered by any insurance policy maintained by or for the benefit of any of the Debtors.

1.1.57 *"Intercompany Claim"* means any Claim held by a Debtor against any other Debtor or an Affiliate.

1.1.58 *"Internal Revenue Code"* means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

1.1.59 *"IRS"* means the United States Internal Revenue Service.

1.1.60 *"ISDA Master Agreement"* means that certain ISDA Master Agreement, dated as of January 23, 2008, by and among CRC Parent and Canadian Imperial Bank of Commerce, and any and all documents, instruments and confirmations executed or delivered pursuant to or in connection with such ISDA Master Agreement, as such ISDA Master Agreement, documents, instruments and confirmations may have been amended, supplemented or modified.

1.1.61 *"Lenders' Designee"* means E. Lindsay Gordon or any other individual designated in the Plan Supplement by the First Lien Agent, in the exercise of its sole and absolute discretion, to serve as a member of the Oversight Committee from and after the Effective Date and any successor to such Person designated by the First Lien Agent, in the exercise of its sole and absolute discretion.

1.1.62 *"Lien"* has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.1.63 *"Litigation Trust"* means the litigation trust described in Section 6.3 of this Plan to be formed pursuant to the terms of this Plan and the Litigation Trust Documents.

1.1.64 *"Litigation Trust Agreement"* means the agreement governing the Litigation Trust, which shall be in form and substance jointly acceptable to the First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion, dated as of the Effective Date, and which shall be filed as part of the Plan Supplement.

1.1.65    *"**Litigation Trust Assets**"* means all Estate Causes of Action and the proceeds thereof, including Litigation Trust Recoveries, and the Litigation Trust Reserve.

1.1.66    *"**Litigation Trust Distribution**"* means the distributions of Cash (or other property) to be made by the Litigation Trustee from the Litigation Trust Recoveries, as and when specified, and otherwise subject to and in accordance with the terms of the Litigation Trust Documents; it being understood that Litigation Trust Distributions shall not include Plan Distributions.

1.1.67    *"**Litigation Trust Documents**"* means the Litigation Trust Agreement and any other documents or instruments concerning or relating to the Litigation Trust, and which shall be filed as part of the Plan Supplement.

1.1.68    *"**Litigation Trustee**"* means Meade A. Monger or such other Person as may be designated by the Creditors' Committee in the Plan Supplement and any successor to such Person.

1.1.69    *"**Litigation Trust Recoveries**"* means, at any time, the amount of Cash or other consideration obtained by or paid to the Litigation Trustee (or other Person acting on behalf of the Litigation Trust) in connection with any asserted, pending or threatened Estate Cause of Action, regardless of whether such Estate Cause of Action is actually commenced or asserted, including any judgment, settlement or other disposition of any kind or nature, of an Estate Cause of Action and any recovery from any D&O Insured Cause of Action.

1.1.70    *"**Litigation Trust Reserve**"* means a money market account to be established by the Litigation Trustee and funded in the amount of $2 million on the Effective Date (a) first, from any and all funds in the M&T Account at the Effective Date; and (b) thereafter, in an amount, which when combined with the amount from the M&T Account are up to a maximum of $2 million from the following sources: (i) first, from the funds remaining in the Escrow Account on the Effective Date and (ii) finally, from the funds available in the Wells Fargo Account on the Effective Date, to be used by or on behalf of the Litigation Trust for fees, costs and expenses incurred in connection with the Estate Causes of Action and all other costs incurred in connection with the administration of the Litigation Trust.

1.1.71    *"**Management**"* means any present or former director, officer, employee or Insider of any Debtor (or any predecessor thereof) or any Affiliate or Related Person of any of the foregoing.

1.1.72    *"**Management Cause of Action**"* means any Estate Cause of Action against any Person included in the definition of Management to the extent such Estate Cause of Action is not an Insured Claim, or with respect to an Estate Cause of Action that is an Insured Claim, solely to the extent that such Estate Cause of Action exceeds the insurance policy limits therefor.

1.1.73    *"**Management Cause of Action Recoveries**"* means, at any time, the amount of Cash or other consideration obtained by or paid to the Litigation Trustee (or any other Person acting on behalf of the Litigation Trust) in connection with any asserted, pending or threatened Management Cause of Action regardless of whether the Management Cause of Action

is actually commenced or asserted, including any judgment, settlement or other disposition of a Management Cause of Action.

1.1.74    "*M&T Account*" means that certain checking account at Manufacturers and Traders Trust Company entitled "LB Inc." and otherwise identified as account number 9847819621.

1.1.75    "*Notice of Confirmation*" means the notice of entry of the Confirmation Order to be filed with the Bankruptcy Court and mailed by the Plan Administrator (and paid for out of the Consummation Account) to the holders of Claims and Equity Interests.

1.1.76    "*Other Secured Claim*" means any Claim secured by a Lien on Collateral, which is not void or voidable under the Bankruptcy Code or any other applicable law, to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff; it being understood that Second Lien Lender Claims are not Other Secured Claims.

1.1.77    "*Oversight Committee*" means the committee consisting of the Unsecured Creditors' Designee and the Lenders' Designee.

1.1.78    "*Person*" means an individual, partnership, corporation, business trust, estate, limited liability company, limited liability partnership, joint stock company, trust, unincorporated association, unincorporated organization, joint venture or any other entity or any government, governmental agency or any subdivision, department or other instrumentality thereof.

1.1.79    "*Petition Date*" means May 11, 2010, the date on which the Debtors commenced these Chapter 11 Cases.

1.1.80    "*Plan*" means this first amended joint plan of liquidation for the Debtors proposed by the First Lien Agent and the Creditors' Committee under chapter 11 of the Bankruptcy Code, including all exhibits, supplements (including the Plan Supplement) appendices and schedules hereto, either in its or their present form or as it or they may be amended, supplemented or otherwise modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.1.81    "*Plan Administrator*" means Robert Rosenfeld or such other Person identified at or prior to the Confirmation Hearing and jointly selected by the First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion.

1.1.82    "*Plan Distribution*" means the distributions of Cash to occur on the Effective Date and thereafter in accordance with the terms of this Plan; provided, however, that Litigation Trust Distributions shall not be considered Plan Distributions.

1.1.83    "*Plan Documents*" means the documents that aid in effectuating this Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 1.3 of this Plan, all of which shall be in form and substance acceptable to the

First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion.

1.1.84    *"Plan Proponents"* means, collectively, the First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion.

1.1.85    *"Plan Supplement"* means the separate appendix to this Plan, which is incorporated herein by reference, to be filed with the Clerk of the Bankruptcy Court no later than ten (10) Business Days prior to the Confirmation Objection Deadline, containing among other things, the Plan Documents, all of which shall be acceptable to the First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion.

1.1.86    *"Priority Claim"* means any Claim against any of the Debtors to the extent such Claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code other than an Administrative Claim or a Priority Tax Claim.

1.1.87    *"Priority Tax Claim"* means a Claim against any of the Debtors that is of a kind specified in section 507(a)(8) of the Bankruptcy Code.

1.1.88    *"Professional Person"* means a Person retained or to be compensated for services rendered or costs incurred by either the Debtors or the Creditors' Committee on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

1.1.89    *"Proof of Claim"* means the proof of claim that must have been filed by a holder of a Claim by the Bar Date.

1.1.90    *"Pro Rata"* means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in the same Class, but excluding Disallowed Claims (a) as calculated by the Plan Administrator or Litigation Trustee, as applicable, or (b) as determined or estimated by the Bankruptcy Court.

1.1.91    *"Related Persons"* means, with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and each of their respective present and former members partners, equity-holders, officers, directors, employees, representatives, advisors (whether engaged prior to or subsequent to the Petition Date), attorneys (whether engaged prior to or subsequent to the Petition Date), agents and professionals (whether engaged prior to or subsequent to the Petition Date), acting in such capacity, and any Person claiming by or through any of them.

1.1.92    *"Released Claims"* means the Debtor Released Claims and the Holder Released Claims as such terms are defined in Sections 11.5.1 and 11.5.2 respectively.

1.1.93    *"Released Parties"* means (a) the members of the Creditors' Committee, (b) the First Lien Agent, (c) the Secured Lenders and (d) and the Related Persons of each of the Persons referred to in clauses (a) through (c); provided, however, that a member of

the Creditors' Committee shall not be a Released Party unless it shall agree to provide the releases set forth in Section 11.5.2 of this Plan.

1.1.94 **"Schedules"** means the schedules of assets and liabilities, the list of holders of Equity Interests and the statement of financial affairs filed by each of the Debtors with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements have been or may be supplemented or amended at any time through the Confirmation Date in accordance with Bankruptcy Rule 1009.

1.1.95 **"Second Lien Credit Agreement"** means that certain Second Lien Credit and Guaranty Agreement, dated as of October 26, 2007 (as amended through the date hereof, and as it may be further amended, supplemented, restated or otherwise modified from time to time in accordance with its terms), by and among CRC Parent, certain CRC Subsidiaries, as guarantors, the financial institutions or entities from time to time a party thereto and any and all of the documents, notes, instruments and other agreements including each of the Loan Documents (as defined in the Second Lien Credit Agreement), executed, delivered or filed pursuant to or in connection with the Second Lien Credit and Guaranty Agreement, as such Second Lien Credit and Guaranty Agreement, documents, notes and other agreements and instruments (including the Loan Documents) may have been amended, supplemented, modified or allonged.

1.1.96 **"Second Lien Lender Claim"** means any Claim against any of the Debtors arising under, in connection with, or related to, the Second Lien Credit Agreement, including any Claim with respect to any and all guarantees, pledges, notes and other agreements and documents executed and/or delivered by any Debtor pursuant to, in connection with, or related to, the Second Lien Credit Agreement, including any Claim under the Loan Documents (as defined in the Second Lien Credit Agreement).

1.1.97 **"Secured Lender Claim"** means any Claim of a Secured Lender against any of the Debtors arising under, in connection with or related to the Credit Agreement or the ISDA Master Agreement, including any Claim with respect to any and all guarantees, pledges, notes and other agreements and documents executed and/or delivered by any Debtor pursuant to, in connection with or related to the Credit Agreement, including any Claim under the Loan Documents (as defined in the Credit Agreement) and the ISDA Master Agreement.

1.1.98 **"Secured Lender Deficiency Claim"** means those Allowed General Unsecured Claims of the Secured Lenders as set forth in Section 4.5.2 of this Plan.

1.1.99 **"Secured Lenders"** means, collectively, the lenders and other institutions that are parties to the Credit Agreement or the ISDA Master Agreement and their respective successors and assigns.

1.1.100 **"Securities Act"** means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

1.1.101 **"Subordinated Claims"** means the obligations of CRC Parent, if any, to Jerry Silva, Steven Silva, the Jody R. Silva Trust, the Jerry Silva 2007 Annuity Trust, and Jerry Silva as life tenant and Steven Silva as remainderman or their successors and assigns

evidenced by notes in the aggregate amount of $8,258,748.47 scheduled to mature on April 30, 2015.

   1.1.102 ***"Unsecured Creditors' Designee"*** means the individual designated by the Creditors' Committee in the Plan Supplement to serve as a member of the Oversight Committee from and after the Effective Date and any successor to such Person selected by the members of the Creditors' Committee.

   1.1.103 *"U.S. Trustee"* means the Office of the United States Trustee for the District of Delaware.

   1.1.104 *"Wells Fargo Account"* means that certain account at Wells Fargo Bank, National Association entitled "Chem Rx / Chem Rx Acq. Escrow" and otherwise identified as account number 80541300.

  1.2 ***Interpretation; Application of Definitions; and Rules of Construction.***

   Whenever from the context it appears appropriate, each term stated in either the singular or plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and neutral. Unless otherwise specified, all article, section, schedule or exhibit references in this Plan are to the respective article in, section in, schedule to, or exhibit to this Plan, as the same may be amended, waived, supplemented or modified from time to time. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular article, section, subsection or clause contained herein. Except as otherwise expressly provided herein, a term used herein that is not defined herein and is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan; provided, however, that "or" is disjunctive. The words "includes" and "including" are without limitation.

  1.3 ***Exhibits, Schedules, Appendices and Plan Documents.***

   All exhibits, schedules and appendices to this Plan as well as this Plan Documents and the Plan Supplement are incorporated into this Plan by this reference and are a part of this Plan as if set forth in full herein. All Plan Documents shall be filed with the Clerk of the Bankruptcy Court no later than ten (10) Business Days prior to the Confirmation Objection Deadline, in a form acceptable to the First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion. Holders of Claims and Equity Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address:

     Kurtzman Carson Consultants LLC
     Attention: CRC Parent Corp.
     2335 Alaska Avenue
     El Segundo, CA 90245
     Telephone: (866) 381-9100
     E-mail: KCC_ChemRx@kccllc.com

# ARTICLE II:

## PROVISIONS FOR TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS UNDER THE PLAN

### 2.1   *Introduction.*

This Plan is premised upon the substantive consolidation of the Debtors, as set forth in more detail in Section 6.1 below, for the purposes of voting, determining which Claims and Equity Interests will be entitled to vote to accept or reject this Plan, confirmation of this Plan and the resultant discharge of and cancellation of Claims and Equity Interests and distribution of Assets, interests and other property under the terms herein. Based on the substantive consolidation of the Debtors under this Plan, Intercompany Claims shall not be classified and no Plan Distribution or Litigation Trust Distribution shall be made in respect of Intercompany Claims.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in another Class or Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Class(es). A Claim is also placed in a particular Class for the purpose of receiving Plan Distributions or Litigation Trust Distributions only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

### 2.2   *Administrative Claims and Priority Tax Claims.*

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not designated as Classes of Claims for purposes of this Plan.

### 2.3   *Time for Filing Additional Administrative Claims.*

All requests for payment of an Additional Administrative Claim must be filed with the Bankruptcy Court and served on counsel for each of the Creditor Proponents no later than twenty-one (21) days after the Confirmation Date, or else such Additional Administrative Claim shall be barred or discharged. Unless the Plan Administrator, the Litigation Trustee, the First Lien Agent, in the exercise of its sole and absolute discretion, or the U.S. Trustee objects to an Additional Administrative Claim within twenty-five (25) days after the Effective Date (or such later date as extended by the Bankruptcy Court at the request of the Plan Administrator), such Additional Administrative Claim shall be deemed Allowed in the amount requested. In the event that the Plan Administrator, the Litigation Trustee, the First Lien Agent, in the exercise of its sole and absolute discretion, or the U.S. Trustee objects to a timely filed Additional Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

### 2.4 Time for Filing Objections to Priority Claims, Priority Tax Claims and Certain Administrative Claims.

Unless the Plan Administrator, the Litigation Trustee, the First Lien Agent, in the exercise of its sole and absolute discretion, the U.S. Trustee or any party in interest objects to a Priority Claim, Priority Tax Claim, or Administrative Claim that is not an Additional Administrative Claim or Fee Claim, within twenty-five (25) days after the Confirmation Date (or such later date as extended by the Bankruptcy Court at the request of the Plan Administrator), such Priority Claim, Priority Tax Claim or Administrative Claim that is not an Additional Administrative Claim or Fee Claim, shall be deemed Allowed in the amount requested. In the event that the Plan Administrator, the Litigation Trustee, the First Lien Agent, in the exercise of its sole and absolute discretion, the U.S. Trustee or any party in interest objects to a timely filed Priority Claim, Priority Tax Claim or Administrative Claim that is not an Additional Administrative Claim or Fee Claim, the Bankruptcy Court shall determine the Allowed amount of such Priority Claim, Priority Tax Claim or Administrative Claim.

### 2.5 Time for Filing of Fee Claims.

All final applications seeking payment of Fee Claims must be filed and served on the First Lien Agent, the Plan Administrator, the Litigation Trustee and the U.S. Trustee and their counsel no later than twenty-one (21) days after the Confirmation Date. Objections to such final fee applications must be filed twenty-five (25) days after the date on which the applicable final fee application was served. Any party in interest may object to any application or request for compensation or reimbursement. Any Fee Claim that is not filed on or before the deadline set forth in this Section 2.5 shall result in the Fee Claim being forever barred and discharged. A Fee Claim in respect of which a final fee application has been properly and timely filed and served shall become an Allowed Administrative Claim only to the extent allowed by Final Order. Notwithstanding anything in this Plan to the contrary, any Claims filed by a Professional Person, including Fee Claims, Administrative Claims or Additional Administrative Claims, shall be subject to the terms of this Section 2.5.

### 2.6 Treatment of Allowed Administrative Claims.

Except to the extent that a holder of an Allowed Administrative Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable treatment, each holder of an Allowed Administrative Claim shall receive, in full and final satisfaction of its Allowed Administrative Claim, a Plan Distribution of Cash from the Consummation Account in an amount equal to such Allowed Administrative Claim, without interest, on or as soon as practicable after the latest to occur of (i) the Effective Date; (ii) the first Business Day after the date that is ten (10) Business Days after the date such Administrative Claim becomes an Allowed Administrative Claim; and (iii) the date or dates agreed to by the Plan Administrator and the holder of the Allowed Administrative Claim. All distributions from the Consummation Account shall be made by the Plan Administrator, in consultation with the First Lien Agent.

### 2.7 *Treatment of Priority Tax Claims*.

Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive (a) a Plan Distribution of Cash from the Consummation Account in an amount equal to such Allowed Priority Tax Claim, without interest, on or as soon as practicable after the latest to occur of (i) the Effective Date; (ii) the first Business Day after the date that is ten (10) Business Days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (iii) the date or dates agreed to by the Plan Administrator and the holder of the Allowed Priority Tax Claim.

### 2.8 *Settlement of Contested Administrative Claims, Priority Claims, Priority Tax Claims or Other Secured Claims.*

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Plan Administrator may settle or compromise Administrative Claims, Priority Claims, Priority Tax Claims and Other Secured Claims, with the consent of the First Lien Agent, acting in the exercise of its sole and absolute discretion; provided, however, that any such settlement or compromise in accordance with this Section 2.8 shall not require the review or approval of the Bankruptcy Court or any other party in interest; provided, further however, that any Fee Claim or Administrative Claim filed by a Professional Person shall become an Allowed Administrative Claim only to the extent allowed by Final Order, as provided in Section 2.5 of this Plan. Notwithstanding the foregoing, any settlement or compromise of a Claim that involves an Insider or Management shall require Bankruptcy Court approval.

## ARTICLE III:

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

### 3.1 *Classification of Claims and Equity Interests*.

3.1.1     Class 1: Priority Claims

Class 1 consists of all Priority Claims. Class 1 is unimpaired.

3.1.2     Class 2: Other Secured Claims

Class 2 consists of all Other Secured Claims. Class 2 is impaired.

3.1.3     Class 3: Secured Lender Claims

Class 3 consists of all Secured Lender Claims. Class 3 is impaired.

3.1.4     Class 4: General Unsecured Claims

Class 4 consists of all General Unsecured Claims. Class 4 is impaired.

3.1.5   Class 5: Subordinated Claims

Class 5 consists of all Subordinated Claims. Class 5 is impaired.

3.1.6   Class 6: Equity Interests

Class 6 consists of all Equity Interests. Class 6 is impaired.

## ARTICLE IV:

## PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS

4.1     *Satisfaction of Claims and Equity Interests*.

The treatment of and consideration to be received by holders of Allowed Claims or Equity Interests pursuant to this Article IV and the other provisions of this Plan shall be in full satisfaction, settlement, release and discharge of each holder's respective Claims or Equity Interests.

4.2     *Class 1: Priority Claims*.

Except to the extent that a holder of an Allowed Priority Claim agrees to a less favorable treatment of such Allowed Priority Claim, or such Allowed Priority Claim has been paid or otherwise satisfied, each holder of an Allowed Priority Claim shall receive a Plan Distribution of Cash in an amount equal to such Allowed Priority Claim, without interest, on or as soon as practicable after the latest to occur of (i) the Effective Date; (ii) the first Business Day after the date that is ten (10) Business Days after the date such Claim becomes an Allowed Priority Claim; and (iii) the date or dates agreed to by the Plan Administrator and the holder of the Allowed Priority Claim.

4.3     *Class 2: Other Secured Claims*.

Except to the extent that a holder of an Allowed Other Secured Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable treatment, each holder of an Allowed Other Secured Claim shall receive, at the option of the First Lien Agent in the exercise of its sole and absolute discretion (a) a Plan Distribution of Cash in an amount equal to the net proceeds of the sale or disposition of the Collateral securing such holder's Allowed Other Secured Claim, without interest, on or as soon as practicable after the latest to occur of (i) the Effective Date; (ii) the first Business Day after the date that is ten (10) Business Days after the date such Claim becomes an Allowed Other Secured Claim; and (iii) the date or dates agreed to by the Plan Administrator and the holder of the Allowed Other Secured Claim; or (b) the Collateral securing such holder's Allowed Other Secured Claim; or (c) such other Plan Distribution necessary to satisfy the requirements of the Bankruptcy Code. Any portion of any Other Secured Claim that is not secured by Collateral or the proceeds thereof shall constitute a

General Unsecured Claim to the extent it is Allowed. This Plan constitutes an objection to the Allowance of any and all Other Secured Claims.

    4.4    ***Class 3: Secured Lender Claims***.

        4.4.1    *Allowed Secured Lender Claims*. The Secured Lender Claims are hereby Allowed Secured Lender Claims not subject to offset, defenses, counterclaims, reductions or credit of any kind whatsoever in an amount equal to $104.6 million which is comprised of the sum of (i) the aggregate principal amount outstanding under the Credit Agreement as of the Petition Date, plus (ii) termination amounts in respect of the ISDA Master Agreement as of the Early Termination Date (as defined therein), plus (iii) accrued and unpaid interest on the principal amounts outstanding under the Credit Agreement and the ISDA Master Agreement through the Petition Date.

        4.4.2    *Distributions*. Each holder of an Allowed Secured Lender Claim shall receive:

        a.    Promptly following the Effective Date, but subject to Section 4.4.3 of this Plan, its Pro Rata share of (i) 100% of the Available Proceeds; (ii) beneficial interests in the Litigation Trust which shall entitle such holder to receive a Litigation Trust Distribution in accordance with and pursuant to Section 6.3.9 of this Plan and the terms and provisions of the Litigation Trust Documents; and (iii) pursuant to Section 6.12 of this Plan, any Assets of the Debtors remaining on the Effective Date, except for (x) the Consummation Account (which shall be subject to Section 4.4.2(b) of this Plan), (y) the Estate Causes of Action and (z) the Litigation Trust Reserve, which Estate Causes of Action and Litigation Trust Reserve shall automatically be transferred to the Litigation Trust on the Effective Date pursuant to Section 6.3.3 below and the Litigation Trust Documents;

        b.    upon satisfaction of all Allowed Administrative Claims, Allowed Priority Claims, Allowed Priority Tax Claims and Allowed Other Secured Claims, its Pro Rata share of the amounts remaining in the Consummation Account; provided, however, that the Plan Administrator shall be entitled to deduct from the amounts to be distributed to the Secured Lenders pursuant to this Section 4.4.2(b) an amount equal to the accrued and unpaid fees, costs and expenses of the Plan Administrator, counsel to the Plan Administrator or any other professional retained by the Plan Administrator pursuant to this Plan or any Plan Document;

        c.    tax refunds or any other refund of any kind or nature; and

        d.    the releases relating to the Released Claims.

        4.4.3    *First Lien Agent's Expenses*. The First Lien Agent shall be entitled to deduct from the amounts to be distributed to the Secured Lenders pursuant to Section 4.4.2 of this Plan an amount equal to the accrued and unpaid fees, costs and expenses of its counsel (Kaye Scholer LLP and Potter, Anderson & Corroon LLP) and Capstone Advisory Group, LLC, its financial advisors, and estimates for any ongoing work in connection with implementation of this Plan.

4.5     *Class 4: General Unsecured Claims.*

        4.5.1     All holders of Allowed General Unsecured Claims shall receive their Pro Rata share of the beneficial interests in the Litigation Trust and receive Litigation Trust Distributions in accordance with and pursuant to Section 6.3.9 of this Plan and the terms and provisions of the Litigation Trust. The Litigation Trust shall be funded with $2 million for the Litigation Trust Reserve on the Effective Date.

        4.5.2     The Secured Lender Deficiency Claims are hereby Allowed General Unsecured Claims, not subject to offset, defense, counterclaim, reduction or credit of any kind whatsoever, in the amount of approximately $38.1 million. A holder of an Allowed Secured Lender Deficiency Claim shall be permitted to vote such Claim along with the other holders of Allowed General Unsecured Claims; provided, however, that no holder of an Allowed Secured Lender Deficiency Claim shall receive any Plan Distribution or Litigation Trust Distribution on account of its Allowed Secured Lender Deficiency Claim.

        4.5.3     The Unsecured Creditors' Designee, in consultation with the Litigation Trustee, shall decide whether, when, and in what amounts Litigation Trust Distributions shall be made to the holders of Allowed General Unsecured Claims and shall direct the Litigation Trustee (subject to the provisions of this Plan and the Litigation Trust Documents) to make any such Litigation Trust Distributions.

4.6     *Class 5: Subordinated Claims.*

        The Subordinated Claims are unsecured claims and are contractually subordinated to all Secured Lender Claims, Secured Lender Deficiency Claims and Second Lien Lender Claims. On the Effective Date, if and to the extent that a Subordinated Claim becomes an Allowed Claim, and not a Disallowed Claim or a Claim subordinated to General Unsecured Claims by Order of this Bankruptcy Court, the Litigation Trustee shall be authorized and directed to transfer any interest in the Litigation Trust Distributions that a holder of such Subordinated Claim is entitled to receive on account of such Subordinated Claim to the holders of the Secured Lender Claims, Secured Lender Deficiency Claims and Second Lien Lender Claims in accordance with the terms of the notes underlying such Subordinated Claims until such time as the holders of the Secured Lender Claims, Secured Lender Deficiency Claims and Second Lien Lender Claims are paid in full on account of such Claims. Upon the payment in full of such Secured Lender Claims, Secured Lender Deficiency Claims and Second Lien Lender Claims, the Litigation Trustee shall be authorized and directed to transfer any remaining interest in the Litigation Trust Distributions to the holder of such Subordinated Claim; provided, however, that to the extent a Subordinated Claim is a Disallowed Claim or a Claim subordinated to General Unsecured Claims by Order of this Bankruptcy Court, such Subordinated Claim shall not be entitled to any distribution pursuant to the Plan. Holders of Subordinated Claims shall not be required to surrender their notes or other instruments evidencing ownership of such Subordinated Claims.

4.7    ***Class 6: Equity Interests.***

On the Effective Date, all Equity Interests shall be deemed cancelled and extinguished, and the holders of Equity Interests will not receive any Plan Distribution or Litigation Trust Distribution, or be entitled to retain any property or interest in property, on account of such Equity Interests. Holders of Equity Interests shall not be required to surrender their certificates or other instruments evidencing ownership of such Equity Interests.

4.8    ***Limitation on Recovery for Claims Against More Than One Debtor.***

A holder of a Claim asserted against more than one Debtor but arising under the same facts shall receive not more than one Plan Distribution or Litigation Trust Distribution hereunder on account of such holder's Allowed Claim and shall be enjoined from seeking any further distribution.

### ARTICLE V:

### ACCEPTANCE OR REJECTION OF THIS PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

5.1    ***Classes Entitled to Vote.***

Holders of Secured Lender Claims (Class 3), Allowed Other Secured Claims (Class 2) and General Unsecured Claims (including the Secured Lender Deficiency Claims) (Class 4) are entitled to vote on this Plan. Any holder of a Claim that has been objected to may file a motion pursuant to Bankruptcy Rule 3018 for an order temporarily allowing such Claim solely for purposes of voting to accept or reject this Plan in accordance with the procedures to be set forth in the order approving the Disclosure Statement, including any deadlines set forth therein. Class 1 is deemed to have accepted this Plan. Classes 5 and 6 are deemed to have rejected this Plan.

The Plan Proponents have requested that the Bankruptcy Court adopt a presumption that if no holder of a Claim or Equity Interest in a Class of Claims or Equity Interests eligible to vote in a particular Class timely submits a timely Ballot to accept or reject this Plan, then the applicable Class will be deemed to have accepted this Plan. Accordingly, if any holder of a Claim in Classes 2 or 3 does not wish such a presumption to apply with respect to any Class for which such holder holds a Claim, then the holder should timely submit a Ballot accepting or rejecting this Plan for any such Class.

5.2    ***Class Acceptance Requirement.***

A Class of Claims shall have accepted this Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on this Plan.

5.3     *Cramdown and No Unfair Discrimination.*

In the event that any impaired Class of Claims or Equity Interests rejects this Plan or is deemed to have rejected this Plan, the Creditor Proponents hereby request, without any delay in the occurrence of the Confirmation Hearing or Effective Date, that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case this Plan shall constitute a motion for such relief.

## ARTICLE VI:

## MEANS FOR IMPLEMENTATION

6.1     *Substantive Consolidation of Debtors for Plan Purposes Only.*

Entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Chapter 11 Cases for certain purposes related to this Plan, including for purposes of voting, confirmation, and distribution. On and after the Effective Date: (i) no Plan Distributions or Litigation Trust Distributions, as applicable, shall be made under this Plan on account of the Intercompany Claims among the Debtors; (ii) all guarantees by any of the Debtors of the obligations of any other Debtor arising prior to the Effective Date shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the deemed consolidated Debtors; and (iii) each and every Claim filed or to be filed in the Chapter 11 Cases shall be deemed filed against the consolidated Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Debtors.

6.2     *Merger and Dissolution of the Debtors.*

Following the occurrence of the Effective Date, the Debtors shall automatically be dissolved, such dissolution shall be effective as of the Effective Date pursuant to the Confirmation Order without any further action by the holders of Equity Interests or directors of any of the Debtors, unless applicable law requires otherwise. Effective automatically as of the Effective Date, and without the necessity of any other or further act, instrument or Bankruptcy Court order, the Chapter 11 Cases shall be closed, except for Case Nos. 10-11567 and 10-5997.

6.3     *The Litigation Trust.*

6.3.1     *Execution of Litigation Trust Agreement.* On or before the Effective Date, the Debtors, on their own behalf and on behalf of the beneficiaries, shall execute the Litigation Trust Documents, in a form acceptable to the First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion, and all other necessary steps shall be taken to establish the Litigation Trust. Section 6.3 sets forth certain of the rights, duties, and obligations of the Litigation Trustee.

6.3.2     *Purpose of Litigation Trust.* The Litigation Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance with

Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

6.3.3 *Litigation Trust Assets*. The Litigation Trust shall consist of the Litigation Trust Assets and the proceeds thereof, including the Litigation Trust Recoveries. On the Effective Date, the Debtors shall transfer all of the Litigation Trust Assets to the Litigation Trust free and clear of all Liens, Claims, and encumbrances, except to the extent set forth in Sections 6.3.9, 6.3.11 and the other provisions of this Plan or in the Litigation Trust Documents.

6.3.4 *Governance of Litigation Trust*. The Litigation Trust shall be governed and administered by the Litigation Trustee subject to the terms of this Plan and the Litigation Trust Documents including the rights of the Oversight Committee. The Litigation Trustee and the Unsecured Creditors' Designee shall direct all litigation brought on behalf of the Litigation Trust.

Notwithstanding anything to the contrary herein, the Unsecured Creditors' Designee (and the Oversight Committee, as applicable) shall act in furtherance of, and consistent with, the purpose of the Litigation Trust and shall act in the best interests of the beneficiaries of the Litigation Trust. The Litigation Trustee shall be appointed by the Creditors' Committee pursuant to the terms of the Litigation Trust Documents.

6.3.5 *Role of the Litigation Trustee*. In furtherance of and consistent with the purpose of the Litigation Trust and this Plan, the Litigation Trustee shall, subject to the terms of this Plan and the Litigation Trust Documents, (A) have the power and authority to hold, manage, sell, and distribute the Litigation Trust Assets to the holders of Allowed Claims, (B) hold the Litigation Trust Assets for the benefit of the holders of Allowed Claims, (C) have the power and authority to hold, manage, sell, and distribute Cash or non-Cash Litigation Trust Assets obtained through the exercise of its power and authority, (D) subject to Section 6.9, have the power and authority to threaten, assert, prosecute and resolve, in the names of the Debtors and/or the name of the Litigation Trust, the Estate Causes of Action pursuant to the direction of the Unsecured Creditors' Designee, (E) have the power and authority to perform such other functions as are provided in this Plan or Litigation Trust Documents, and (F) have the power and authority to administer the closure of chapter 11 Case Nos. 10-11567 and 10-5997. The Litigation Trustee shall be responsible for all decisions and duties with respect to the Litigation Trust and the Litigation Trust Assets, subject to the terms of this Plan and the Litigation Trust Documents. In all circumstances, the Litigation Trustee shall act in the best interests of all beneficiaries of the Litigation Trust and in furtherance of the purpose of the Litigation Trust.

6.3.6 *Litigation Trust Recoveries Account*. The Litigation Trustee shall deposit and maintain any and all proceeds of the Litigation Trust in a segregated account for distribution solely in accordance with section 6.3.9 of this Plan and the Litigation Trust Documents. In no event and under no circumstance (except as expressly set forth herein and in section 6.3.9 of this Plan) shall the Litigation Trust be permitted to spend any Litigation Trust Recoveries for any purpose, including payment of professional fees, costs and expenses, which payment shall be made solely from the Litigation Trust Reserve or a surcharge as provided in Section 6.3.8(d) of this Plan.

6.3.7    *Cash.* The Litigation Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code, provided, however, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

6.3.8    *Fees, Costs and Expenses of the Litigation Trust.*

a.    Any and all fees, costs and expenses of the Litigation Trust, including those of the Litigation Trustee and any and all professionals retained by the Litigation Trustee shall be paid solely out of the Litigation Trust Reserve or a surcharge as provided in subsection (d) below.

b.    The Litigation Trustee shall be entitled to reasonable compensation subject to the terms and provisions of the Litigation Trust Documents (including disclosure of the Litigation Trustee's compensation arrangements).

c.    The Litigation Trustee may retain and reasonably compensate counsel and other professionals to assist it in its duties as Litigation Trustee on such ordinary and customary and commercially reasonable terms as the Litigation Trustee deems appropriate without Bankruptcy Court approval. The Litigation Trustee may retain any professional who represented parties in interest in the Chapter 11 Cases. The fees, costs and expenses of these professionals shall be paid solely out of the Litigation Trust Reserve or a surcharge as provided in subsection (d) below.

d.    To the extent the Litigation Trust Reserve is (or is anticipated to be) exhausted or insufficient to fund the prosecution of the Estate Causes of Action or administer the Litigation Trust, the Litigation Trustee may request that the Litigation Trust Recoveries be surcharged; provided, however, that neither the Litigation Trust Recoveries designated for the benefit of the First Lien Agent for the benefit of the Secured Lenders nor the Litigation Trust Recoveries designated for the benefit of holders of Allowed General Unsecured Claims, shall be surcharged without the express written consent of the Lenders' Designee (in the case of the Litigation Trust Recoveries designated for the benefit of the First Lien Agent for the benefit of the Secured Lenders) or the Unsecured Creditors' Designee, (in the case of the Litigation Trust Recoveries designated for the benefit of the holders of Allowed General Unsecured Claims).

6.3.9    *Distribution of the Litigation Trust Recoveries.*

The Litigation Trustee shall distribute Litigation Trust Recoveries in accordance with the Litigation Trust Documents, beginning on the Effective Date in the following order:

a.    First, on a Pro Rata basis, to the extent not reimbursed previously, (i) to reimburse the First Lien Agent for the benefit of the Secured Lenders for any amounts expended from the Consummation Account in excess of the sum of the amounts transferred out of the M&T Account to the Consummation Account and $3.6 million; and (ii) to reimburse the Litigation Trustee for the benefit of the holders of Allowed General Unsecured Claims for any amounts expended from the Litigation Trust Reserve.

For example, if $4.6 million is disbursed from the Consummation Account (in excess of the funds transferred from the M&T Account) for payments, disbursements and expenses in connection with the consummation of this Plan, and

$2 million is disbursed from the Litigation Trust Reserve to fund the prosecution of Estate Causes of Action by the Litigation Trustee, then

for every $3 dollars recovered by the Litigation Trustee, $1 dollar shall be reimbursed to the First Lien Agent for the benefit of the Secured Lenders and $2 dollars shall be reimbursed to the Litigation Trustee for the benefit of holders of Allowed General Unsecured Claims.

b.    Second, (i) with respect to any Litigation Trust Recoveries but excluding Management Cause of Action Recoveries (other than D&O Insured Causes of Action), fifty percent (50%) of such Litigation Trust Recoveries shall be distributed to the holders of Allowed General Unsecured Claims and fifty percent (50%) of such Litigation Trust Recoveries shall be distributed to the First Lien Agent for the benefit of the Secured Lenders; it hereby being understood that Litigation Trust Recoveries with respect to the D&O Insured Causes of Action shall be allocated one-half to the First Lien Agent for the benefit of the Secured Lenders and one-half ratably to the holders of Allowed General Unsecured Claims; and (ii) with respect to any Management Cause of Action Recoveries, (A) the first $12 million of Management Cause of Action Recoveries (after reimbursement of the amounts specified in Section 6.3.9(a) hereof) shall be distributed sixty percent (60%) ratably to the holders of Allowed General Unsecured Claims and forty percent (40%) to the First Lien Agent for the benefit of the Secured Lenders; and (B) any Management Cause of Action Recoveries in excess of $12 million (after reimbursement of the amounts specified in Section 6.3.9(a) hereof) shall be distributed seventy percent (70%) ratably to the holders of Allowed General Unsecured Claims and thirty percent (30%) to the First Lien Agent for the benefit of the Secured Lenders.

6.3.10    *Time of Litigation Trust Distributions.*  The Litigation Trustee shall distribute Litigation Trust Recoveries to the First Lien Agent for the benefit of the Secured Lenders at least annually and at any time, and from time to time, that there are Litigation Trust Recoveries in an amount that, when applying the distribution methodology set forth in Section 6.3.9(b) of this Plan, would result in a distribution of at least $1 million to the First Lien Agent for the benefit of the Secured Lenders.

6.3.11    *Litigation Trust Reserve.*  The Litigation Trust Reserve shall be held in an account maintained by the Litigation Trustee to fund the prosecution of Estate Causes of Action, the fees, costs and expenses of the Litigation Trust and the Litigation Trustee pursuant to this Plan and the Litigation Trust Documents.  Any amounts remaining in the Litigation Trust Reserve, if any, upon termination or dissolution of the Litigation Trust shall be distributed by the Litigation Trustee to the holders of Allowed General Unsecured Claims.

6.4    *Federal Income Tax Treatment of Litigation Trust.*

        6.4.1    *Litigation Trust Assets Treated as Owned by Certain Creditors.*
For all federal income tax purposes, all parties (including the Debtors, the Litigation Trustee, the holders of Secured Lender Claims and the holders of General Unsecured Claims) shall treat the transfer of the Litigation Trust Assets to the Litigation Trust for the benefit of the holders of Allowed Claims, whether Allowed on or after the Effective Date, as (A) a transfer of the Litigation Trust Assets directly to the holders of Allowed Claims in satisfaction of such Claims followed by (B) the transfer by such holders to the Litigation Trust of the Litigation Trust Assets in exchange for beneficial interests in the Litigation Trust. Accordingly, the holders of such Claims shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Litigation Trust Assets.

        6.4.2    *Tax Reporting.*

        a.    The Litigation Trustee shall file returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 6.4.2. The Litigation Trustee shall also annually send to each record holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and shall instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the beneficial holders with instructions to report such items on their federal income tax returns. The Litigation Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Litigation Trust that are required by any Governmental Unit.

        b.    Allocations of Litigation Trust taxable income shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the Litigation Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the holders of the Litigation Trust interests, taking into account all prior and concurrent distributions from the Litigation Trust. Similarly, taxable loss of the Litigation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Litigation Trust Assets. The tax book value of the Litigation Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Internal Revenue Code, the Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

        c.    As soon as possible after the Effective Date, the Litigation Trustee shall make a good faith valuation of the Litigation Trust Assets. Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties (including the Debtors, the Litigation Trustee, and the holders of Allowed Secured Lender Claims, and Allowed General Unsecured Claims) for all federal income tax purposes.

        d.    The Litigation Trustee may request an expedited determination of taxes of the Litigation Trust under section 505(b) of the Bankruptcy Code for

all returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the dissolution of the Litigation Trust.

### 6.5 *Setoffs.*

Other than with respect to the Secured Lender Claims (as to which there are no rights of setoff or recoupment), the Litigation Trustee or Plan Administrator may, but shall not be required to, setoff against any Claim (for purposes of determining the Allowed amount of such Claim on which such Plan Distribution or Litigation Trust Distribution shall be made), any Claims, rights, or Cause of Action of any nature whatsoever that the Litigation Trust or Plan Administrator may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Litigation Trust of any such Claim, right or Cause of Action the Litigation Trust may have against the holder of such Claim.

### 6.6 *Noncertificated Litigation Trust Interests.*

The beneficial interests in the Litigation Trust shall not be certificated, except as otherwise provided in the Litigation Trust Documents.

### 6.7 *Dissolution of the Litigation Trust.*

The Litigation Trustee and the Litigation Trust shall be discharged or dissolved, as the case may be, at such time as (i) all Litigation Trust Assets have been liquidated; (ii) all distributions required to be made by the Litigation Trustee under this Plan have been made; and (iii) the Litigation Trust is otherwise fully administered. In no event shall the Litigation Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary (and, in the case of any extension, within six (6) months prior to the end of such extension), determines that a fixed period extension (not to exceed three (3) years together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Litigation Trust Assets or the dissolution of the Debtors.

### 6.8 *Securities Exempt.*

The issuance of the beneficial interests in the Litigation Trust satisfies the requirements of section 1145 of the Bankruptcy Code and, therefore, such issuance is exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration.

### 6.9 *Oversight Committee.*

On the Effective Date, the Oversight Committee shall be formed, which committee shall consist of two (2) members, the Unsecured Creditors' Designee and the Lenders' Designee. The Oversight Committee shall oversee the administration and implementation of this Plan and the liquidation and distribution of the Litigation Trust Assets in

accordance with this Plan and the Litigation Trust Documents, including the settlement of any Estate Causes of Action upon receiving a proposal of settlement from the Litigation Trustee. The Litigation Trustee shall produce such periodic reports as requested by the Oversight Committee with respect to the status of the Litigation Trust Distributions to holders of Allowed Secured Lender Claims or Allowed General Unsecured Claims. Oversight Committee decisions shall be made with unanimous approval. In the event of a dispute, the dispute shall be resolved by the Bankruptcy Court upon motion of any Oversight Committee member or the Litigation Trustee. The Oversight Committee shall have the following rights, obligations and duties:

a. Approve the Litigation Trustee's selection of, as well as the terms governing the engagement of, professionals to be engaged by the Litigation Trust on behalf of the Litigation Trust, who may have been previously engaged by the Debtors, the Creditors' Committee and/or the First Lien Agent, and establish retainer terms, conditions and budgets;

b. Appear in Bankruptcy Court, as necessary;

c. Seek an order terminating an Oversight Committee member and approving a replacement selected in a manner consistent with the original selection of such Oversight Committee member in the event the other member of the Oversight Committee determines there is cause to do so;

d. Articulate the Oversight Committee's position in the event the Litigation Trustee brings a dispute with the Oversight Committee to the Bankruptcy Court for resolution, or the Oversight Committee concludes it should bring a dispute with the Litigation Trustee to the Bankruptcy Court for resolution; and

e. Approve the settlement of Estate Causes of Action in excess of $25,000; it hereby being understood that the Litigation Trustee shall have discretion to approve the settlement of Estate Causes of Action up to $25,000.

6.9.2    Any disputes between and among the Oversight Committee, its members and the Litigation Trustee shall be resolved by the Bankruptcy Court, if so requested upon motion by any of such parties.

6.9.3    Subject to any applicable law, the members of the Oversight Committee shall not be liable for any act done or omitted by any member in such capacity, while acting in good faith and in the exercise of business judgment. Members of the Oversight Committee shall not be liable in any event except for gross negligence or willful misconduct in the performance of their duties hereunder.

6.9.4    Except as otherwise set forth in this Plan and to the extent permitted by applicable law, the members of the Oversight Committee in the performance of their duties hereunder (the "Indemnified OC Parties") shall be defended, held harmless and indemnified from time to time by the Litigation Trust to the extent such duties relate to the Litigation Trust (and not any other Person) against any and all losses, Claims, costs, expenses and liabilities to which such Indemnified OC Parties may be subject by reason of such Indemnified OC Party's execution of duties pursuant to the discretion, power and authority

conferred on such Indemnified OC Party by this Plan or the Confirmation Order; provided, however, that the indemnification obligations arising pursuant to this Section shall not indemnify the Indemnified OC Parties for any actions taken by such Indemnified OC Parties which constitute fraud, gross negligence or intentional breach of this Plan or the Confirmation Order. Satisfaction of any obligation of the Litigation Trust, arising pursuant to the terms of this Section shall be payable only from the Litigation Trust Assets, including, if available, any insurance maintained by the Litigation Trust.

6.9.5    Upon dissolution of the Litigation Trust, the Oversight Committee shall be dissolved automatically and its members will be released and discharged from all duties and obligations arising from or related to the Litigation Trust.

### 6.10    *Effectuating Documents; Further Transactions*.

The chief restructuring officer of CRC Parent or any applicable Debtor or the Plan Administrator, shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions contained herein.

### 6.11    *Cancellation of Existing Securities and Agreements*.

Except for purposes of evidencing a right to Plan Distributions or Litigation Trust Distributions under this Plan or as otherwise provided hereunder, on the Effective Date, all agreements and other documents evidencing Claims or rights of any holder of a Claim or Equity Interest against any of the Debtors, including the Credit Agreement, the Second Lien Credit Agreement, any documents evidencing the Subordinated Claims, all indentures, notes, bonds and share certificates evidencing such Claims and Equity Interests and any agreements or guarantees related thereto shall be cancelled, terminated, deemed null and void and satisfied. Notwithstanding anything contained herein to the contrary, the provisions of the Credit Agreement governing the relationship of the First Lien Agent and the Secured Lenders, including, but not limited to, those provisions relating to the First Lien Agent's rights of indemnification from the Secured Lenders, shall not be affected by and shall survive any or all of this Plan, entry of the Confirmation Order and the occurrence of the Effective Date.

### 6.12    *Vesting of Assets*.

Upon the occurrence of the Effective Date and except as otherwise provided in this Plan, title to all of the Assets of the Debtors other than the Estate Causes of Action, amounts in the Consummation Account (subject to Section 4.4.2(b) of this Plan) and the Litigation Trust Reserve shall vest in the First Lien Agent for the benefit of the Secured Lenders, free and clear of all Claims, Equity Interests, Liens, security interests, encumbrances, and other interests.

### 6.13    *Tax Matters*.

The Plan Administrator shall (A) be authorized to exercise all powers regarding the Debtors' tax matters, including filing tax returns, to the same extent as if the Plan Administrator were the Debtors, (B) complete and file the Debtors' federal, state, and local tax

returns, (C) request an expedited determination of any unpaid tax liability of the Debtors under section 505(b) of the Bankruptcy Code for all tax periods of the Debtors ending after the Petition Date through the liquidation of the Debtors as determined under applicable tax laws, to the extent not previously requested, and (D) represent the interest and account of the Debtors before any taxing authority in all matters, including, but not limited to, any action, suit, proceeding, or audit.

## ARTICLE VII:

## DISTRIBUTIONS

### 7.1    *Distribution Record Date*.

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors or their agents shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Interests. The Plan Administrator and/or Litigation Trustee shall have no obligation to recognize any transfer of any Claims or Equity Interests occurring on or after the Distribution Record Date. The Plan Administrator and Litigation Trustee, as applicable, shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date.

### 7.2    *Plan Administrator*.

All Plan Distributions to the holders of Allowed Administrative Claims, Allowed Priority Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims and Allowed Secured Lender Claims (which distributions to the Secured Lenders shall be made to the First Lien Agent for the benefit of holders of Secured Lender Claims) under this Plan shall be made by the Plan Administrator as disbursing agent. The Plan Administrator, as disbursing agent, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. All fees, costs and expenses of the Plan Administrator shall be paid out of the Consummation Account.

### 7.3    *Litigation Trustee*.

All Litigation Trust Distributions shall be made by the Litigation Trustee subject to and in accordance with Article VI of this Plan and the provisions of the Litigation Trust Documents. The Litigation Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

### 7.4    *Rights and Powers of Disbursing Agent*.

Each Disbursing Agent shall be empowered and directed to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (b) make all Plan Distributions or Litigation Trust Distributions, as applicable, contemplated hereby, (c) employ, retain or replace professionals to represent it with respect to its responsibilities (it being understood that the Plan Administrator's professionals shall be paid out of the Consummation Account and the Litigation Trustee's professionals shall be paid out of the Litigation Trust Reserve), and (d) exercise such other powers as may be vested in the Disbursing

Agent by order of the Bankruptcy Court, pursuant to this Plan or the Litigation Trust Documents, as applicable, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### 7.5    *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, any Plan Distribution or Litigation Trust Distribution or delivery to a holder of an Allowed Claim shall be made at the last known address of such holder as set forth (a) in the Schedules filed with the Bankruptcy Court unless the Debtors have been notified in writing of a change of address, including by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected in such Schedules for such holder, (b) on the Proof of Claim filed by such holder, (c) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e), or (d) in any notice served by such holder giving details of a change of address; provided that all Plan Distributions and Litigation Trust Distributions to Secured Lenders under Section 4.4 of this Plan shall be made by the applicable Disbursing Agent to the First Lien Agent for the benefit of the Secured Lenders; provided further that when the Plan Distributions or Litigation Trust Distributions, as applicable, contemplated in the foregoing proviso have been made by the Disbursing Agent, the Debtors shall be deemed to have satisfied their Plan Distribution or Litigation Trust Distribution, as applicable, obligations with respect to the holders of Allowed Secured Lender Claims. If any Plan Distribution or Litigation Trust Distribution is returned to the Disbursing Agent as undeliverable, no Plan Distributions or Litigation Trust Distribution shall be made to such holder unless the Disbursing Agent is notified of such holder's then current address within ninety (90) days after such Plan Distribution or Litigation Trust Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution or Litigation Trust Distribution, and (x) the undeliverable Plan Distributions to the holders of Administrative Claims, Priority Claims, Priority Tax Claims, Other Secured Claims and Secured Lender Claims shall be returned to the Consummation Account or, if the amounts remaining in the Consummation Account shall have been paid to the First Lien Agent for the benefit of the Secured Lenders, then the undeliverable Plan Distributions shall be turned over to the First Lien Agent for the benefit of the Secured Lenders; and (y) the undeliverable Litigation Trust Distributions made to any holder of an Allowed General Unsecured Claim on account of such Allowed General Unsecured Claim shall be turned over to the Litigation Trustee for distribution to the holders of Allowed General Unsecured Claims.

### 7.6    *Manner of Payment Under Plan.*

7.6.1    At the sole option of the Plan Administrator or Litigation Trustee, as the case may be, any Cash payment to be made hereunder may be made by a check or wire transfer; provided that any Plan Distributions or Litigation Trust Distributions, as applicable, of Cash to the First Lien Agent for the benefit of the Secured Lenders shall be made to the First Lien Agent by wire transfer of immediately available funds for further disbursement to the Secured Lenders, subject to Section 4.4.3 of this Plan.

7.6.2    *Time Bar to Cash Payments.* Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of

issuance thereof. Requests for reissuance of any voided check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued. Any Claim in respect of such a voided check shall be made within ninety (90) days after the date of issuance of such check. If no request is made as provided in the preceding sentence, any Claims in respect of such voided check shall be discharged and forever barred.

## ARTICLE VIII:

## PROCEDURES FOR CONTESTED CLAIMS

### 8.1 *Objections to Claims*.

The First Lien Agent in the exercise of its sole and absolute discretion, the Plan Administrator (in consultation with the First Lien Agent) and the Litigation Trustee shall be entitled to object to, settle, compromise, withdraw or litigate objections to Claims against the Debtors. Any objections to General Unsecured Claims shall be served and filed on or before sixty days (60) after the Effective Date, which shall be the Claims Objection Deadline (unless extended by the Bankruptcy Court upon the request of a party in interest). Any fees, costs or expenses incurred by the Litigation Trustee in objecting to Claims shall be borne by the Litigation Trust out of the Litigation Trust Reserve.

### 8.2 *No Distributions Pending Allowance*.

Notwithstanding any other provision in this Plan, no payments, Plan Distributions or Litigation Trust Distributions, as applicable, shall be made with respect to all or any portion of a Contested Claim unless and until all objections to such Contested Claim have been settled or withdrawn or have been determined by Final Order, and the Contested Claim, or some portion thereof, has become an Allowed Claim.

### 8.3 *Contested General Unsecured Claims Reserve*.

The Litigation Trustee shall establish appropriate reserves for Contested General Unsecured Claims by withholding 100% of the Litigation Trust Distributions to which holders of such Contested Claims would be entitled under this Plan if such Contested Claims were Allowed Claims.

### 8.4 *Distributions After Allowance*.

After such time as a Contested Claim becomes, in whole or in part, an Allowed Claim, the Disbursing Agent shall distribute to the holder thereof the Plan Distributions or Litigation Trust Distributions, as applicable, if any, to which such holder is then entitled under this Plan. Any such distributions shall be made in accordance with this Plan. No interest shall be paid on any Contested Claim that later becomes an Allowed Claim.

### 8.5  *Claims Administration- Settlement Guidelines.*

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, all General Unsecured Claims may be compromised and settled by the Litigation Trust according to the following procedures:

a.    Subject to Section 6.9(e) of this Plan and subsection 8.5(b) hereof, the following settlements or compromises do not require the review or approval of the Bankruptcy Court or any other party in interest:

(i)    The settlement or compromise of a General Unsecured Claim pursuant to which such Claim is Allowed in an amount equal to $500,000 or less; and

(ii)   The settlement or compromise of a Claim where the difference between the amount of the Claim listed on the Debtors' Schedules and the amount of the Claim proposed to be Allowed under the settlement is $500,000; and

b.    The following settlements or compromises shall be submitted to the Bankruptcy Court for approval:

(i)    Any settlement or compromise not described in subsection 8.5(a) hereof; and

(ii)   Any settlement or compromise of a Claim that involves an Insider or Management.

### ARTICLE IX:

### EXECUTORY CONTRACTS

### 9.1  *Rejection of Executory Contracts.*

Any Executory Contract which has not been assumed with the approval of the Bankruptcy Court on or prior to the Confirmation Date shall be deemed a rejected Executory Contract by the applicable Debtor effective on the Confirmation Date.  This Plan shall constitute a motion to reject such Executory Contracts and the Debtors shall have no liability thereunder, except that any Claim related to a rejected Executory Contract shall be treated as a General Unsecured Claim subject to filing of a proof of claim pursuant to Section 9.2 below.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejection pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejection is in the best interest of the applicable Debtor, its Estate, and all parties in interest in the Chapter 11 Cases.

### 9.2  *Time for Filing Rejection Claims.*

Claims arising from the rejection of Executory Contracts (including the rejection provided in Section 9.1 of this Plan) or the expiration or termination of any Executory Contract prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the First

Lien Agent, the Litigation Trustee and the Debtors within twenty-one (21) days after the service of the Notice of Confirmation. Any Claims for which a proof of claim is not filed and served within such time will be forever barred from assertion and shall not be enforceable against the Debtors or their Estates, Assets, properties or interests in property or the Litigation Trust. All proofs of Claims arising from the rejection of Executory Contracts that are timely filed as provided herein shall be treated under this Plan as General Unsecured Claims.

9.3     *Reservation of Rights.*

Nothing contained in this Plan, including this Section 9.3, shall constitute a waiver of any Claim, right or Cause of Action that the Debtors or the Litigation Trust, as the case may be, may hold against the insurer under any policy of insurance or insurance agreement.

## ARTICLE X:

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND THE EFFECTIVE DATE

10.1    *Conditions Precedent to Confirmation.*

This Plan will not be confirmed, and the Confirmation Order will not be entered, until and unless each of the following conditions has occurred or has been waived in accordance with the terms of this Plan:

a.      the Confirmation Order shall be acceptable to the First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion;

b.      all of the Plan Documents shall be acceptable to the First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion;

c.      the Creditor Proponents shall have agreed to the Consummation Budget, each in the exercise of its sole and absolute discretion;

d.      the Confirmation Order shall be entered no later than February 28, 2011, time being strictly of the essence;

e.      each of the Secured Lenders and each of the present and former members of the Creditors' Committee shall have agreed to provide the Released Parties with releases of Holder Released Claims as contemplated by Section 11.5.2.

10.2    *Conditions Precedent to the Effective Date.*

The Effective Date of this Plan shall not occur unless and until each of the following conditions has occurred or has been waived in accordance with the terms of this Plan:

a.      the Confirmation Order shall have been entered, shall have become a Final Order, and shall be acceptable to the First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion;

b.     all agreements and other instruments which are exhibits to this Plan or included in the Plan Supplement shall be acceptable to the First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion, and shall have been executed and delivered by the parties thereto;

c.     all actions, documents and agreements necessary to implement this Plan and the transactions contemplated by this Plan shall have been effected or executed;

d.     the Effective Date shall have occurred no later than March 22, 2011, time being strictly of the essence;

e.     the Litigation Trustee shall have executed the Litigation Trust Agreement and any other Litigation Trust Documents;

f.     the Litigation Trustee shall have received the monies to fund the Litigation Trust Reserve;

g.     the Plan Administrator shall have received the monies to fund the Consummation Account;

h.     the Available Proceeds shall have been paid over to the First Lien Agent for the benefit of the Secured Lenders;

i.     the Creditors' Committee shall have dismissed Adversary Proceeding No. 10-53163 (MFW) against CIBC World Markets Corp., *et al.*;

j.     the provisions of Section 11.5.7 of this Plan shall be included in the Confirmation Order; and

k.     the First Lien Agent shall have dismissed Adversary Proceeding No. 10-52358 (MFW) against SAC Domestic Capital Funding, Ltd., *et al.*

10.3     *Waiver of Conditions to Confirmation and Effective Date.*

The First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion may waive, in whole or in part, any of the conditions to the confirmation or effectiveness of this Plan; provided, however that only the consent of the First Lien Agent, in the exercise of its sole and absolute discretion is required to waive the provisions of Section 10.1(e) of this Plan. Any such waiver of a condition may be effected at any time, without prior notice or leave or order of the Bankruptcy Court and without any formal action, other than the filing of a notice of such waiver with the Bankruptcy Court.

10.4     *Effect of Failure of Conditions to the Effective Date.*

In the event the conditions specified in Section 10.2 of this Plan have not been satisfied or waived in accordance with Section 10.3 of this Plan, and upon notification submitted by the Creditor Proponents, each in the exercise of its sole and absolute discretion, to the

Bankruptcy Court (a) the Confirmation Order shall be vacated; (b) no Plan Distributions or Litigation Trust Distributions, as applicable, under this Plan shall be made; (c) the Debtors and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (d) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any proceedings further involving the Debtors. Neither the Disclosure Statement, any statement contained in the Disclosure Statement nor this Plan may be used in these Chapter 11 Cases, or in any action, other than in connection with confirmation of this Plan. In the event that this Plan is not confirmed, or is confirmed but does not become effective, the Disclosure Statement, any statements contained in the Disclosure Statement and this Plan shall have no force or effect, and neither the Disclosure Statement, any statements contained in the Disclosure Statement nor this Plan shall be admissible in any court or legal forum for any purpose whatsoever.

## ARTICLE XI:

## EFFECT OF CONFIRMATION

### 11.1   *Rights of Action/Reservation of Rights*.

Except as otherwise provided in this Plan or the Confirmation Order, or in any contract, instrument, release, indenture or other agreement entered into in connection with this Plan, and except with respect to the Released Parties, in accordance with section 1123(b) of the Bankruptcy Code, the Litigation Trustee shall reserve, retain and may enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) all Estate Causes of Action. Except as otherwise expressly set forth herein, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any right or Causes of Action that the Debtors may have or which the Litigation Trustee may choose to assert under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, any and all Claims against any Person, to the extent such Person asserts a cross-claim, counterclaim and/or Claim for setoff which seeks affirmative relief against any of the Debtors, their officers, directors or representatives. The Litigation Trustee shall be deemed the appointed representative to, and may pursue, litigate, compromise, settle, transfer or assign any such rights, claims, Causes of Action, suits or proceedings as appropriate, in accordance with the best interests of the Creditor Proponents or their respective successors who hold such rights.

### 11.2   *Satisfaction of Claims and Termination of Equity Interests*.

11.2.1   Subject to the occurrence of the Effective Date, as of the Effective Date, except as provided in this Plan, the distributions and rights afforded under this Plan and the treatment of Claims and Equity Interests under this Plan shall be in exchange for and in complete satisfaction of all Claims against the Debtors, and in satisfaction of all Equity Interests and the termination of Equity Interests in the Debtors. Except as otherwise specifically provided in this Plan, as of the Effective Date any interest accrued on Claims against the Debtors from and after the Petition Date shall be cancelled. Accordingly, except as otherwise provided in

this Plan or the Confirmation Order, confirmation of this Plan shall, as of the Effective Date, satisfy, terminate and cancel all Claims against the Debtors and Equity Interests and other rights of equity security holders in the Debtors.

11.2.2    Subject to the occurrence of the Effective Date, as of the Effective Date, except as provided in this Plan, all Persons shall be precluded from asserting against the Debtors, the Litigation Trust, or their respective successors or property, any other or further Claims, debts, rights, Causes of Action, liabilities or Equity Interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.

11.2.3    No Person holding a Claim may receive any payment from, or seek recourse or recovery against, any Assets that are to be distributed under this Plan, other than Assets required to be distributed to that Person under this Plan.

11.3    *Term of Injunctions or Stays.*

11.3.1    Except as provided in this Plan or the Confirmation Order, as of the Effective Date, all Persons that hold, have held, or may hold a Claim or other debt or liability against the Debtors or an Equity Interest or other right of an equity security holder that is terminated pursuant to the terms of this Plan, are permanently enjoined from taking any of the following actions on account of, or on the basis of, such Claims, debts or liabilities, or terminated Equity Interest or rights (other than actions brought to enforce any rights or obligations under this Plan or the Confirmation Order): (i) commencing or continuing any action or other proceeding against the Debtors, the Litigation Trust or their respective property; (ii) enforcing, attaching, collecting or recovering any judgment, award, decree or order against the Debtors, the Litigation Trust or their respective property; (iii) creating, perfecting or enforcing any Lien or encumbrance against the Debtors, the Litigation Trust or their respective property; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due the Debtors, the Litigation Trust or their respective property; and (v) commencing or continuing any judicial or administrative proceeding, in any forum, that does not comply with or is inconsistent with the provisions of this Plan.

11.3.2    All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

11.4    *Injunction Against Interference With Plan.*

Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employers, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

11.5    *Releases and Injunction Related to Releases.*

11.5.1    *Releases by Debtors and Estates.* On and as of the Effective Date, the Debtors on their own behalf and as representatives of their respective Estates and any

Person seeking to exercise the rights of the Debtors' Estates (including, the Plan Administrator and Litigation Trustee on behalf of the Litigation Trust, or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code), release unconditionally, and are hereby deemed to release unconditionally, each and all of the Released Parties of and from any and all Claims, obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action and liabilities of any nature whatsoever (including actions arising under the Bankruptcy Code, Avoidance Actions and that certain Adversary Proceeding No. 10-53163 (MFW) by the Creditors' Committee against CIBC World Markets Corp., et al.), whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, that are or may be based in whole or in part upon any act, omission, transaction, event or other occurrence taking place or existing on or prior to the Effective Date that are in connection with the Debtors or any of them, or their respective Assets, property and Estates, the Chapter 11 Cases or this Plan, or the Disclosure Statement (the "Debtor Released Claims").

      11.5.2   *Releases by Holders of Claims and Interests.* Except as otherwise expressly provided in this Plan or the Confirmation Order, on the Effective Date and effective simultaneously with the effectiveness of this Plan, each Person (a) that has voted to accept this Plan or is deemed to have accepted this Plan and has not opted out from granting the releases in this Section 11.5.2, (b) that has voted to reject this Plan but has opted to grant the releases in this Section 11.5.2, or (c) who otherwise agrees to provide the releases set forth in this Section 11.5.2, shall be deemed to have unconditionally released each and all of the Released Parties of and from any and all Claims, obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, that are or may be based in whole or in part upon any act, omission, transaction, event or other occurrence taking place or existing on or before the Effective Date that are in connection with the Debtors or any of them, or their respective assets, property and Estates, the Chapter 11 Cases or this Plan or the Disclosure Statement (the "Holder Released Claims"); provided, however, that the First Lien Agent does not by virtue of giving its own release hereunder, release individual Claims, if any, of Secured Lenders for which it acts or acted as agent; and provided further that the First Lien Agent shall not be deemed to have released any Secured Lender for which it acts or acted as agent from any obligations under the Credit Agreement.

      11.5.3   *Failure to Grant Release.* Any holder of a Claim that has timely submitted a Ballot to the balloting agent opting not to grant the releases set forth in Section 11.5.2 shall not receive the benefit of the releases set forth in Section 11.5.2 (even if for any reason otherwise entitled).

      11.5.4   *Injunction Related to Releases.* Except as provided in this Plan or the Confirmation Order, as of the Effective Date, all Persons that hold, have held, or may hold a Claim or other debt, right, Cause of Action or liability that is released pursuant to the provisions of this Plan are permanently enjoined from taking any of the following actions on account of or based upon the Released Claims: (i) commencing or continuing any action or other proceeding against the Released Parties or their respective property; (ii) enforcing, attaching, collecting or recovering any judgment, award, decree or order against the Released Parties or

their respective property; (iii) creating, perfecting or enforcing any Lien or encumbrance against the Released Parties or their respective property; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due the Released Parties or against their respective property; and (v) commencing or continuing any judicial or administrative proceeding, in any forum, that does not comply with or is inconsistent with the provisions of this Plan.

        11.5.5   *Deemed Consent.* By voting to accept this Plan or accepting any Plan Distributions or Litigation Trust Distributions, as applicable, under this Plan, and not opting out from granting the releases in Section 11.5.2 of this Plan, each holder of a Claim will be deemed, to the fullest extent permitted by applicable law, to have specifically consented to the exculpations, releases and injunctions set forth in this Plan.

        11.5.6   *No Waiver.* All Estate Causes of Action, except for Estate Causes of Action against Released Parties, are expressly reserved and shall not be subject to the releases set forth in Sections 11.5.1 and 11.5.2 of this Plan; provided, however, that the Estate Causes of Action shall be subject to the provisions of Section 11.5.7 of this Plan.

        11.5.7   *Injunction Against Barred Claims.* All (i) Released Parties; (ii) Persons who have voted for or against the Plan or who are presumed to have voted for or against the Plan under section 1126(f)-(g) of the Bankruptcy Code; (iii) any other Persons that hold, have held or may hold a Claim or other debt or liability, or an Equity Interest, against, in or relating to any of the Debtors or their respective Estates; and (iv) present or former members of Management (collectively, the "Barred Persons") are hereby permanently barred, enjoined and restrained from commencing, prosecuting, or asserting in this Bankruptcy Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere any Claim for non-contractual indemnity or contribution against any Released Party (including any other non-contractual Claim against the Released Parties, whether or not denominated as for contribution or indemnity, where the injury to the Barred Person is the liability of the Barred Person to the Litigation Trust), arising out of or reasonably flowing from the Claims or allegations in any of the Released Claims or the Estate Causes of Actions, whether arising under state, federal or foreign law as Claims, cross-claims, counterclaims, or third-party Claims (collectively, the "Barred Claims").

        The Litigation Trustee and the Litigation Trust shall not be entitled to recover from any Released Party, and no Released Party shall have any obligation, in whole or in part, for, any amount that the Litigation Trustee and the Litigation Trust seeks to recover from any Person. The Confirmation Order shall provide that if at a trial (or by settlement) where the issue of relative fault, responsibility or liability, including but not limited to contribution or indemnity, is determined between any of the Released Parties on the one hand and any Person on the other hand, if any of the Released Parties are found to be liable for a portion of the damages awarded to the Litigation Trustee or the Litigation Trust, then any Person shall be liable only for that amount or percentage of the damages awarded for which the Person is found to be at fault or responsible and not for any amount or percentage of the damages awarded which is found to be the fault or responsibility of the Released Parties.

If the Litigation Trust enters into a settlement with any Person with respect to one or more Estate Causes of Action based upon, arising from, or related to the Released Claims or any transaction underlying any Released Claim, then the Litigation Trust shall cause to be included, and in all events, the settlement shall be deemed to include, a dismissal, release and waiver of any Barred Claims with respect to such settlement.

### 11.6    *Settlement of Claims and Estate Causes of Action.*

In accordance with section 1123(b)(3) of the Bankruptcy Code, this Plan provides for the settlement of all Estate Causes of Action that have been or could have been asserted against any one or more of the Released Parties. Pursuant to such settlement, the First Lien Agent and the Secured Lenders have agreed, among other things, to pay (a) in an amount not to exceed the amounts set forth therefor in the Consummation Budget, all Allowed Administrative Claims, Allowed Priority Claims, Allowed Other Secured Claims, Allowed Priority Tax Claims, and (b) to provide $2 million on behalf of holders of Allowed General Unsecured Claims (which will be used to fund the Litigation Trust Reserve), and to waive their distributions on account of the Secured Lender Deficiency Claims, all subject to and in accordance with the provisions of this Plan. The First Lien Agent, on behalf of itself and the Secured Lenders, and the Creditors' Committee acknowledge and agree that the releases, exculpations and injunctions afforded the Released Parties pursuant to the terms and provisions of this Plan are (i) supported by consideration, (ii) integral parts of the settlement embodied in this Plan and (iii) necessary to the liquidation that is the subject of this Plan.

### 11.7    *Disallowed Claims And Disallowed Interests.*

On and after the Effective Date, the Debtors and the Litigation Trust shall be fully and finally discharged of any and all liability or obligation on a Disallowed Claim or a disallowed Equity Interest, and any Order disallowing a Claim or an Equity Interest which is not a Final Order as of the Effective Date solely because of an entity's right to move for reconsideration of such order pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date. The Confirmation Order, except as otherwise provided herein, shall constitute an Order: (a) disallowing all Claims and Equity Interests to the extent such Claims and Equity Interests are not allowable under any provision of section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims and Equity Interests, and Claims for unmatured interest and (b) disallowing or subordinating to all other Claims, as the case may be, any Claims for penalties, punitive damages or any other damages not constituting compensatory damages.

### 11.8    *Exculpation.*

Pursuant to section 1125(e) of the Bankruptcy Code, the Released Parties and each of their respective Related Persons, the CRO and the Debtors' professionals (collectively, "the Exculpated Parties") shall not be liable for any Cause of Action arising in connection with or out of the administration of the Chapter 11 Cases, pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court. The Confirmation Order shall enjoin all holders of Claims and Equity

Interests from asserting or prosecuting any Claim or Cause of Action against the Exculpated Parties as to which such Person has been exculpated from liability pursuant to the preceding sentence. The Debtors' directors and officers are not Exculpated Parties. The Plan Proponents are investigating whether such parties should be designated as Exculpated Parties and will reach a determination prior to the Confirmation Hearing.

### 11.9 *Injunctions*.

11.9.1 On the Effective Date and except as otherwise provided herein, all Persons who have been, are, or may be holders of Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against or affecting the Debtors, the Released Parties, the Estates, the Assets, the Disbursing Agents or the current members of the Creditors' Committee (unless AIG opts to give the Holder Released Claims, in which case this Section 11.9.1 shall include AIG), with respect to such Claims or Equity Interests (other than actions brought to enforce any rights or obligations under this Plan or the Confirmation Order):

a. commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);

b. enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;

c. creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and

d. asserting any setoff, right of subrogation or recoupment of any kind.

### 11.10 *United States Securities and Exchange Commission Reservation of Rights*

Notwithstanding anything to the contrary contained in the Disclosure Statement, Plan and/or the Confirmation Order, no provision of the Plan or Confirmation Order shall release any non-Debtor, including any of the Released Parties, from liability in connection with any legal action or claim brought by the United States Securities and Exchange Commission.

# ARTICLE XII:

## RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over all matters arising in, arising under, or related to the Chapter 11 Cases, or that relate to any of the following:

a. To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

b. To hear and determine all applications for the payment of Fee Claims and final fee applications.

c. To hear and determine any dispute or reconcile any inconsistency arising in connection with this Plan, any of the Plan Documents or the Confirmation Order or the interpretation, implementation or enforcement of this Plan, any of the Plan Documents, the Confirmation Order, any transaction or payment contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing.

d. To hear and determine any matter concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

e. To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

f. To hear and determine any rights, Claims or Estate Causes of Action held by or accruing to the Litigation Trust pursuant to the Bankruptcy Code, including any settlement or compromise thereof.

g. To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court.

h. To take any action, and issue such orders as may be necessary or appropriate, to construe, enforce, implement, execute and consummate this Plan or to maintain the integrity of this Plan following consummation.

i. To ensure that all Plan Distributions and Litigation Trust Distributions are accomplished as provided herein.

j. Except for the Secured Lender Claims and the Secured Lender Deficiency Claims, which are Allowed in full in accordance with the terms of this Plan,

to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim.

                     k.     To enter, implement or enforce such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated.

                     l.     To recover all Assets of the Debtors and property of the Debtors' Estates, wherever located.

                     m.     To enter a final decree closing the Chapter 11 Cases.

                     n.     To determine any motion, adversary proceeding, application, contested matter and other litigated matter pending on or commenced after the Confirmation Date.

                     o.     To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with this Plan and these Chapter 11 Cases.

                     p.     To hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge.

                     q.     To determine any other matters that may arise in connection with or are related to this Plan, the Disclosure Statement, the Confirmation Order, any of this Plan Documents or any other contract, instrument, release or other agreement or document related to this Plan, the Disclosure Statement or the Litigation Trust Documents.

                     r.     To resolve any dispute between the Litigation Trustee and the Oversight Committee.

                     s.     To hear and determine any dispute or suit regarding setoff or recoupment.

                     t.     To hear and determine all matters concerning Section 11.5.7 of this Plan.

## ARTICLE XIII:

## MISCELLANEOUS PROVISIONS

13.1    *Payment of Statutory Fees.*

On the Effective Date, and thereafter as may be required, the Plan Administrator shall pay all fees required to be paid pursuant to section 1930 of title 28 of the United States Code and all fees required to be paid to the office of the U.S. Trustee until the Chapter 11 Cases are closed.

13.2 *Notices*.

Any notices, requests, and demands to or upon the Plan Administrator, the First Lien Agent, the Creditors' Committee or the Debtors, to be effective, shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed and sent by email to the following:

If to the First Lien Agent, to:

CANADIAN IMPERIAL BANK OF COMMERCE
425 Lexington Avenue
New York, NY 10017
Attn: E. Lindsay Gordon
Tel: (212) 856-3579
Email: lindsay.gordon@us.cibc.com

with a copy to:

KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
Attn: Madlyn Gleich Primoff, Esq.
Tel: (212) 836-8000
Email: mprimoff@kayescholer.com

If to the Creditors' Committee, to:

WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Attn: John C. Cunningham, Esq.
Tel: 305 995 5252
Email: jcunningham@whitecase.com


and

FOX ROTHSCHILD LLP
Attention: Jeffrey M. Schlerf, Esq.
Citizens Bank Center
919 North Market Street, Suite 1600
P.O. Box 2323
Wilmington, Delaware 19899-2323
Telephone: (302) 654-7444
E-mail: jschlerf@foxrothschild.com

If to the Plan Administrator, to:

RSR CONSULTING, LLC
Attention: Robert S. Rosenfeld
49 Roy Avenue
Massapequa, NY 11758
Telephone: (516) 308-3505
Email: rrosenfeld@rsrconsultingllc.com

If to the Debtors, to:

GREENBERG TRAURIG LLP
MetLife Building
200 Park Ave.
New York, New York 10166
Attn: Maria DiConza, Esq.
Tel: 212.801.9200
Email: diconzam@gtlaw.com

### 13.3 *Headings*.

The headings and other captions used in this Plan are for reference purposes only, and shall not affect the meaning or interpretation of this Plan in any way.

### 13.4 *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a document in the Plan Supplement provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

### 13.5 *Exemption from Transfer Taxes*.

Pursuant to section 1146(a) of the Bankruptcy Code, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer from a Debtor to the Litigation Trust or any other Person or entity pursuant to this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Without limiting the foregoing, any issuance, transfer or exchange of a security or any making or delivery of an instrument of transfer pursuant to this Plan shall be exempt from the imposition and payment of any and all transfer taxes (including but not limited to any and all stamp taxes or similar taxes and any

interest, penalties and addition to the tax that may be required to be paid in connection with the consummation of this Plan and the Plan Documents) pursuant to sections 1146(a), 505(a), 106 and 1141 of the Bankruptcy Code.

13.6    *Notice of Entry of Confirmation Order and Relevant Dates.*

Promptly upon entry of the Confirmation Order, the Plan Administrator shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims and Equity Interests, notice of the entry of the Confirmation Order and all relevant deadlines and dates under this Plan, the costs of which shall be paid from the Consummation Account.

13.7    *Modification of this Plan and Amendments.*

This Plan may be amended, modified or supplemented by the First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.

13.8    *Revocation, Withdrawal or Non-Consummation of Plan.*

If the First Lien Agent, in the exercise of its sole and absolute discretion, revokes or withdraws this Plan with respect to any one or more of the Debtors, or if confirmation or consummation of this Plan does not occur as to any Debtor, then, as to such Debtor, (a) this Plan shall be null and void in all respects and (b) any settlements and compromises embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims) rejection of Executory Contracts affected by this Plan, and any document or agreement executed pursuant this Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained in this Plan and no acts taken in preparation for consummation of this Plan shall (i) constitute or be deemed to constitute a waiver or release of any Claims against or Equity Interests in such Debtor or any other Person, (ii) prejudice in any manner the rights of any of the Debtors or any other Person in any other further proceedings involving such Debtor or (iii) constitute or be deemed to constitute an admission of any sort by the Debtors or any other Person. None of the filing of this Plan, the taking by the First Lien Agent, the Secured Lenders, the Creditors' Committee or Debtors of any action with respect to this Plan or any statement or provision contained herein shall be or be deemed to be an admission by any Secured Lender, the First Lien Agent, the Creditors' Committee or the Debtors against interest, or be or be deemed to be a waiver of any rights, Claims or remedies that the Secured Lenders, the First Lien Agent, the Creditors' Committee or the Debtors may have, and until the Effective Date all such rights and remedies are and shall be specifically reserved. In the event this Plan is not confirmed and the Confirmation Order is not entered, this Plan and the Plan Documents and any document contained in the Plan Supplement, and any statement contained herein or therein, may not be used by any Person, party or entity against any Secured Lender, the First Lien Agent, the Creditors' Committee or the Debtors.

### 13.9 *Binding Effect.*

This Plan shall be binding upon and inure to the benefit of the Debtors, the holders of all Claims and Equity Interests and their respective successors and assigns, including the Plan Administrator and Litigation Trustee.

### 13.10 *Severability of Plan Provisions.*

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the First Lien Agent, in the exercise of its sole and absolute discretion, and the Creditors' Committee, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.11 *No Admissions.*

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTION, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

### 13.12 *Dissolution of the Creditors' Committee.*

On the Effective Date, the Creditors' Committee shall be dissolved automatically and its members will be released and discharged from all duties and obligations arising from or related to the Litigation Trust; provided, however, that the Creditors' Committee shall continue to exist for the following purposes:

a. preparing and prosecuting (and, if necessary, opposing) final fee applications, Administrative Claims or Additional Administrative Claims, as applicable, in each case filed by a Professional Person, and Creditors' Committee expense reimbursement requests; provided, however, that nothing in this Section 13.12 shall alter (i) the substantive rights of the Creditors' Committee or its Professional Persons to submit Claims, (ii) the merits, if any, of such Claims, or (iii) the applicable deadlines relating to such Claims as set forth in Article II of this Plan; and

b. selecting a successor Unsecured Creditors' Designee.

### 13.13  *Time.*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth in this Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 as in effect on the Petition Date shall apply. With regard to all dates and the periods of time set forth or referred to in this Plan, time is of the essence.

### 13.14  *Successors and Assigns.*

The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

### 13.15  *Conflict between Plan, Disclosure Statement and Plan Documents.*

In the event of any conflict between the terms and provisions in this Plan and the terms and provisions in the Disclosure Statement, any Plan Document or any document in the Plan Supplement, the terms and provisions of this Plan shall control and govern.

### 13.16  *Substantial Consummation.*

On the Effective Date, this Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 13.17  *Plan Exhibits.*

Any and all exhibits to this Plan or other lists or schedules not filed with this Plan shall be filed with the Clerk of the Bankruptcy Court at least ten (10) Business Days prior to the Confirmation Objection Deadline, unless this Plan provides otherwise. Upon such filing, such documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims or Equity Interests may obtain a copy of any such document upon written request to counsel for the Creditors' Committee in accordance with Section 1.3 of this Plan. The Creditor Proponents explicitly reserve the right to, with the prior written consent of the First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion, modify or make additions to or subtractions from any schedule to this Plan and to modify any exhibit to this Plan prior to the Confirmation Objection Deadline.

Dated: Wilmington, Delaware
February 7, 2011

Canadian Imperial Bank of Commerce, New York Agency, as First Lien Agent

By: _____

Name:
Title:     E. Lindsay Gordon
           Canadian Imperial Bank of Commerce
           Executive Director

KAYE SCHOLER LLP
Madlyn Gleich Primoff
425 Park Avenue
New York, New York 10022
Telephone: (212) 836-8000
Facsimile: (212) 836-6525
E-mail: mprimoff@kayescholer.com

        --and--

POTTER ANDERSON & CORROON LLP
Laurie Selber Silverstein (DE Bar No. 2396)
1313 North Market Street, 6th Floor
Wilmington, Delaware 19899
Telephone: (302) 984-6033
Facsimile: (302) 658-1192
E-mail: lsilverstein@potteranderson.com

*Co-Counsel for Canadian Imperial Bank of Commerce, New York Agency, as First Lien Agent*

Dated: Wilmington, Delaware
February 7, 2011

**Official Committee of Unsecured Creditors**

By:     S.A.C. Domestic Capital Funding, Ltd.

By:     _____

Name:  *Peter A. Nussbaum*
Title:  *Authorized Signatory*

WHITE & CASE LLP
John K. Cunningham
Wachovia Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
E-mail: jcunningham@whitecase.com

and

FOX ROTHSCHILD LLP
Jeffrey M. Schlerf (DE Bar No. 3047)
Citizens Bank Center
919 North Market Street, Suite 1600
P.O. Box 2323
Wilmington, Delaware 19899-2323
Telephone: (302) 654-7444
Facsimile: (302) 656-8920
E-mail: JSchlerf@foxrothschild.com

*Co-Counsel for the Official Committee of Unsecured Creditors*