IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CRC PARENT CORPORATION, *et al.* | ) | |
| f/k/a CHEM RX CORPORATION, *et al.*,[1] | ) | Case No. 10-11567 (MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Re: Docket No. 873 , 897 |
| | ) | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER UNDER 11 U.S.C. § 1129(a) AND (b) AND FED. R. BANKR. P. 3020 CONFIRMING THE SECOND AMENDED JOINT PLAN OF LIQUIDATION FOR CRC PARENT CORPORATION AND ITS AFFILIATED DEBTORS PROPOSED BY CANADIAN IMPERIAL BANK OF COMMERCE, NEW YORK AGENCY AS ADMINISTRATIVE AGENT AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

The above-captioned debtors (the "Debtors") filed voluntary petitions for relief (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") on May 11, 2010 (the "Petition Date").

Canadian Imperial Bank of Commerce, New York Agency, as Administrative Agent (the "First Lien Agent") and the Official Committee of Unsecured Creditors (the "Creditors' Committee") filed their *First Amended Joint Plan of Liquidation for CRC Parent Corporation and its Affiliated Debtors Proposed by Canadian Imperial Bank of Commerce, New York Agency, as Administrative Agent and the Official Committee of Unsecured Creditors*, dated as of February 7, 2011 (the "First Amended Plan") with the United States Bankruptcy Court for the District of Delaware (the "Court").[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: CRC Parent Corporation f/k/a Chem Rx Corporation (8469), B.J.K. Inc. (5997), CRC NJ, LLC f/k/a ChemRx New Jersey, LLC (9370), CRC PA, LLC f/k/a ChemRx / Salerno's, LLC (5981), CRC BR, LLC f/k/a ChemRx-Boca Raton, LLC (8021) and CRC CT, LLC f/k/a ChemRx Care, LLC (0826).

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan (as defined below). Any term used in the Plan or this

On January 7, 2011, the First Lien Agent and the Creditors' Committee (collectively, the Plan Proponents" and each a "Plan Proponent") filed the *Disclosure Statement Pursuant to section 1125 of the Bankruptcy Code with Respect to the Joint Plan of Liquidation for CRC Parent Corporation and its Affiliated Debtors Proposed by Canadian Imperial Bank of Commerce, New York Agency, as Administrative Agent and the Official Committee of Unsecured Creditors* with the Court.

On February 4, 2011, a hearing to consider approval of the Disclosure Statement (defined below) was held on notice to (i) all persons or entities that had filed proofs of claim in the Chapter 11 Cases that had not been previously disallowed by order of the Court and had been received by the Voting and Balloting Agent (defined below) prior to the applicable bar date for such claims; (ii) all persons listed on the Debtors' schedules of assets and liabilities as holding liquidated, non-contingent and undisputed claims; (iii) any other parties that requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure; (iv) other known holders of Claims or potential Claims; and (v) holders of Equity Interests.

On February 8, 2011, the Court entered an order (the "Disclosure Statement Order"), which, among other things, (a) approved the first amended disclosure statement (the "Disclosure Statement") with respect to the First Amended Plan under section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (b) established certain procedures for soliciting and tabulating votes with respect to the First Amended Plan, including approving the form and method of notice of the confirmation hearing (the "Confirmation Hearing Notice"), (c) established a deadline for the return to the Voting and Balloting Agent of ballots to accept or reject the First Amended Plan;

Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

and (d) established the date of the Confirmation Hearing and the deadline for objections to confirmation.

As evidenced by the Affidavit of Service of Evan Gershbein of Kurtzman Carson Consultants LLC (the "Voting and Balloting Agent") sworn to and filed with the Court on February 11, 2011 [Docket No. 786] (the "Solicitation Affidavit") (a) the Disclosure Statement, the First Amended Plan, the Confirmation Hearing Notice and the form of Ballot(s) and return envelope were transmitted to all known holders of Claims in Classes 3 and 4 in accordance with the Disclosure Statement Order; and (b) the Confirmation Hearing Notice and Notice of Non-Voting Status was transmitted to all known holders of Priority Claims in Class 1, Other Secured Claims in Class 2, Subordinated Claims in Class 5 and Equity Interests in Class 6 in accordance with the Disclosure Statement Order.

On February 18, 2011, the Creditors' Committee filed the Plan Supplement and the Plan Documents with the Court [Docket Nos. 815, 816]. As set forth in the affidavits of service (the "Plan Supplement Affidavits") [Docket Nos. 818, 819] filed with the Court, the Plan Supplement and the Plan Documents were served upon (a) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (b) counsel for the Debtors, (c) counsel for the First Lien Agent, (d) counsel for the Creditors' Committee, and (e) all parties having filed a notice of appearance and request for service herein in accordance with Bankruptcy Rule 2002, the Master Service List and certain additional parties.

On March 14, 2011, the Voting and Balloting Agent filed the *Declaration of Evan Gershbein Regarding the Tabulation of Ballots with Respect to Vote on First Amended Joint Plan of Liquidation for CRC Parent Corporation and its Affiliated Debtors* [Docket No. 841], attesting and certifying the method and results of the ballot tabulation for the Classes of Claims

(Classes 3 and 4) entitled to vote to accept or reject the First Amended Plan (as may have been supplemented thereafter, the "Voting Declaration").

An objection to confirmation of the First Amended Plan was filed and served by Steven Silva on March 15, 2011 [Docket No. 843], and Jerry Silva joined in that objection pursuant to a joinder dated March 15, 2011 [Docket No. 844] (collectively, the "Objection").

On April 4, 2011, the Plan Proponents filed the *Second Amended Joint Plan of Liquidation for CRC Parent Corporation and its Affiliated Debtors Proposed by Canadian Imperial Bank of Commerce, New York Agency, as Administrative Agent and the Official Committee of Unsecured Creditors*, dated April 4, 2011 (as expressly modified by this Confirmation Order, the "Plan").

On April 1, 2011, the Plan Proponents filed a memorandum of law in support of confirmation of the Plan and in reply to the Objection (the "Confirmation Memorandum").

On April 4, 2011, the Plan Proponents filed the following declarations (collectively, the "Supporting Declarations") in support of confirmation of the Plan: (a) the declaration of William C. Russo of Capstone Advisory Group, LLC, the financial advisor for the First Lien Agent's counsel; (b) the declaration of Dennis G. Cape, of Anda, Inc., the co-chair of the Creditors' Committee; (c) the declaration of Brian Spenner of SAC; (d) the declaration of Mark Gudis of SAC; and (e) the declaration of John P. Madden of Chanin Capital Partners, the financial advisor for the Creditors' Committee.

The Confirmation Hearing was held on April 7, 2011.

NOW, THEREFORE, based upon the Court's review of the Voting Declaration, the Supporting Declarations, the Confirmation Memorandum, the Objection, and the record of the Confirmation Hearing, including but not limited to, all the evidence admitted at, or filed in

connection with, and arguments of counsel made at, the Confirmation Hearing and the entire record of the Chapter 11 Cases; and after due deliberation thereon and good cause appearing therefor, this Court hereby makes and issues the following findings of fact and conclusions of law and hereby orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

IT IS HEREBY FOUND AND DETERMINED THAT:

A.  <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a), 1408 and 1409)</u>.  The Court has jurisdiction over the Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code.  Venue is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has exclusive jurisdiction to enter a final order determining whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.  <u>Judicial Notice</u>.  The Court takes judicial notice of the contents of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, but not limited to, all pleadings, notices and other documents filed, all orders entered, and all evidence and arguments made, proffered, admitted, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases, including, but not limited to, the hearings to consider the adequacy of the Disclosure Statement and the confirmation of the Plan.

---

[3]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  <u>See</u> Fed. R. Civ. P. 52 made applicable in these Chapter 11 Cases by Fed. R. Bankr. P. 7052 and 9014.

C.     Burden of Proof.  The Plan Proponents have satisfied the burden of proving the requirements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard.

D.     Solicitation and Notice.  As evidenced by the Solicitation Affidavit filed with the Court, (i) the Confirmation Hearing Notice and the Notice of Non-Voting Status has been served upon all known holders of Claims and Equity Interests in Classes 1, 2, 5 and 6, and (ii) the Disclosure Statement, the First Amended Plan, the Ballots, and the Confirmation Hearing Notice have been served upon all known holders of Claims in Classes 3 and 4, in compliance with the notice and solicitation procedures set forth in the Disclosure Statement Order and the Bankruptcy Rules.  The Confirmation Hearing Notice was also served on the Office of the United States Trustee, the District Director of the Internal Revenue Service, and all state and local taxing authorities in the states in which the Debtors conduct business.  Notice and service of the documents referred to in this paragraph were adequate and sufficient and were in compliance with the Disclosure Statement Order, the Bankruptcy Code and the Bankruptcy Rules, and provided due process and an opportunity to be heard to all parties in interest.  In addition, as evidenced by the Plan Supplement Affidavits filed with the Court, the service of the Plan Supplement consisting of the Litigation Trust Agreement and the identity of the Unsecured Creditors' Designee was adequate and sufficient under the circumstances and no other or further notice is or shall be required.  Pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of the modifications included in the Plan requires additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the holders of Claims or Equity Interests

be afforded an opportunity to change previously cast acceptances or rejections of the Plan. The Plan shall constitute the Plan submitted for confirmation by this Court.

E.     Voting. Based on the Voting Declaration, the votes to accept or reject the Plan were solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.

F.     Compromises and Settlements Under and in Connection with the Plan. All of the settlements and compromises pursuant to and in connection with the Plan comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. Based on the facts set forth in the Supporting Declarations, the Court has found that (i) the balance of the likelihood of success of claims asserted by the Creditors' Committee against the First Lien Agent and the Secured Lenders versus the likelihood of success of the defenses or counterclaims possessed by the First Lien Agent and the Secured Lenders, other claimants or other potential defendants; (ii) the complexity, cost and delay of litigation that would result in the absence of these settlements embodied in the Plan; (iii) the acceptance of the Plan by an overwhelming majority of the holders of Claims, as set forth in the Voting Declaration; and (iv) that the settlement embodied in the Plan is the product of extensive arms-length negotiations among the First Lien Agent, on behalf of the Secured Lenders, and the Creditors' Committee all support the finding that the settlement is fair, equitable and reasonable, and in the best interests of the Debtors, the Debtors' estates and all creditors of the Debtors. All settlements and compromises that are embodied in the Plan and this Confirmation Order, and all settlements and compromises approved by order of the Bankruptcy Court during the pendency of these Chapter 11 Cases, are hereby approved as fair, equitable, reasonable and in the best interests of the Debtors, the Debtors' Estates and all creditors of the Debtors.

G.     <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying the requirements of section 1129(a)(1) of the Bankruptcy Code. Specifically:

(i)     <u>Proper Classification (11 U.S.C. § 1122)</u>. The Claims or Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for classifying separately the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate among holders of Claims or Equity Interests. The Plan satisfies the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)     <u>Designation of Classes (11 U.S.C. § 1123(a)(1))</u>. Article III of the Plan designates five (5) Classes of Claims and one (1) Class of Equity Interests. The five Classes of Claims are Priority Claims, Other Secured Claims, Secured Lender Claims, General Unsecured Claims and Subordinated Claims.

(iii)     <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Article III of the Plan specifies that Class 1 is unimpaired under the Plan, thereby satisfying the requirements of section 1123(a)(2) of the Bankruptcy Code.

(iv)     <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Articles III and IV of the Plan specify that Classes 2 through 6 are impaired under the Plan and specify the treatment of Claims in Classes 2, 3, 4 and 5 and Equity Interests in Class 6, thereby satisfying the requirements of section 1123(a)(3) of the Bankruptcy Code.

(v)     <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment by the Plan Proponents for each Claim or Equity Interest in each respective Class

unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(vi)     Implementation of Plan (11 U.S.C. § 1123(a)(5)).  Articles VI, VII and the other provisions of the Plan provide adequate means for implementation of the Plan through, inter alia, dissolution of the Debtors, the establishment of the Litigation Trust, the delivery of distributions under the Plan and the appointment of the Plan Administrator and the Litigation Trustee, thereby satisfying the requirements of section 1123(a)(5) of the Bankruptcy Code.

(vii)    Prohibition of Issuance of Non-Voting Equity Securities (11 U.S.C. §1123(a)(6)).  The Plan does not provide for the issuance of any securities, including non-voting securities.  Therefore, Bankruptcy Code § 1123(a)(6) is satisfied.

(viii)   Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). Section 6.2 of the Plan provides for the dissolution of the Debtors.  Section 6.3.4 of the Plan provides that the Litigation Trust shall be governed and administered by the Litigation Trustee subject to the terms of the Plan and the Litigation Trust Documents.  Sections 7.2, 7.3 and 7.4 of the Plan provide that Plan Distributions shall be made by the Plan Administrator and that Litigation Trust Distributions shall be made by the Litigation Trustee.  Therefore, Bankruptcy Code § 1123(a)(7) is satisfied.

(ix)     Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1)).  Pursuant to Article III of the of the Plan, Class 1 (Priority Claims) is unimpaired under the Plan and Classes 2 through 6 are impaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

(x)      Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2)).  Section 9.1 of the Plan provides for the rejection of the executory contracts and unexpired leases of the Debtors

as of the Confirmation Date except for those executory contracts and unexpired leases previously assumed and assigned pursuant to the agreements and orders relating to the sales of substantially all of the Debtors' assets that took place in November 2010, and any other order of the Court.

(xi) <u>Settlement of Claims or Interests Belonging to the Debtors or Their Estates (11 U.S.C. § 1123(b)(3)(A))</u>. The Plan embodies the settlement in good faith of certain claims of the Debtors and the Debtors' Estates as contemplated by section 1123(b)(3) of the Bankruptcy Code.

(xii) <u>Creation of the Litigation Trust (11 U.S.C. § 1123(b)(3)(B))</u>. Articles VI and XI of the Plan provide for the creation of the Litigation Trust and for the appointment of the Litigation Trustee as the representative to pursue Estate Causes of Action, except those expressly released under the Plan, including all Estate Causes of Action against the First Lien Agent and the Secured Lenders.

(xiii) <u>Inclusion of Provisions not Inconsistent with the Bankruptcy Code (11 U.S.C. § 1123(b)(6))</u>. Article XI of the Plan contains release, injunction and exculpation provisions (as modified by this Confirmation Order) that are material to the settlements embodied in the Plan and are consistent with applicable provisions of the Bankruptcy Code, as contemplated by section 1123(b)(6) of the Bankruptcy Code.

(xiv) <u>Bankruptcy Rule 3016(a)</u>. The Plan is dated and identifies the Plan Proponents as proponents of the Plan, thereby satisfying the requirements of Bankruptcy Rule 3016(a).

(xv) <u>Bankruptcy Rule 3016(c)</u>. In accordance with Bankruptcy Rule 3016(c), the Plan describes in specific and conspicuous language all acts to be enjoined and identifies the

entities (as modified by this Confirmation Order) that would be subject to the injunctive provisions of the Plan to the extent required thereunder.

H.    Plan Proponents' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically:

(i)    The Debtors are proper debtors under section 109 of the Bankruptcy Code and the Plan Proponents are proper proponents under section 1121 of the Bankruptcy Code.

(ii)    The Plan Proponents have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of this Court.

(iii)    The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of this Court and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating votes on the Plan.

I.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying the requirements of section 1129(a)(3) of the Bankruptcy Code. The Plan Proponents' good faith is evident from the facts and records of the Chapter 11 Cases in their totality, the Disclosure Statement and the hearing thereon, the Disclosure Statement Order, the Supporting Declarations, the Voting Declaration and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases. The Plan and the settlements embodied in the Plan are the result of extensive arms-length negotiations among the First Lien Agent (on behalf of itself and the Secured Lenders) and the Creditors' Committee. The Court finds and concludes that the Plan has been proposed with the legitimate and honest purpose of liquidating the Debtors' Estates and maximizing returns to creditors and is in the paramount interest of creditors. The overwhelming support of creditors for the Plan provides independent evidence of the Plan Proponents' good

faith. Further, the release, exculpation and injunction provisions embodied in the Plan (as modified by this Confirmation Order) are fair and equitable, and are an integral component of a consensual agreement reached among the First Lien Agent, the Secured Lenders, and the Creditors' Committee and are consistent with sections 1123 and 1129 of the Bankruptcy Code.

J.    Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).  Any payment made or to be made by any of the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, and all payments made or to be made to professionals retained by order of the Court will be, as set forth in section 2.5 of the Plan, subject to review and approval by the Court upon final application under section 330, 331 or 503(b) of the Bankruptcy Code, thereby satisfying the requirements of section 1129(a)(4) of the Bankruptcy Code.  The Court finds and concludes that the Plan is not required to mandate Court approval for fees and expenses related to post-Effective Date administration of the Estates, including the reasonable fees and expenses of the Plan Administrator and Litigation Trustee or the reasonable fees and expenses of professionals retained by the Plan Administrator and Litigation Trustee.

K.    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).

(i)    The Plan Proponents have disclosed the identity of the Plan Administrator, Litigation Trustee and the Oversight Committee.  Robert S. Rosenfeld, the Chief Restructuring Officer of the Debtors, will serve as the Plan Administrator.  AP Services, LLC will be the Litigation Trustee.  The Oversight Committee shall be comprised of the Unsecured Creditors' Designee and the Lenders' Designee.  Canadian Imperial Bank of Commerce, New York Agency will serve as the Lenders' Designee.  The Unsecured Creditors' Designee will be (a) Anda, Inc.,

solely with respect to any and all Causes of Action asserted by the Litigation Trust against Jerry Silva, Steven Silva, the Jody R. Silva Trust and the Jerry Silva 2007 Annuity Trust, and (b) SAC Domestic Capital Funding, Ltd. with respect to all other matters. The selection of the Plan Administrator, the Litigation Trustee and the Oversight Committee is consistent with the interests of creditors and equity security holders and with public policy. With the exception of the Plan Administrator, no insider will be employed by the Debtors' Estates after the Effective Date. The Plan therefore complies with section 1129(a)(5) of the Bankruptcy Code.

L.     No Rate Changes (11 U.S.C. § 1129(a)(6)). The Debtors' business operations have been sold and the Debtors are liquidating. Thus, no rates are being changed that require approval of a governmental regulatory commission, and accordingly, section 1129(a)(6) of the Bankruptcy Code is not applicable with respect to the Plan.

M.     Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). The evidence admitted at the Confirmation Hearing, including the Supporting Declarations, as admitted, with respect to section 1129(a)(7) of the Bankruptcy Code (i) is persuasive and credible, (ii) has not been controverted by other persuasive evidence and has not been challenged, (iii) is based on reasonable and sound assumptions, and (iv) establishes that each holder of an impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. Thus, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

N.     Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Class 1 of the Plan is the sole unimpaired Class of Claims or Equity Interests and is conclusively presumed to have

accepted the Plan under section 1126(f) of the Bankruptcy Code. Class 3 (Secured Lender Claims) and Class 4 (General Unsecured Claims) are impaired Classes of Claims entitled to vote to accept or reject the Plan and have overwhelmingly voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. Pursuant to section 5.1 of the Plan, Class 2 (Other Secured Claims) is deemed to have accepted the Plan because no holder of a Claim eligible to vote in Class 2 submitted a timely ballot to accept or reject the Plan. Class 5 (Subordinated Claims) and Class 6 (Equity Interests) are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan (the "Rejecting Classes") pursuant to section 1126(g) of the Bankruptcy Code. Section 1129(a)(8) has not been satisfied with respect to the Rejecting Classes. The Plan is nevertheless confirmable because, as set forth below, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to the Rejecting Classes.

O.     Treatment of Allowed Administrative Expense Claims, Allowed Priority Claims, and Allowed Priority Tax Claims (11 U.S.C. § 1129(a)(9)).     The treatment of Allowed Administrative Expense Claims, Allowed Priority Claims and Allowed Priority Tax Claims pursuant to sections 2.6, 2.7 and 4.2 of the Plan satisfies the requirements of sections 1129(a)(9) of the Bankruptcy Code.

P.     Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(10)).     As set forth in the Voting Declaration, at least one impaired Class under the Plan has voted to accept the Plan in requisite numbers and amounts, without the need to include any acceptance of the Plan by any insider, thus satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

Q.     Feasibility (11 U.S.C. § 1129(a)(11)).     The evidence admitted at the Confirmation Hearing with respect to section 1129(a)(11) of the Bankruptcy Code (i) is persuasive and

credible, (ii) has not been controverted by persuasive evidence and has not been challenged, (iii) is based on reasonable and sound assumptions, and (iv) establishes that the Plan is feasible, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

R.     Payment of Statutory Fees (11 U.S.C. § 1129(a)(12)).   All fees payable under section 1930 of title 28 of the United States Code have been paid or will be paid pursuant to section 13.1 of the Plan by the Plan Administrator from the funds in the Consummation Account on the Effective Date, and thereafter as may be required until the Chapter 11 Cases are closed and a final decree is entered.   Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

S.     Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(13)-(16)). Sections 1129(a)(13)-(16) are inapplicable because the Debtors (i) do not provide retiree benefits, (ii) have no domestic support obligations, (iii) are not individuals, and (iv) are for-profit businesses.

T.     Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)).   The Plan Proponents presented uncontroverted evidence at the Confirmation Hearing and, based on such evidence, the Court hereby finds and concludes that the Plan does not discriminate unfairly, and is fair and equitable with respect to each of the Rejecting Classes, as required by section 1129(b)(1) of the Bankruptcy Code.  Classes 5 and 6 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code because the holders of such Claims or Equity Interests will not receive or retain any property under the Plan on account of their respective Claims or Equity Interests.  The holders of any Claim or Equity Interest that is junior to the Claims of Class 5 and the Equity Interests of Class 6 will not receive or retain any property under the Plan on account of such junior Claim or Equity Interest.  Thus, the Plan may be

confirmed under section 1129(b) of the Bankruptcy Code, notwithstanding the deemed rejection of Classes 5 and 6.

U.  Only One Plan (11 U.S.C. § 1129(c)).  Other than the Plan, no plan has been filed in these Chapter 11 Cases.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

V.  Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, as amended, and there has been no objection filed by any governmental unit asserting such avoidance.  The Plan therefore complies with section 1129(d) of the Bankruptcy Code.

W.  Rejection.  Article IX of the Plan governing the rejection of executory contracts and unexpired leases satisfies the requirements of section 365 of the Bankruptcy Code.  The executory contracts and unexpired leases of the Debtors to be rejected on the Confirmation Date in accordance with the Plan are burdensome and, as such, the rejection thereof as of the occurrence of the Confirmation Date is in the best interests of the applicable Debtor party to such contracts or leases, its Estate, and all parties in interest in the Chapter 11 Cases.

X.  Substantive Consolidation.  No creditor of any of the Debtors will be prejudiced by the substantive consolidation of the Chapter 11 Cases to the extent set forth in the Plan; such substantive consolidation will benefit all creditors of the Debtors.

Y.  Satisfaction of Confirmation Requirements.  The Plan satisfies the requirements for confirmation set forth in section 1129(a) and (b) and of the Bankruptcy Code.

Z.     Satisfaction of Conditions to Confirmation.     All conditions precedent to confirmation of the Plan, as set forth in section 10.1 of the Plan, if not waived pursuant to section 10.3 of the Plan, have been or will be satisfied upon entry of this Confirmation Order.

AA.     Good Faith Solicitation (11 U.S.C. § 1125(e)).     Based upon the record before the Court, the Plan Proponents have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Disclosure Statement Order and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

BB.     Releases, Exculpations and Injunctions.

(i)     In approving the exculpations, releases, limitations of liability and injunctions (as modified by this Confirmation Order), the Court has considered: (a) whether an identity of interest between the Debtors and the Released Parties exists, such that a suit against the Released Parties is a suit against the Debtors or would deplete assets of the estates; (b) the substantial contribution of the Released Parties since the Petition Date; (c) the essential nature of Article XI of the Plan to the approval of the Plan; and (d) that a substantial majority of the creditors support the Plan. See In re Zenith Electronics Corp., 241 B.R. 92, 110 (Bankr. D. Del. 1999) (considering similar factors to determine if release of a third party should be allowed as part of a plan).

(ii)     The Creditors' Committee conducted a thorough investigation as to potential causes of actions against, *inter alia*, the First Lien Agent, the Secured Lenders and certain of the Debtors' former officers and directors.  Based on such investigation, the Creditors' Committee initiated an adversary proceeding against the First Lien Agent and the Secured Lenders (the "Committee Litigation").  The Creditors' Committee and the First Lien Agent (on behalf of itself and the Secured Lenders) subsequently entered into settlement negotiations and,

due in part to the willingness of the First Lien Agent and the Secured Lenders to provide a distribution to general unsecured creditors and to achieve a consensual plan of liquidation, the Creditors' Committee agreed to settle the Committee Litigation, as reflected in the Plan, which provides Plan Releases for the First Lien Agent and the Secured Lenders.

(iii)    In consideration for the Plan Releases and injunctions provided in section 11.5 of the Plan and to achieve a consensual plan of liquidation, the Secured Lenders have agreed to permit a distribution to the holders of Allowed General Unsecured Claims of value otherwise distributable to the Secured Lenders and to waive any recovery on account of the Secured Lender Deficiency Claim.

(iv)    The Plan provides for various releases, exculpations and injunctions (as modified by this Confirmation Order).  With regard to the releases contained in section 11.5 of the Plan, each holder of an impaired Claim against the Debtors that either (i) voted to accept the Plan or is deemed to have accepted the Plan and did not opt-out from granting the releases in section 11.5.2 of the Plan, (ii) voted against the Plan but opted to grant the releases set forth in section 11.5.2 of the Plan, or (iii) otherwise agreed to provide the releases in section 11.5.2 of the Plan, has specifically consented to the releases, exculpations and injunctions contained in the Plan.  Furthermore, the releases, exculpations and injunctions (as modified by this Confirmation Order) provided in the Plan (i) are within the jurisdiction of the Court under 28 U.S.C. § 1334; (ii) are integral elements of the settlement incorporated into the Plan; (iii) confer material benefit on, and are in the best interests of, the Debtors, the Debtors' Estates and the Debtors' creditors, and are important to the overall objectives of the Plan; and (iv) are consistent with sections 105, 524, 1123, 1129 and 1141 and other applicable provisions of the Bankruptcy Code.  In particular, the Court finds the following:

i.   The various components of the settlement embodied in the Plan are all interrelated and each component is an integral part of the entire settlement. Among other things, absent the opportunity to share in the Litigation Trust Recoveries, the Secured Lenders would not be willing to fund either the $2 million distribution for the benefit of general unsecured creditors or the $4.6 million to pay Allowed Administrative Claims, Allowed Priority Claims and Allowed Priority Tax Claims under the Plan.

ii.   In the absence of the settlement embodied in the Plan, the First Lien Agent and the Secured Lenders would vigorously defend against the Committee Litigation and other disputed matters. In addition, in the absence of settlement, the First Lien Agent and the Secured Lenders would not consent to the use of cash collateral for any purpose.

iii.   The discussions that culminated in the settlement embodied in the Plan were conducted at all times at arm's-length, in good faith and not by any means prohibited by law. The Plan Proponents' collective objectives throughout these negotiations were to maximize the value of the Debtors' Estates; minimize costs and expenses; develop a chapter 11 plan that would provide for the payment in full to holders of Allowed Administrative Claims, Allowed Priority Claims, and Allowed Priority Tax Claims; settle the Committee Litigation and the other disputes between the Creditors' Committee and the First Lien Agent and/or the Secured Lenders; and potentially provide for a meaningful distribution for the benefit of general unsecured creditors. In accordance with these objectives, the Plan was proposed with the legitimate and honest purpose of liquidating the Debtors' Estates and maximizing returns to creditors. The Plan promotes equality among similarly situated creditors consistent with the priorities established in the Bankruptcy Code.

iv.    The First Lien Agent (on behalf of itself and the Secured Lenders) and the Creditors' Committee and their respective agents, accountants, business consultants, representatives, attorneys and advisors, have acted in good faith throughout their arm's-length negotiations and the subsequent drafting and negotiation of the terms of the Plan and the documents relating thereto.  Accordingly, the Plan has been proposed in good faith and not by any means forbidden by law.

CC.    <u>Retention of Jurisdiction</u>.  The Court may properly retain jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

DD.    <u>Plan Documents</u>.  The Court finds and concludes that the Plan Documents and the Plan Administrator Agreement, as they may be amended as contemplated and permitted by the Plan, have been negotiated in good faith and are, in the judgment of the parties, necessary and appropriate to effectuate the Plan.

**DECREES**

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:**

1.    <u>Confirmation</u>.  The Plan is approved and confirmed under section 1129 of the Bankruptcy Code.  The documents contained in the Plan Supplement, the Plan Administrator Agreement and all other Plan Documents substantially in the form filed with the Court with such changes as may be required by the First Lien Agent or the Creditors' Committee, as applicable, each in the exercise of its sole and absolute discretion, but subject to and in accordance with the terms of the Plan and the Litigation Trust Documents, at any time up to and including the occurrence of the Effective Date (subject to and in accordance with the Plan) are incorporated by reference into and are an integral part of the Plan and this Confirmation Order.  All references to the Plan shall hereby be deemed to refer to the Plan, the Plan Supplement, the Plan Administrator

Agreement, and the Plan Documents. The First Lien Agent and the Creditors' Committee and all parties in interest are authorized and directed to carry out, and comply with, the provisions of the Plan, the Plan Documents, and the Plan Administrator Agreement, and to take all action reasonably necessary to effectuate the Plan, the Plan Documents, and the Plan Administrator Agreement.

2.     Objection.  All parties have had a full and fair opportunity to litigate all issues raised by the Objection, or which might have been raised, and the Objection has been fully and fairly litigated.  Except as set forth on the record of the Confirmation Hearing or as reflected in the modifications to the Plan made in this Confirmation Order to address the rulings of the Court at the Confirmation Hearing, the Objection, and all other objections, responses, statements and comments in opposition to the Plan that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights pertaining to confirmation of the Plan included therein are overruled for the reasons stated on the record at the Confirmation Hearing.  The Court's ruling with respect to the "Mary Carter" issues raised is reflected in the transcript of the Confirmation Hearing.

3.     Plan Supplement; Other Plan Documents.  The forms, terms and provisions of each of the documents contained in the Plan Supplement, any other Plan Document and any amendments, modifications, or supplements to any Plan Document, the Plan Administrator Agreement, all documents and agreements related thereto or to consummation and implementation of the Plan and any other documents or agreements introduced into evidence at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Plan Proponents, are authorized and hereby approved, substantially in the form filed with the Court, including, but not

limited to, the Litigation Trust Documents. After entry of this Confirmation Order, the First Lien Agent and the Creditors' Committee shall have the right to modify any Plan Document or other document referred to herein at any time through and including the Effective Date subject to and in accordance with the Plan and the Litigation Trust Documents. Each of the Plan, the Plan Documents, the Plan Supplement, the Plan Administrator Agreement and this Confirmation Order shall constitute a legal, valid, binding and authorized obligation of the respective parties thereto, enforceable in accordance with its terms.

4.  <u>Settlements and Compromises</u>. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the settlements and compromises set forth in the Plan, including settlements and compromises reflected in the Plan relating to the Committee Litigation, were negotiated in good faith, are in the paramount interest of creditors, and are approved in all respects. This Court has found that the settlements embodied in the Plan are fair, equitable, reasonable and in the best interests of the Debtors, the Debtors' Estates and the Debtors' creditors. In approving the settlements embodied in the Plan, the Court has considered: (i) the balance of the likelihood of success of claims asserted by the Creditors' Committee against the likelihood of success of the defenses or counterclaims possessed by the First Lien Agent, the Secured Lenders, other claimants or other potential defendants; (ii) the complexity, cost and delay of litigation that would result in the absence of these settlements; (iii) the acceptance of the Plan by an overwhelming majority of the holders of Claims, as set forth in the Voting Declaration; and (iv) that the Plan is the product of extensive arms-length negotiations among the Debtors, First Lien Agent, the Creditors' Committee and other parties in interest.

5.  <u>Retention of Jurisdiction</u>. Except as otherwise set forth in section XII of the Plan, pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this

Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, but not limited to, jurisdiction over those items and matters set forth in Article XII of the Plan and any related matters.

6. <u>Plan Classification Controlling</u>. The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.

7. <u>Binding Effect</u>. Pursuant to section 1141(a) of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as otherwise provided in the Plan or this Confirmation Order, the Plan and its provisions (including all Plan Documents and the Plan Administrator Agreement) and this Confirmation Order shall be binding on (i) the Debtors, (ii) the Litigation Trustee and the Plan Administrator, (iii) any entity acquiring or receiving property as a distribution under the Plan, and (iv) any holder of a Claim against or Equity Interest in the Debtors, including all Governmental Units, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder or entity has accepted the Plan.

8. <u>Exemption from Stamp Taxes</u>. Pursuant to Bankruptcy Code section 1146, any transfers from the Debtors, the Litigation Trust, the Litigation Trustee or the Plan Administrator to any other Person or entity pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of the Debtors' or the Litigation Trust's real or personal property, or the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, including, without limitation, any transfers to or by the Litigation Trustee or the Plan

Administrator of the Debtors' or the Litigation Trust's property in implementation of or as contemplated by the Plan (including, without limitation, any subsequent transfers of property by the Litigation Trustee or the Plan Administrator) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

9.      Bar Date for Rejection Damage Claims.  Pursuant to section 9.2 of the Plan, if the rejection of an Executory Contract pursuant to section 9.1 of the Plan results in damages to the other party or parties to such Executory Contract, a Claim for such damages, if not heretofore evidenced by a filed Proof of Claim, shall be forever barred and shall not be enforceable against the Debtors or their Estates, assets, properties or interests in properties, unless a Proof of Claim is filed with the Court and served upon the First Lien Agent, the Litigation Trustee and the Debtors within twenty-one (21) days after the service of the Notice of Confirmation.

10.      General Authorizations.  Pursuant to section 1142(b) of the Bankruptcy Code, (i) each of the First Lien Agent, the Creditors' Committee, the Plan Administrator and the Litigation Trustee and (ii) all other necessary and appropriate parties are authorized and empowered to (a) execute, deliver, file or record such contracts, documents, instruments, releases, indentures and other agreements or documents, (b) perform any act that is necessary, required, appropriate or desirable, (c) comply with, effectuate and further evidence the terms and

provisions of the Plan, the Plan Administrator Agreement, any document contained in the Plan Supplement, and any other Plan Document necessary to consummate the Plan, whether or not specifically referred to in the Plan or any Plan Document, without further order of the Court. In addition, each of the First Lien Agent, the Creditors' Committee, the Plan Administrator and the Litigation Trustee and all other necessary parties are authorized and empowered, without limitation, to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, and other agreements or documents created in connection with the Plan.

11.     On the Effective Date, or as soon thereafter as reasonably practicable, Manufacturers and Traders Trust Company ("M&T") shall be provided with a bank reconciliation to include all outstanding deposits, drafts, wires, checks, transfers, debits and checks ("Reconciliation"). Following the receipt of such Reconciliation, M&T is hereby authorized to transfer all funds remaining in the M&T Account at the Effective Date to the Consummation Account, less all accrued and outstanding fees and charges under the account agreements governing the M&T Account, and all outstanding drafts, wires, checks, transfers, debits and checks drawn on the M&T Account as identified in the Reconciliation, following which time the M&T Account may be closed in accordance with the account agreements governing the M&T Account and M&T's customary practices. On the Effective Date and at the written direction of the Plan Proponents, (i) Greenberg Traurig, LLP, as escrow agent and on behalf of the Debtors, with respect to the Escrow Account, and (ii) Wells Fargo Bank, National Association, with respect to the Wells Fargo Account, are hereby authorized and directed to transfer (a) to the Consummation Account, an amount up to a maximum of $4.6 million, first from the funds remaining in the Escrow Account on the Effective Date and finally, from the

funds available in the Wells Fargo Account on the Effective Date; (b) to the Litigation Trust, the $2 million Litigation Trust Reserve; and (c) to the First Lien Agent all Available Proceeds.

12.     Substantive Consolidation.   The substantive consolidation of the Chapter 11 Cases for certain purposes related to the Plan, including, but not limited to, for purposes of voting, confirmation and distribution, is hereby approved.   On and after the Effective Date: (i) no Plan Distributions or Litigation Trust Distributions, as applicable, shall be made under the Plan on account of the Intercompany Claims among the Debtors; (ii) all guarantees by any of the Debtors of the obligations of any other Debtor arising prior to the Effective Date shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the deemed consolidated Debtors; and (iii) each and every Claim filed or to be filed in the Chapter 11 Cases shall be deemed filed against the consolidated Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Debtors.

13.     Governmental Approvals Not Required.  This Confirmation Order shall constitute all of the approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, any document contained in the Plan Supplement, any other Plan Document, and any documents, instruments, or agreements, and any amendments or modifications thereto.

14.     Litigation Trust.  The Litigation Trust shall be established for the sole purpose of liquidating and distributing the Litigation Trust Assets and the proceeds thereof, including the Litigation Trust Recoveries.  The powers, rights and responsibilities of the Litigation Trust and

the Litigation Trustee shall be as specified in Article VI of the Plan, the Litigation Trust Agreement, and this Confirmation Order. Except as otherwise provided by this Court, fees, costs and expenses of the Litigation Trust shall be paid as specified in section 6.3.8 of the Plan and the Litigation Trust Documents.

15. <u>Oversight Committee</u>. On the Effective Date, the Oversight Committee shall be formed, comprised of the Unsecured Creditors' Designee and the Lenders' Designee, with the rights, obligations and duties as specified in section 6.9 of the Plan.

16. <u>Plan Administrator</u>. The Plan Administrator shall have the rights, obligations and duties as specified in the Plan and the Plan Administrator Agreement, which is approved substantially in the form filed with the Court on April 6, 2011. Reasonable fees and expenses of the Plan Administrator may be paid without Court approval.

17. <u>Acceptance and Execution of Plan Documents</u>. Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Plan, the documents contained in the Plan Supplement, and all other Plan Documents including, without limitation, documents and instruments for recording in county and state offices where any Plan Document may need to be filed in order to effectuate the Plan.

18. <u>Dissolution of Creditors' Committee</u>. On the Effective Date, the Creditors' Committee shall be dissolved automatically and its members will be released and discharged from all duties and obligations arising from or related to the Litigation Trust, *provided, however*, that the Creditors' Committee shall continue to exist for the purposes set out in section 13.12 of the Plan.

19.     Disbursing Agents.  On the Effective Date, the Plan Administrator shall be the Disbursing Agent for the purpose of making the Plan Distributions set out in section 7.2 of the Plan, and the Litigation Trustee shall be the Disbursing Agent for the purpose of making the Litigation Trust Distributions set out in section 7.3 of the Plan.  Each Disbursing Agent shall have all powers, rights, duties and protections afforded such Disbursing Agent under the Plan.

20.     Payment of Fees.  Pursuant to section 13.1 of the Plan, on the Effective Date, and thereafter as may be required, the Plan Administrator shall pay all fees required to be paid pursuant to 28 U.S.C. § 1930 and all fees required to be paid to the Office of the U.S. Trustee until the Chapter 11 Cases are closed.

21.     Final Fee Applications.  Pursuant to section 2.5 of the Plan, all final applications seeking payment for Fee Claims must be filed and served on the First Lien Agent, the Plan Administrator, the Litigation Trustee and the U.S. Trustee and their counsel no later than twenty-one (21) days after the Confirmation Date.  Objections to such final fee applications must be filed twenty-five (25) days after the date on which the applicable final fee application was served.  Any party in interest may object to any application or request for compensation or reimbursement.  Any Fee Claim that is not filed on or before the deadline set forth in section 2.5 of the Plan shall result in the Fee Claim being forever barred and discharged.  A Fee Claim in respect of which a final fee application has been properly and timely filed and served shall become an Allowed Administrative Claim only to the extent allowed by Final Order.  Any Claims filed by a Professional Person, including Fee Claims, Administrative Claims or Additional Administrative Claims, shall be subject to the terms of section 2.5 of the Plan.

22.     Satisfaction of Claims and Termination of Equity Interests.  Pursuant to section 11.2 of the Plan, subject to the occurrence of the Effective Date and as of the Effective

Date, except as otherwise provided in the Plan, the distributions and rights afforded under the Plan shall be in exchange for and in complete satisfaction of all Claims against the Debtors, and in satisfaction of all Equity Interests and the termination of all Equity Interests in the Debtors. Except as otherwise specifically provided in the Plan, as of the Effective Date, any interest accrued on Claims against the Debtors from and after the Petition Date shall be cancelled.

23. <u>Term of Existing Injunctions or Stays</u>. (a) Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold, have held, or may hold a Claim or other debt or liability against the Debtors or an Equity Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions on account of, or on the basis of, such Claims, debts or liabilities, or terminated Equity Interest or rights (other than actions brought to enforce any rights or obligations under the Plan or the Confirmation Order): (i) commencing or continuing any action or other proceeding against the Debtors, the Litigation Trust or their respective property; (ii) enforcing, attaching, collecting or recovering any judgment, award, decree or order against the Debtors, the Litigation Trust or their respective property; (iii) creating, perfecting or enforcing any Lien or encumbrance against the Debtors, the Litigation Trust or their respective property; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due the Debtors, the Litigation Trust or their respective property; and (v) commencing or continuing any judicial or administrative proceeding, in any forum, that does not comply with or is inconsistent with the provisions of the Plan; and (b) All injunctions or stays arising under or entered during the Chapter 11 Cases pursuant to sections 105 or section 362 of the Bankruptcy Code, or otherwise,

and in existence on the Confirmation Date, shall remain in full force and effect until the occurrence of the Effective Date.

24.    <u>Releases and Injunctions</u>.

i.    *Releases by Debtors and Estates.*   On and as of the Effective Date, the Debtors on their own behalf and as representatives of their respective Estates and any Person seeking to exercise the rights of the Debtors' Estates (including, the Plan Administrator and Litigation Trustee on behalf of the Litigation Trust, or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code), release unconditionally, and are hereby deemed to release unconditionally, each and all of the Estate Released Parties of and from any and all Claims, obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action and liabilities of any nature whatsoever (including actions arising under the Bankruptcy Code, Avoidance Actions and that certain Adversary Proceeding No. 10-53163 (MFW) by the Creditors' Committee against CIBC World Markets Corp., et al.), whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, that are or may be based in whole or in part upon any act, omission, transaction, event or other occurrence taking place or existing on or prior to the Effective Date that are in connection with the Debtors or any of them, or their respective Assets, property and Estates, the Chapter 11 Cases or the Plan, or the Disclosure Statement (the "<u>Estate Released Claims</u>").  Notwithstanding any provision to the contrary in the Plan, "Estate Released Parties" means (a) the First Lien Agent, (b) the Secured Lenders, and (c) the Related Persons of each of the Persons referred to in clauses (a) and (b).  Estate Released Parties shall not include (a) SAC, (b) AIG, and (c) any member of the Creditors' Committee at any time.

ii.     *Releases by Holders of Claims and Interests.*   Except as otherwise expressly provided in the Plan or this Confirmation Order, on the Effective Date and effective simultaneously with the effectiveness of the Plan, each Person (a) that has voted to accept the Plan or is deemed to have accepted the Plan and has not opted out from granting the releases in section 11.5.2 of the Plan, (b) that has voted to reject the Plan but has opted to grant the releases in section 11.5.2 of the Plan, or (c) who otherwise agrees to provide the releases set forth in section 11.5.2 of the Plan, shall be deemed to have unconditionally released each and all of the Holder Released Parties of and from any and all Claims, obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, that are or may be based in whole or in part upon any act, omission, transaction, event or other occurrence taking place or existing on or before the Effective Date that are in connection with the Debtors or any of them, or their respective assets, property and Estates, the Chapter 11 Cases or the Plan or the Disclosure Statement (the "Holder Released Claims"); provided, however, that the First Lien Agent does not by virtue of giving its own release under the Plan, release individual Claims, if any, of Secured Lenders for which it acts or acted as agent; and provided further that the First Lien Agent shall not be deemed to have released any Secured Lender for which it acts or acted as agent from any obligations under the Credit Agreement of such Secured Lender to the First Lien Agent.

iii.     *Injunction Related to Releases.*  Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold, have held, or may hold a Claim or other debt, right, Cause of Action or liability that is released pursuant to the

provisions of the Plan are permanently enjoined from taking any of the following actions on account of or based upon the Estate Released Claims or the Holder Released Claims, as applicable: (i) commencing or continuing any action or other proceeding against the Estate Released Parties or the Holder Released Parties, as applicable, or their respective property; (ii) enforcing, attaching, collecting or recovering any judgment, award, decree or order against the Estate Released Parties or the Holder Released Parties, as applicable, or their respective property; (iii) creating, perfecting or enforcing any Lien or encumbrance against the Estate Released Parties or the Holder Released Parties, as applicable, or their respective property; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due the Estate Released Parties or the Holder Released Parties, as applicable, or against their respective property; and (v) commencing or continuing any judicial or administrative proceeding, in any forum, that does not comply with or is inconsistent with the provisions of the Plan.

      iv. *Injunction Against Barred Claims.* All (i) Released Parties; (ii) Persons who have voted for or against the Plan or who are presumed to have voted for or against the Plan under section 1126(f)-(g) of the Bankruptcy Code; (iii) any other Persons that hold, have held or may hold a Claim or other debt or liability, or an Equity Interest, against, in or relating to any of the Debtors or their respective Estates; and (iv) present or former members of Management (collectively, the "Barred Persons") are hereby permanently barred, enjoined and restrained from commencing, prosecuting, or asserting in this Bankruptcy Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere any Claim for non-contractual indemnity or contribution against any Estate Released Party (including any other non-contractual Claim against the Estate

Released Parties, whether or not denominated as for contribution or indemnity, where the injury to the Barred Person is the liability of the Barred Person to the Litigation Trust), arising out of or reasonably flowing from the Claims or allegations in any of the Released Claims or the Estate Causes of Actions, whether arising under state, federal or foreign law as Claims, cross-claims, counterclaims, or third-party Claims (collectively, the "Barred Claims").

        v.    *Judgment Reduction.*  The Litigation Trustee and the Litigation Trust shall not be entitled to recover from any Estate Released Party, and no Estate Released Party shall have any obligation, in whole or in part, for, any amount that the Litigation Trustee and the Litigation Trust seeks to recover from any Person. If at a trial (or by settlement) where the issue of relative fault, responsibility or liability, including but not limited to contribution or indemnity, is determined between any of the Released Parties on the one hand and any Person on the other hand, if any of the Released Parties are found to be liable for a portion of the damages awarded to the Litigation Trustee or the Litigation Trust, then any Person shall be liable only for that amount or percentage of the damages awarded for which the Person is found to be at fault or responsible and not for any amount or percentage of the damages awarded which is found to be the fault or responsibility of the Released Parties. If the Litigation Trust enters into a settlement with any Person with respect to one or more Estate Causes of Action based upon, arising from, or related to the Released Claims or any transaction underlying any Released Claim, then the Litigation Trust shall cause to be included, and in all events, the settlement shall be deemed to include, a dismissal, release and waiver of any Barred Claims with respect to such settlement.

        vi.    *Injunctions.*  On the Effective Date and except as otherwise provided under the Plan, all Persons who have been, are, or may be holders of Claims against or

Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against or affecting the Debtors, the Released Parties, the Estates, the Assets, the Disbursing Agents or the members of the Creditors' Committee at any time with respect to such Claims or Equity Interests (other than actions brought to enforce any rights or obligations under this Plan or the Confirmation Order): (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice); (b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and (d) asserting any setoff, right of subrogation or recoupment of any kind.

25.    <u>Exculpation</u>.  Pursuant to section 1125(e) of the Bankruptcy Code, the Released Parties and each of their respective Related Persons, the CRO, the members of the Debtors' board of directors, each of the Debtors' officers who served in such capacity after the Petition Date and the Debtors' professionals (collectively, the "<u>Exculpated Parties</u>") shall not be liable for any Cause of Action arising in connection with or out of the administration of the Chapter 11 Cases, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court.  This Confirmation Order enjoins all holders of Claims and Equity Interests from asserting or prosecuting any Claim or Cause of Action against the Exculpated Parties as to which such Person has been exculpated from liability pursuant to the preceding sentence.

26.    <u>Vesting of Assets in the First Lien Agent for the Benefit of the Secured Lenders</u>.

i. Upon the occurrence of the Effective Date and except as otherwise provided in the Plan, title to all of the Assets of the Debtors other than the Estate Causes of Action, amounts in the Consummation Account (subject to section 4.4.2(b) of the Plan) and the Litigation Trust Reserve shall vest in the First Lien Agent for the benefit of the Secured Lenders, free and clear of all Claims, Equity Interests, Liens, security interests, encumbrances, and other interests.

ii. Except as otherwise provided in the Plan or this Confirmation Order, or in any contract, instrument, release, indenture or other agreement entered into in connection with this Plan, and except with respect to the Estate Released Parties, in accordance with section 1123(b) of the Bankruptcy Code, the Litigation Trustee shall reserve, retain and may enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) all Estate Causes of Action. Except as otherwise expressly set forth herein, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any right or Causes of Action that the Debtors may have or which the Litigation Trustee may choose to assert under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, any and all Claims against any Person, to the extent such Person asserts a cross-claim, counterclaim and/or Claim for setoff which seeks affirmative relief against any of the Debtors, their officers, directors or representatives. The Litigation Trustee shall be deemed the appointed representative to, and may pursue, litigate, compromise, settle, transfer or assign any such rights, claims, Causes of Action, suits or proceedings as appropriate, in accordance with the best interests of the Creditor Proponents or their respective successors who hold such rights.

iii. Notwithstanding any provision to the contrary in the Plan, SAC and AIG are not assigning or transferring to the Litigation Trust, to prosecute, liquidate or

otherwise resolve and recover and collect on, any and all claims based on fraud and/or misrepresentation that SAC or AIG may have against Jerry Silva, Steven Silva, Jerry Silva as life tenant and Steven Silva as remainderman and the Jody R. Silva 2007 Annuity Trust (collectively, the "Silvas").

27. <u>Transfer of Litigation Trust Assets</u>. On the Effective Date, the Debtors shall be deemed to have transferred all the Litigation Trust Assets to the Litigation Trust free and clear of all Liens, Claims and encumbrances, except as otherwise set forth in the Plan. Except as otherwise expressly set forth herein, nothing contained in the Plan or this Confirmation Order shall be deemed to be a waiver or the relinquishment of any right or Causes of Action that the Debtors may have or which the Litigation Trustee may choose to assert under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, any and all Claims against any Person, to the extent such Person asserts a cross-claim, counterclaim and/or Claim for setoff which seeks affirmative relief against any of the Debtors, their officers, directors or representatives. The Litigation Trustee shall be deemed the appointed representative to, and may pursue, litigate, compromise, settle, transfer or assign any such rights, claims, Causes of Action, suits or proceedings as appropriate, in accordance with the best interests of the Plan Proponents or their respective successors who hold such rights.

28. <u>Cancellation of Existing Securities and Agreements</u>. Pursuant to section 6.11 of the Plan, except for purposes of evidencing a right to Plan Distributions or Litigation Trust Distributions under the Plan or as otherwise provided hereunder or in the Plan, on the Effective Date, all agreements and other documents evidencing Claims or rights of any holder of a Claim or Equity Interest against any of the Debtors, including the Credit Agreement, the Second Lien Credit Agreement, any documents evidencing the Subordinated Claims, all indentures, notes,

bonds and share certificates evidencing such Claims and Equity Interests and any agreements or guarantees related thereto shall be cancelled, terminated, deemed null and void and satisfied. Notwithstanding anything contained herein to the contrary, the provisions of the Credit Agreement governing the relationship of the First Lien Agent and the Secured Lenders, including, but not limited to, those provisions relating to the First Lien Agent's rights of indemnification from the Secured Lenders, shall not be affected by and shall survive any or all of the Plan, entry of this Confirmation Order and the occurrence of the Effective Date.

29. Notwithstanding any provision to the contrary in the Plan, this Confirmation Order and any implementing Plan Documents, nothing shall affect the rights of the Silvas, or any of them, or SAC or AIG, to assert setoff and recoupment and such rights, if any, are expressly preserved and the right of the Litigation Trustee and other parties in interest to contest the assertion of such setoff or recoupment rights, on bases other than the Plan or the Confirmation Order, is hereby preserved.

30. <u>Non-Occurrence of Effective Date</u>. Except as otherwise provided in the Plan, this Confirmation Order, or a separate order of this Court, the provisions set forth in section 13.8 of the Plan relating to revocation, withdrawal, or non-consummation of the Plan are approved.

31. <u>Notice of Entry of Confirmation Order</u>. Notwithstanding any provision to the contrary in the Plan, promptly upon entry of this Confirmation Order, the Plan Proponents shall serve as directed by the Court on all known parties in interest and holders of Claims and Equity Interests, notice of the entry of the Confirmation Order (the "<u>Notice of Confirmation</u>") and all relevant deadlines and dates under the Plan, the costs of which shall be paid from the Consummation Account. The notice described herein is adequate under the particular circumstances and no other or further notice is necessary.

32. <u>Contested Claims</u>. The provisions of Article II and Article XIII of the Plan, including, without limitation, the provisions governing procedures for resolving Contested Claims, are found to be fair and reasonable and are approved.

33. <u>Additional Administrative Claim Bar Date</u>. All requests for payment of an Additional Administrative Claim must be filed with the Court and served on counsel for each of the Creditor Proponents no later than twenty-one (21) days after the Confirmation Date, or else such Additional Administrative Claim shall be barred or discharged. Unless the Plan Administrator, the Litigation Trustee, the First Lien Agent, in the exercise of its sole and absolute discretion, or the U.S. Trustee objects to an Additional Administrative Claim within twenty-five (25) days after the Effective Date (or such later date as extended by the Bankruptcy Court at the request of the Plan Administrator), such Additional Administrative Claim shall be deemed Allowed in the amount requested. In the event that the Plan Administrator, the Litigation Trustee, the First Lien Agent, in the exercise of its sole and absolute discretion, or the U.S. Trustee objects to a timely filed Additional Administrative Claim, this Court shall determine the Allowed amount of such Administrative Claim.

34. <u>Effective Date</u>.

i. On the Effective Date, the following conditions shall have been satisfied or waived by the Plan Proponents: (i) this Confirmation Order shall have been entered, shall have become a Final Order, and shall be acceptable to the First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion; (ii) all agreements and other instruments which are exhibits to the Plan or included in the Plan Supplement shall be acceptable to the First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion, and shall have been executed and delivered by the parties thereto; (iii) all

actions, documents and agreements necessary to implement the Plan and the transactions contemplated by the Plan shall have been effected or executed; (iv) the Effective Date shall have occurred no later than April 29, 2011, time being strictly of the essence; (v) the Litigation Trustee shall have executed the Litigation Trust Agreement and any other Litigation Trust Documents; (vi) the Litigation Trustee shall have received the monies to fund the Litigation Trust Reserve; (vii) the Plan Administrator shall have received the monies to fund the Consummation Account; (viii) the Available Proceeds shall have been paid over to the First Lien Agent for the benefit of the Secured Lenders; (ix) the Creditors' Committee shall have dismissed Adversary Proceeding No. 10-53163 (MFW) against CIBC World Markets Corp., *et al.*; (x) the provisions of section 11.5.7 of the Plan shall be included in this Confirmation Order; and (xi) the First Lien Agent shall have dismissed Adversary Proceeding No. 10-52358 (MFW) against SAC Domestic Capital Funding, Ltd., *et al.*

        ii.     Upon the occurrence of the Effective Date, the Plan shall be deemed substantially consummated.

        iii.    The First Lien Agent and the Creditors' Committee, each in the exercise of its sole and absolute discretion may waive, in whole or in part, any of the conditions to the confirmation or effectiveness of the Plan or modify or extend the time for satisfying any such condition; provided, however that only the consent of the First Lien Agent, in the exercise of its sole and absolute discretion is required to waive the provisions of Section 10.1(e) of the Plan. Any such waiver of a condition or modification or extension of the time for satisfying a condition under this Plan may be effected at any time, without prior notice or leave or order of the Court and without any formal action, other than the filing of a notice of such waiver with the Court.

35.    Notice of the Effective Date.  As soon as practicable after the occurrence of the Effective Date, the Plan Proponents shall file notice of the occurrence of the Effective Date and shall serve a copy of the same on all parties entitled to receive notice in these Chapter 11 Cases.

36.    References to Plan Provisions.  The failure specifically to include or reference any particular provision of the Plan or any particular document in the Plan Supplement, or any other Plan Document in this Confirmation Order, shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed (including the documents in the Plan Supplement and any other Plan Document) in its entirety.

37.    Modification, Vacatur or Reversal of Confirmation Order.  If any provision of this Confirmation Order is hereafter modified, vacated or reversed by subsequent order of the Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Plan Proponents' receipt of written notice of any such order; nor shall such reversal, modification or vacatur hereof affect the validity or enforceability of such acts or obligations.  Notwithstanding any reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to and in reliance on this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and of the Plan and the documents contained in the Plan Supplement and all other Plan Documents, and all documents, instruments and agreements related thereto, or any amendments or modifications thereto.

38.    Conflicts Between the Plan, Disclosure Statement and Plan Documents.  In the event of any conflict between the terms and provisions in the Plan and the terms and provisions

in the Disclosure Statement, any Plan Document or any document in the Plan Supplement, the terms and provisions of the Plan shall control and govern.

39.     <u>Provisions of the Final Cash Collateral Order Survive</u>.   The provisions of the *Final Order  (I) Authorizing Debtors to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection to the Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 105, 361, 362 and 363* [Docket No. 110] shall survive confirmation of the Plan, entry of this Confirmation Order and the occurrence of the Effective Date.

40.     <u>Further Assurances</u>.    The First Lien Agent, Creditors' Committee, Plan Administrator, Litigation Trustee and all holders of Claims receiving Plan Distributions under the Plan and all other parties-in-interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan, the documents contained in the Plan Supplement, and all other Plan Documents.

41.     <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, the documents contained in the Plan Supplement, and all other Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

42.  <u>Final Order</u>.  This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon entry hereof.  Notwithstanding Fed. R. Bank. P. 3020(e), 6004(h), 6006(d) and 7062 to the extent applicable, the Court finds that there is no reason for delay in the implementation of this Confirmation Order and thus this Confirmation Order shall be effective and enforceable immediately upon entry.

Dated:  Wilmington, Delaware
        April 11, 2011

HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE